**UNITED STATES DISTRICT COURT**
**DISTRICT OF MINNESOTA**

---

JACQUELINE MEKHAIL,

*individually, and on behalf of those similarly situated*,

Plaintiff,

v.

NORTH MEMORIAL HEALTH CARE,

*d/b/a North Memorial Health*,

Defendant.

Case No. 23-cv-00440 (KMM/TNL)

**DEFENDANT'S MEMORANDUM IN SUPPORT OF MOTION TO DISMISS**

---

# TABLE OF CONTENTS

Page


INTRODUCTION ........ 1

BACKGROUND ........ 1

I. The Parties. ........ 1

II. North Memorial's Website ........ 2

III. North Memorial's Policies. ........ 3

LEGAL STANDARD ........ 5

ARGUMENT ........ 5

I. The Court should dismiss Plaintiff's invasion of privacy claims ........ 5

A. Any publication of private facts claim must be dismissed for failure to plead "publicity." ........ 6

B. Any intrusion upon seclusion claim must be dismissed because Plaintiff fails to allege an "intrusion." ........ 7

II. The Court should dismiss Plaintiff's claim under § 2511(1) of the Electronic Communications Privacy Act. ........ 9

A. Plaintiff fails to allege an unlawful interception under § 2511(1) of the Wiretap Act because North Memorial was a party participant to any alleged communications ........ 10

B. The Complaint fails to allege North Memorial's "primary motivation" was to tortiously injure Plaintiff, rendering the crime-tort carve out inapplicable ........ 12

III. The Court should dismiss Plaintiff's claim under § 2511(3) of the Electronic Communications Privacy Act. ........ 14

A. Section 2511(3) is inapplicable because North Memorial did not provide an "electronic communication service." ........ 14

B. Plaintiff does not allege that North Memorial divulged the contents of her communications. ........ 16

C. Even if the Complaint adequately alleges that North Memorial provided an "electronic communication service," the Complaint also establishes that a complete defense applies. ........ 18

IV. The Court should dismiss Plaintiff's MDTPA claim. ........ 22

A. Plaintiff fails to plead her MDTPA claim with particularity. ........ 22

B. Plaintiff fails to allege that she is likely to suffer future harm as required by the MDTPA. ........ 23

C. Because North Memorial's alleged practices were consistent with its representations, Plaintiff fails to plausibly allege a deceptive trade practice. ........ 25

D. Even if Plaintiff's MDTPA claim could survive, Plaintiff's claim for damages cannot ........ 26
V. The Court should dismiss Plaintiff's unjust enrichment claim ........ 27
A. No unjust enrichment occurred because the Complaint fails to allege an implied or quasi-contract. ........ 27
B. No unjust enrichment occurred because the Complaint alleges that North Memorial acted consistently with its representations. ........ 28
C. The Complaint fails to allege an uncompensated benefit ........ 28

CONCLUSION ........ 30

## INTRODUCTION

Defendant North Memorial Health Care ("North Memorial") brings this Motion to Dismiss Plaintiff Jacqueline Mekhail's ("Plaintiff") claims and the putative class action. Plaintiff alleges that North Memorial shared visitors' interactions on its website with Meta Platforms, Inc. ("Meta") and asserts claims for: common law invasion of privacy (Count I), the Electronic Communications Privacy Act (Counts II and III), the Minnesota Uniform Deceptive Trade Practice Act (Count IV), and common law unjust enrichment (Count V). For the reasons set forth below, the Court should dismiss Plaintiff's Complaint with prejudice under Rule 12(b)(6) for failure to state a claim upon which relief can be granted.

## BACKGROUND

### I. The Parties.

North Memorial is a Minnesota health care system based in Robbinsdale, Minnesota providing a wide range of health care services to patients across Minnesota. (Compl. ¶¶ 20, 22, Feb. 22, 2023, Dkt. 1.) North Memorial maintained the website www.northmemorial.com. (*See id.* ¶ 2.) The website included a portal for patients to schedule appointments and view test results, among other activities. (*Id.*) North Memorial licensed this MyChart portal system from Epic Systems Corporation. MyChart – Login Page, North Memorial Health, https://mychart.northmemorial.com/NorthMemorial/Authentication/Login.[1]

[1] The Court may consider this fact for this Motion to Dismiss because the Complaint necessarily embraces relevant parts of North Memorial's website as Plaintiff predicates her allegations on the website. *See Zean v. Fairview Health Servs.*, 858 F.3d 520, 526 (8th Cir. 2017); *see also Nelson Auto Ctr., Inc. v. Multimedia Holdings Corp.*, 951 F.3d 952, 955–

Plaintiff claims that she is a former patient of North Memorial who began receiving medical services in or around October 2021. (Compl. ¶ 15.) She claims to have used North Memorial's website and patient portal. (*Id.*) She also claims to have Facebook and Instagram accounts. (*Id.* ¶ 17.)

**II. North Memorial's Website.**

The Complaint alleges that website visitors' activities on North Memorial's website were transmitted to Meta.[2] (*Id.* ¶ 3.) North Memorial allegedly installed a piece of code developed by Meta known as the Meta Pixel ("Pixel") on its website that transmitted visitors' activities to Meta. (*Id.*) Allegedly, website operators place pixels and other commands in their websites' source code that can transmit data to third parties regarding users' interactions with websites. (*Id.* ¶¶ 42, 53–57.) According to the Complaint, websites with Pixel—including North Memorial's—transmit users' interactions with the website to Meta. (*Id.* ¶¶ 3–4, 42–43, 45, 64.) The Complaint alleges Pixel tracks and transmits data in part through "cookies." (*Id.* ¶¶ 46–47, 53–55.) "Cookies are a text file that website operators, and other[s] use to store information on the visitor's device" that can be used to transmit certain data and communicate with the device, websites, and third parties. (*Id.* ¶¶ 54–55.)

---

56 (8th Cir. 2020) (considering a defendant's website on a motion to dismiss as it was necessarily embraced by the complaint).

[2] Facebook and Instagram are both part of and products offered by Meta. *Introducing Meta: A Social Technology Company*, Meta Platforms, Inc. (Oct. 28, 2021), https://about.fb.com/news/2021/10/facebook-company-is-now-meta.

Plaintiff alleges that North Memorial's use of Pixel sent Meta information that website visitors provided North Memorial on the website. This allegedly included visitors' button clicks; appointment information; information about providers, treatments, and conditions; communications with North Memorial; location; and IP addresses. (*Id.* ¶¶ 4, 6, 31, 34, 50, 60–64.)

Allegedly, website operators include Pixel on their websites to better understand how users interact with their websites and increase the efficiency and effectiveness of advertising. (*Id.* ¶¶ 5, 44, 48.) The Complaint alleges North Memorial used the improved data analytics generated by Pixel to reach new patients and improve North Memorial's services to existing patients. (*Id.* ¶ 5.)

## III. North Memorial's Policies.

The Complaint alleges North Memorial provided two documents regarding information related to its patients and customers: a Notice of Privacy Practices and a Privacy Policy. (*See id.* ¶¶ 24–25; *see also* Decl. of Nicole Moen, Exs. A ("Notice of Privacy Practices"), B ("Privacy Policy").)[3]

The Notice of Privacy Practices explained how North Memorial uses and discloses medical information created or received by North Memorial and its doctors, nurses, and other caregivers. (Notice of Privacy Practices at 1.) It stated that North Memorial is

[3] As the Complaint quotes from and cites to these documents, their contents are alleged in the Complaint and are incorporated by reference. (*See* Compl. ¶¶ 16, 24–26.) Therefore, the Court may consider them for this Motion. *See Zean*, 858 F.3d at 526.

required by law to keep patient identifying medical information that North Memorial has private. (*Id.*; Compl. ¶ 25.)

The Privacy Policy described how North Memorial used, collected, and protected any information gathered by its website. (Privacy Policy at 1–2; *see also* Compl. ¶ 24.) It explained that North Memorial may gather "personally identifiable information" from its users and that it does so "to understand your needs and provide you with better service." (Privacy Policy at 1; Compl. ¶ 16.) The Privacy Policy stated that it "may use the information to improve our products and services;" "may disclose information to third-parties who act for us on our behalf;" and "may share or use your information for any other legally permitted business purpose upon our sole discretion." (Privacy Policy at 2.) The Privacy Policy explained what cookies are and how they can be used to track information, identify and respond to users as individuals, create data, and improve North Memorial's website. (*Id.* at 2–3.) The Privacy Policy also informed users that accepting cookies is optional, a user's browser must grant permission for the cookie to operate, and that users can decline to accept cookies on North Memorial's website.[4] (*Id.*) The Privacy Policy advised website users that the cookies it used only gave access to "the data you choose to share with us" and that "[b]y using this website, you are consenting to the collection, use, and disclosure of your information as described in this policy." (*Id.* at 1–3.)

[4] The Complaint references a website to explain cookies; this website confirms that cookies can be disabled. (*See* Compl. ¶ 55 n.14); First-Party Cookie, PCMAG.com, https://www.pcmag.com/encyclopedia/term/first-partycookie.

## LEGAL STANDARD

To survive a Rule 12(b)(6) motion to dismiss for failure to state a claim, a complaint must allege "enough facts to state a claim to relief that is plausible on its face." *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 570 (2007). While a complaint "does not need detailed factual allegations," it must contain enough specific facts "to raise a right to relief above the speculative level." *Id.* at 555. Thus, a complaint needs "more than labels and conclusions." *Id.*; *accord Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009) ("Threadbare recitals of the elements of a cause of action, supported by mere conclusory statements, do not suffice."). While the Court accepts as true the Complaint's factual allegations and draws reasonable inferences in the light most favorable to the plaintiff, the Court "need not accept as true a plaintiff's conclusory allegations or legal conclusions drawn from the facts." *Glick v. W. Power Sports, Inc.*, 944 F.3d 714, 717 (8th Cir. 2019).

## ARGUMENT

### I. The Court should dismiss Plaintiff's invasion of privacy claims.

Under Count I, Plaintiff alleges a claim for "invasion of privacy." Minnesota recognizes three separate causes of action under the common law invasion of privacy tort: publication of private facts, intrusion upon seclusion, and appropriation. *See Lake v. Wal-Mart Stores, Inc.*, 582 N.W.2d 231, 235 (Minn. 1998). Here, Plaintiff has failed to specify which privacy rights North Memorial allegedly violated—"this failure, alone, violates the pleading requirements of Minn. R. Civ. P. 8.01" and warrants dismissal. *Olson v. Labrie*, No. A12-1388, 2013 WL 1788531, at *4 (Minn. Ct. App. Apr. 29, 2013).

Even assuming Plaintiff asserts claims for publication of private facts and intrusion upon seclusion, Plaintiff failed to state a claim for which relief can be granted for either claim. (*See* Compl. ¶¶ 128–31.)

**A. Any publication of private facts claim must be dismissed for failure to plead "publicity."**

A "claim for publication of private facts requires that private information be made public." *Cieslack v. Easly*, No. 17-2338, 2018 WL 2926502, at *2 (D. Minn. June 11, 2018). "Publicity" means that "the matter is made public, by communicating it to the ***public at large***, or to so many persons that the matter must be regarded as substantially certain to become one of public knowledge." *Bodah v. Lakeville Motor Express, Inc.*, 663 N.W.2d 550, 557 (Minn. 2003) (emphasis added) (citing Restatement (Second) of Torts § 652D). "[A]bsent dissemination to the public at large, [a] claimant's 'private persona' has not been violated." *Id.* (citing *Lake*, 582 N.W.2d at 235).

In *Bodah*, the Minnesota Supreme Court held that the dissemination of "204 employees' social security numbers to 16 terminal managers in six states" did not constitute "publicity" to withstand a motion to dismiss. *Bodah*, 663 N.W.2d at 557–59. Similarly, in *Sherr*, the court held that the alleged dissemination by a health care provider "to a community of 35–40 individuals does not constitute publicity" and dismissed for failure to state a claim. *Sherr v. HealthEast Care Sys.*, 262 F. Supp. 3d 869, 881–82 (D. Minn. 2017). In *Cieslack*, the court held that a disclosure "even if to 50 or 100 new employees, is not sure to reach the public" and granted a motion to dismiss plaintiff's claim for publication of private facts. *Cieslack*, 2018 WL 2926502, at *2.

Here, Plaintiff does not allege that North Memorial disclosed Plaintiff's information ***to the public at large***. To the contrary, Plaintiff alleges only that North Memorial disclosed information to Meta and unspecified "vendors and other third parties." (*See* Compl. ¶¶ 3, 33–34, 128.) As in *Bodah*, *Sherr*, and *Cieslack*, these alleged disclosures do not constitute "publicity" because they were not made to the public at large. Because Plaintiff has not alleged "publicity," the Court should dismiss Plaintiff's claim for publication of private facts.

**B. Any intrusion upon seclusion claim must be dismissed because Plaintiff fails to allege an "intrusion."**

Under Minnesota law, a claim for intrusion upon seclusion has three elements: (1) an intrusion; (2) that is highly offensive; and (3) into some matter in which a person has a legitimate expectation of privacy. *Rasmusson v. Chisago Cnty.*, 991 F. Supp. 2d 1065, 1078 (D. Minn. 2014). An act of "intrusion" is the threshold element for an intrusion upon seclusion privacy tort. *See Lehman v. Zumbrota-Mazeppa Pub. Sch.*, No. A04-1226, 2005 WL 894756, at *3–4 (Minn. Ct. App. Apr. 19, 2005).

For an intrusion to occur, a defendant must partake in an "affirmative act . . . in obtaining the information at issue." *Id.* at *4; *see also Wittwer v. Enbridge*, Inc., No. A06-1049, 2007 WL 152533, at *4 (Minn. Ct. App. Jan. 23, 2007) (holding that because intrusion upon seclusion is an intentional tort, "there must be an intentional invasion of privacy such as eavesdropping or spying"). An invasion may arise "by physical intrusion into a place in which plaintiff has secluded himself . . . [or] by the use of the defendant's senses, with or without mechanical aids, to oversee or overhear the plaintiff's private

affairs, as by looking into his upstairs windows with binoculars or tapping his telephone wire." *Lehman*, 2005 WL 894756, at *3 (citing Restatement (Second) of Torts, § 652B (1977)); *see also Olson*, 2013 WL 1788531, at *4 (citing § 652B and affirming motion to dismiss intrusion upon seclusion claim for failure to indicate any "intrusion").

Where a plaintiff voluntarily provides information to a defendant, a defendant has not intruded into plaintiff's private affairs for purposes of the tort. *See Lehman*, 2005 WL 894756, at *4 (affirming lack of intrusion where plaintiff voluntarily provided letter regarding his medical leave which was later disclosed to the press—noting that what plaintiff "objected to is not the school district obtaining the letter but its publication of the letter"); *see also Jones v. Walgreens Co.*, No. A11-1261, 2012 WL 1658895, at *4 (Minn. Ct. App. May 14, 2012) (affirming dismissal for lack of intrusion where defendants knew plaintiff's medical and insurance information because they worked at the pharmacy, not because they invaded a private room or used their senses to intrude into plaintiff's private affairs); *see also C.L.D. v. Wal-Mart Stores, Inc.*, 79 F. Supp. 2d 1080, 1083 n.1 (D. Minn. 1999) ("[P]laintiff voluntarily disclosed her medical circumstances to [the defendant] and cannot claim that he obtained the information by intrusive means.").

The court in *Kurowski* recently dismissed an intrusion upon seclusion claim under nearly identical facts to those at issue here. *See Kurowski v. Rush Sys. for Health*, No. 22-5380, 2023 WL 2349606, at *8–9 (N.D. Ill. Mar. 3, 2023). As reasoned in *Kurowski*, the core of the intrusion upon seclusion tort is the "offensive prying into the private domain of another," "not publication of publicity." *Id.* at *9. "Disclosures of private personal information do not support a claim for unauthorized intrusion." *Id.* (internal quotation

marks omitted). Because the Complaint did not plead allegations showing intrusion, the *Kurowski* court dismissed the intrusion claim.

Similar to the plaintiff in *Kurowski*, Plaintiff fails to allege that North Memorial made an unauthorized intrusion into Plaintiff's private affairs, and instead alleges that she voluntarily engaged in communications with North Memorial and intended for her information to reach North Memorial. (*See* Compl. ¶¶ 15, 18–19, 23, 26, 31, 64, 112.) Because Plaintiff voluntarily engaged in communications with North Memorial, North Memorial could not have intruded in Plaintiff's private affairs.

Count I should be dismissed in its entirety.

## II. The Court should dismiss Plaintiff's claim under § 2511(1) of the Electronic Communications Privacy Act.

In Count II of her Complaint, Plaintiff alleges that North Memorial unlawfully intercepted, disclosed, and used the electronic communications of Plaintiff and other Class members in violation of Section 2511(1) of the Electronic Communications Privacy Act (the "Wiretap Act"). *See* 18 U.S.C. § 2511(1)(a), (c)–(d); (Compl. ¶¶ 108–24.) To sustain such a claim, Plaintiff must allege that a communication was "intercepted." Here, because North Memorial was the intended recipient of Plaintiff's communications, North Memorial did not "intercept" any of Plaintiff's communications. Plaintiff also fails to allege any facts that would support application of the crime-tort carve-out.

### A. Plaintiff fails to allege an unlawful interception under § 2511(1) of the Wiretap Act because North Memorial was a party participant to any alleged communications.

To state a claim under the Wiretap Act, a plaintiff must allege the defendant engaged in an interception. *See* 18 U.S.C. § 2511(1). An "interception is a necessary element for each type of violation" under the Wiretap Act. *Jurgens v. Build.com, Inc.*, No. 17-00783, 2017 WL 5277679, at *4 (E.D. Mo. Nov. 13, 2017) (internal quotes omitted); *see also Allen v. Quicken Loans Inc.*, No. 17-12352, 2018 WL 5874088, at *3 (D.N.J. Nov. 9, 2018) (holding that a "prerequisite to liability under section 2511(1)(a) is demonstrating that the electronic communication in question was 'intercepted'" and because "claims under subsection (c) and (d) are predicated on a violation of subsection (a), the Court considers all section 2511 claims together"); *see also Walsh v. Krantz*, 386 F. App'x 334, 340 (3d Cir. 2010) ("Inasmuch as [the defendant] did not 'intercept' the telephone call, logically he could not have 'disclosed' the content of the call to a third person, or 'used' any information disclosed during the call for any purpose[.]").

An intended recipient of a communication cannot unlawfully intercept the same communication (the "party exception"). *See* 18 U.S.C. § 2511(2)(d). The Wiretap Act explicitly provides an exception to any imposed liability where the alleged interceptor is "a party to the communication." *Id.*; *see also Capitol Recs. Inc. v. Thomas-Rasset*, No. 06-1497, 2009 WL 1664468, at *4 (D. Minn. June 11, 2009) (applying the party participation exception where the alleged interceptor received claimant's IP address through a peer-to-peer network making it a party to the communication).

Where the defendant is the "intended recipient of a communication [it] is necessarily one of its parties" and cannot be held liable under the Wiretap Act. *In re Google Inc. Cookie Placement Consumer Priv. Litig.*, 806 F.3d 125, 143, 153 (3d Cir. 2015) (affirming 12(b)(6) dismissal of Wiretap Act claims where Google and other internet advertising businesses were parties to the electronic transmissions at issue); *see also In re Nickelodeon Consumer Priv. Litig.*, 827 F.3d 262, 274 (3d Cir. 2016) (affirming 12(b)(6) dismissal of Wiretap Act claims where "Google was either a party to all communications with the plaintiffs' computers or was permitted to communicate with the plaintiffs' computers by [a third party], who was itself a party to all such communications"); *see also Jurgens*, 2017 WL 5277679, at *5 (granting motion to dismiss Wiretap Act claim where plaintiff entered credit card details on defendant's website, making defendant a party to the communication).

*Kurowski* illustrates the application of the party exception under the Wiretap Act. *See Kurowski*, 2023 WL 2349606, at *3. Much like Plaintiff's allegations here, the plaintiff in *Kurowski* alleged that the defendant ("Rush") violated the Wiretap Act by "non-consensually and deceptively embed[ing] [a] third-party source code on its website and its MyChart patient portal" and that the source code caused "transmissions of her personally identifiable patient data to Facebook, Google, and Bidtellect for advertising purposes"—thereby allegedly intentionally intercepting, using, and disclosing plaintiff's electronic communications. *Kurowski*, 2023 WL 2349606, at *1, 3. In granting Rush's motion to dismiss, the *Kurowski* court reasoned that, because "Rush—and not Facebook, Google, or Bidtellect—was the intended recipient of the allegedly intercepted communications," Rush

was "therefore a party to those communications and cannot be liable under the Wiretap Act for its alleged interception of them, if such an interception even occurred." *Id.* at *4.

Here, like *Kurowski*, Plaintiff's claims are based exclusively on her communications with North Memorial. (*See, e.g.*, Compl. ¶¶ 15, 18–19, 23, 26, 31, 112.) As Plaintiff alleges, North Memorial was the intended recipient of Plaintiff's communications and thus was a party to those communications. The Wiretap Act explicitly excludes liability under these circumstances. *See* 18 U.S.C. § 2511(2)(d). As party to any allegedly intercepted communications, North Memorial cannot be held liable under the Wiretap Act. *See Kurowski*, 2023 WL 2349606, at *4.

**B. The Complaint fails to allege North Memorial's "primary motivation" was to tortiously injure Plaintiff, rendering the crime-tort carve out inapplicable.**

To avoid dismissal, Plaintiff may argue that the exception does not apply because the communications at issue were "intercepted for the purpose of committing any criminal or tortious act." *See* 18 U.S.C. § 2511(2)(d); *see also United States v. Phillips*, 540 F.2d 319, 326 (8th Cir. 1976) (holding that the party making the allegation carries the burden that the interception was for the purpose of a criminal or tortious act). This argument similarly fails.

A plaintiff seeking to invoke Section 2511(d)(2)'s crime-tort carve-out must allege sufficient facts to show that the "primary motivation" or "a determinative factor" "in the actor's motivation for intercepting the conversation was to commit a criminal or tortious act." *In re DoubleClick Inc. Priv. Litig.*, 154 F. Supp. 2d 497, 514–15 (S.D.N.Y. 2001) (cleaned up) (stating the "'criminal' or 'tortious' purpose requirement is to be construed

narrowly”). To survive a motion to dismiss, a plaintiff must allege that at the time of the alleged violation, the defendant had as its “objective a tortious or criminal result.” *Caro v. Weintraub*, 618 F.3d 94, 100, 102 (2d Cir. 2010) (affirming motion to dismiss where plaintiff failed to “allege an independent tort that could provide the basis for the tortious intent necessary” for Wiretap Act claim). The tortious or criminal act must be “independent of the intentional act of recording.” *In re Nickelodeon Consumer Priv. Litig.*, 827 F.3d at 276 (finding the common law tort of intrusion upon seclusion inapplicable for purposes of invoking the tort-crime exception).

Courts have held that where the primary purpose of the alleged interception is merely based in financial gain—and not to tortiously injure a plaintiff—the crime-tort exception does not apply. *See In re DoubleClick Inc. Priv. Litig.*, 154 F. Supp. 2d at 519 (granting motion to dismiss and finding the crime-tort exception inapplicable where the defendant’s “purpose has plainly not been to perpetuate torts on millions of Internet users, but to make money by providing a valued service to commercial Web sites”); *Rodriguez v. Google LLC*, No. 20-04688, 2021 WL 2026726, at *6 n.8 (N.D. Cal. May 21, 2021) (citing *In re Google Inc. Gmail Litig.*, 2014 WL 1102660, at *18 n.13 (N.D. Cal. Mar. 18, 2014)) (granting motion to dismiss Wiretap Act claim and finding plaintiff’s crime-tort exception argument unavailing where there was no tortious purpose).

Here, Plaintiff does not allege that North Memorial’s “‘primary motivation’ or a ‘determining factor’ in its action has been to injure plaintiffs’ tortiously.” *In re DoubleClick Inc. Priv. Litig.*, 154 F. Supp. 2d at 518 (noting that while plaintiff alleged that defendant committed a series of torts, plaintiff did not allege that defendant acted with a tortious

purpose). Likewise, Plaintiff's invasion of privacy claim is not independent of the alleged interception but arose "through the act of inception itself." *In re Google Inc. Cookie Placement Consumer Priv. Litig.*, 806 F.3d at 145; (*see* Compl. ¶ 120). To the extent Plaintiff alleges that North Memorial engaged in the alleged conduct to better market to current and future patients, this purpose is undoubtedly backed by financial incentive—not a tort.

Accordingly, Count II should be dismissed.

## III. The Court should dismiss Plaintiff's claim under § 2511(3) of the Electronic Communications Privacy Act.

The Court should dismiss Plaintiff's claim under 18 U.S.C. § 2511(3) in Count III for three reasons: (1) Plaintiff did not allege facts showing that North Memorial provided an "electronic communication service to the public"; (2) the Complaint does not allege North Memorial divulged the "contents" of ***her*** communications; and (3) North Memorial could divulge any alleged communications because they were made to North Memorial.

### A. Section 2511(3) is inapplicable because North Memorial did not provide an "electronic communication service."

Section 2511(3) only applies to "a person or entity providing an electronic communication service to the public." The Electronic Communications Privacy Act ("ECPA") defines "electronic communication service" as "any service which provides to users thereof the ability to send or receive wire or electronic communications." 18 U.S.C. § 2510(15).

Courts have held that the provider of an electronic communication service is "the provider of the underlying service which transports the data, such as an internet service

provider or a telecommunications company whose cables and phone lines carry internet traffic." *See In re Michaels Stores Pin Pad Litig.*, 830 F. Supp. 2d 518, 524 (N.D. Ill. 2011). Simply put, an "electronic communication service" provides "Internet access itself." *In re Jetblue Airways Corp. Priv. Litig.*, 379 F. Supp. 2d 299, 307 (E.D.N.Y. 2005).

Companies that "merely purchase or use electronic communications services in the conduct of their ordinary business are not themselves electronic communications services." *Kurowski*, 2023 WL 2349606, at *6; *see also In re Jetblue*, 379 F. Supp. 2d at 307 (holding that a company "does not become an 'electronic communication service' provider simply because it maintains a website that allows for the transmission of electronic communications between itself and its customers"). Rather, companies who use electronic communication services, for instance to operate a website, are defined as "users" under the statute. *See In re DoubleClick Inc. Priv. Litig.*, 154 F. Supp. 2d at 509; *see also* 18 U.S.C. § 2510(13) (defining "user").

In *Kurowski*, the court found that the health care defendant "cannot plausibly be considered an electronic communications service provider within the meaning of the Act." *Kurowski*, 2023 WL 2349606, at *6. The court found that mere operation of a website with a patient portal did not cause the defendant to fall under this section of ECPA. *Id.* Even if the licensor of the patient portal technology may have been an ECPA electronic communication service, the health care defendant as a mere licensee of that technology was not. *Id.*

Here, although the Complaint refers to North Memorial's website as an electronic communication service, it does not allege any facts that plausibly show that the website

constituted an electronic communication service under the statute. (*See* Compl. ¶ 131.) Rather, and similar to the complaint in *Kurowski*, the Complaint alleges that North Memorial operated a website that included a portal for patients to interact with their providers.[5] (*See* Compl. ¶ 2.) As in *Kurowski* and *Jetblue*, North Memorial's operation of a website does not qualify it as an electronic communication service provider and, accordingly, Plaintiff has failed to state a claim under Section 2511(3).

### B. Plaintiff does not allege that North Memorial divulged the contents of her communications.

Even if North Memorial's act of offering patients access to the portal via its license with Epic could convert it into an electronic communication service (it does not), Plaintiff's claim fails for a second independent reason: Plaintiff fails to allege that North Memorial divulged the contents of her portal communications. This ECPA subsection only creates a cause of action for a person if the contents of the person's communications were intentionally divulged. *See* 18 U.S.C. §§ 2511(3)(a), 2520(a).

When discussing this claim, the Complaint only alleges that her "data" were divulged. (Compl. ¶ 131.) This is insufficient. First, the Complaint does not state she communicated the data in the portal. Second, for an ECPA-communication "contents" includes "any information concerning the substance, purport, or meaning of that communication." 18 U.S.C. § 2510(8). Metadata such as IP addresses and links clicked are not ECPA "contents" as metadata is generally not the substance of the communication. *See*

[5] Indeed, North Memorial licensed its MyChart portal from the same vendor—Epic—as the defendant in *Kurowski*. *See Kurowski*, 2023 WL 2349606, at *6.

*id.*; *In re Zynga Priv. Litig.*, 750 F.3d 1098, 1106–07 (9th Cir. 2014) (finding that information such as name, Facebook ID, and webpage address are not ECPA "contents"); *In re: Request for Int'l Jud. Assistance From the Turkish Ministry of Just.*, No. 16-80108, 2016 WL 2957032, at *1–2 (N.D. Cal. May 23, 2016) (holding that IP addresses are not content). Therefore, the Complaint's bare allegation that North Memorial divulged "data" does not mean that North Memorial divulged "contents." While Plaintiff need not provide every detail, she must allege enough facts regarding the contents so that North Memorial and the Court are not left speculating about what she alleges was divulged. *See Twombly*, 550 U.S. at 555.

The full Complaint fares no better. While it explains that the portal allows patients to communicate with providers and that Plaintiff used the portal, (*see* Compl. ¶¶ 2, 15), it never alleges that the ***contents of her*** portal communications were divulged to Meta. It merely states generally that she used the portal and that she provided information to North Memorial. (*See* Compl. ¶ 15.) She could have shared the information in this paragraph in another manner, leaving North Memorial guessing which communications of Plaintiff's it supposedly divulged, where and when those communications happened, and what the contents of them were.

A comparison with the *Kurowski* complaint shows the deficiencies of Plaintiff's Complaint on this issue. The *Kurowski* plaintiffs specifically alleged that they exchanged communications through the defendant's portal related to their particular medical conditions and providers and that the precise content of these communications was sent to third parties. (*Kurowski v. Rush System for Health*, N.D. Ill., Case No. 22-5380, Compl.

¶¶ 21–22, 32, 197–200, Sept. 30, 2022, Dkt. 1.) Because of these facts, the *Kurowski* court found that the complaint adequately alleged the "contents" element, despite dismissing the claim because the defendant did not—like North Memorial—provide an electronic communication service. *See Kurowski*, 2023 WL 2349606, at *5. Here, Plaintiff makes no similar specific allegations regarding the contents of her communications.

**C. Even if the Complaint adequately alleges that North Memorial provided an "electronic communication service," the Complaint also establishes that a complete defense applies.**

If the Complaint adequately alleges that North Memorial's provided an "electronic communication service," the Complaint also establishes that a complete ECPA defense applies. This complete defense applies not just to this claim but to all Plaintiff's claims such that if Plaintiff persists with this claim, the Court should dismiss the entire Complaint.

**1. ECPA permitted any alleged divulgence because any alleged communications were made to North Memorial.**

ECPA allows an electronic communication service to divulge the contents of a communication if the communication was made "to such person or entity." 18 U.S.C. § 2511(3)(a).

As discussed in relation to the first ECPA claim under the Wiretap Act, ECPA generally permits a party to a communication to share communications. This section is no different, as it allows electronic communication services to divulge the contents of communications made to them. *See id.*; *see also* S. Rep. No. 99-541, at 26 (1986) (explaining that the divulgence exceptions in this section are "relatively straightforward" and are "consistent with the one party consent exception" to ECPA). The Complaint alleges

all communications were made to North Memorial. Therefore, the Complaint establishes that this exception to the bar on electronic communication services divulging the contents of communications applies.

To underscore this point, in addition to the exception incorporated directly into the prohibited conduct, this Section contains another exception that bars Plaintiff's claim: "A person or entity providing electronic communication service to the public may divulge the contents of any such communication-- . . . (ii) with the lawful consent of the originator or ***any addressee or intended recipient*** of such communication." 18 U.S.C. § 2511(3)(b) (emphasis added). Even if North Memorial did provide an electronic communication service, the Complaint alleges North Memorial was Plaintiff's intended recipient, and under that exception, North Memorial would not need Plaintiff's consent to divulge—as the recipient, North Memorial needed only to consent itself, which it plainly did.

The Court should dismiss this claim.

**2. If North Memorial provided an "electronic communication service," ECPA provides a complete defense to all Plaintiff's claims and the entire Complaint should be dismissed.**

Indeed, if the Complaint plausibly alleges that North Memorial was an electronic communication service, the Court should dismiss not just this count but the entire Complaint with prejudice. ECPA provides that "a good faith determination that section 2511(3) . . . of this title permitted the conduct complained of . . . is a complete defense against any civil . . . action brought under this chapter or any other law." 18 U.S.C. § 2520(d).

As discussed above, if North Memorial provided an electronic communication service, Section 2511(3) permitted the alleged divulgence in two different ways because (1) any communications were made to North Memorial and (2) North Memorial—as the intended recipient—consented to divulge the communications. Therefore, this complete defense applies.

This complete defense applies not just to this Count and not just to the other ECPA claim in Count II, but to all of Plaintiff's claims as the complete defense applies to "any other law." *See Marshall v. Willner*, No. 06-665, 2007 WL 2725971, at *5 (W.D. Ky. Sept. 14, 2007) (dismissing non-ECPA claims including "privacy rights claims" because § 2520(d)'s good faith defense applies to claims "for the violation of **any laws**" (emphasis in original)); *Marshall v. Ackerman*, No. 05-458, 2006 WL 1642296, at *6–7 (W.D. Ky. June 7, 2006) (similar). When Congress first added the good faith defense, it did so specifically to bar all claims—whether under any state or federal law—where the defense applies. *See* 115 Cong. Rec. 37,192–93 (1969) (statement of Sen. John McClellan) (stating that the good faith defense shields defendants from "criminal or civil liability under the Federal or State law, either statutory or decisional").

Plaintiff's claims are based on the same facts: an allegation that North Memorial shared Plaintiff's communications made via North Memorial's website with Meta by intentionally installing and using Pixel on the website. Therefore, under the plain language

of the statute and in line with Congressional intent, this complete defense applies to all Plaintiff's claims as they arise from the same course of conduct.[6]

While "good faith" may typically require a fact-specific analysis not appropriate for a motion to dismiss, the Complaint fully establishes the defense here. Section 2511(3)(a) and (b) each provide that North Memorial may divulge the contents. The Complaint alleges only communications to North Memorial and that North Memorial intentionally installed and used Pixel with the intention of sharing communications with Meta. Taking the Complaint on its face, no reasonable person could find that North Memorial did not consent to sharing with Meta.

Because the Complaint fully establishes a complete defense to all claims under ECPA and any other law, if the Court finds that the Complaint adequately alleges that North Memorial provides an electronic communication service, it should dismiss the entire Complaint.[7] *See Wong v. Wells Fargo Bank N.A.*, 789 F.3d 889, 897, 900 (8th Cir. 2015)

---

[6] Even if Section 2520(d) did not apply to state law claims (it does), Minnesota law incorporates the same complete defense for electronic communication service providers that bars all Minnesota state law claims where applicable. *See* Minn. Stat. § 626A.02, subd. 3, § 626A.13, subd. 4.

[7] Although, if applicable, this defense alone would preclude Plaintiff's entire case, North Memorial does not rest its Motion to Dismiss on this defense alone. It does not, because, as explained above, North Memorial does not provide an electronic communication service. Instead, North Memorial raises this issue because Plaintiff's Complaint is self-refuting. While parties may plead in the alternative and with inconsistent claims, Fed. R. Civ. P. 8(d), each of the alternatives must still be plausible. *See Moreno v. Wells Fargo Bank, N.A.*, No. 18-2760, 2019 WL 1438248, at *7 (D. Minn. Apr. 1, 2019). Here, this Count goes beyond mere alternatives and inconsistencies by pleading allegations that establish a complete defense to the entire Complaint.

(affirming dismissal based on a defense for a Rule 12(b)(6) motion where "the complaint itself shows" the defense applies); *see also Villa v. Maricopa Cnty.*, 865 F.3d 1224, 1236–37 (9th Cir. 2017) (dismissing claims based on § 2520(d)'s good faith defense at the motion to dismiss stage); *McCready v. eBay, Inc.*, 453 F.3d 882, 891–92 (7th Cir. 2006) (same).

**IV. The Court should dismiss Plaintiff's MDTPA claim.**

In Count IV, Plaintiff alleges North Memorial violated Minn. Stat. § 325D.44, subds. 1(5), (7). These subsections bar certain misrepresentations regarding the nature of goods and services offered in the course of business. Minn. Stat. § 325D.44, subds. 1(5), (7).[8] The Minnesota Uniform Deceptive Trade Practices Act ("MDTPA") provides that a person "likely to be damaged by a deceptive trade practice of another may be granted an injunction against it." Minn. Stat. § 325D.45, subd. 1.

**A. Plaintiff fails to plead her MDTPA claim with particularity.**

Federal Rule of Civil Procedure 9(b)'s heightened pleading standards apply to MDTPA claims. *E-Shops Corp. v. U.S. Bank Nat. Ass'n*, 678 F.3d 659, 665 (8th Cir. 2012). Plaintiff must allege the circumstances constituting the alleged MDTPA violation with particularity by specifically setting forth "the who, what, when, where, and how." *Id.* at 666 (affirming dismissal of misrepresentation claim for failure to plead with particularity); *see also Moua v. Jani-King of Minnesota, Inc.*, 613 F. Supp. 2d 1103, 1112 (D. Minn.

[8] In Paragraph 142, the Complaint suggests that Minn. Stat. § 325D.44 contains certain other phrases. While some of these ideas are found in Minn. Stat. § 325D.44, subd. 1, the full phrases are not. Instead, they appear to be drawn from Indiana law. *See* Ind. Code. § 24-5-0.5-3(b)(1)–(2).

2009) (dismissing a misrepresentation claim because the complaint failed to specifically identify the specific provisions serving as the basis for the claim).

The Complaint never identifies a particular misrepresentation North Memorial made—let alone identify "the who, what, when, where, and how." (*See* Compl. ¶ 138 (relating to MDTPA claim but failing to allege any misrepresentation with particularity).) Plaintiff failed to plead the MDTPA claim with particularity and should be dismissed.

**B. Plaintiff fails to allege that she is likely to suffer future harm as required by the MDTPA.**

Plaintiff cannot show that she is likely to suffer a future harm as required to state a claim under MDTPA. MDTPA only creates a remedy for a "person likely to be damaged by a deceptive trade practice." Minn. Stat. § 325D.45, subd. 1. "A plaintiff alleging an MDTPA claim must show a likelihood of future harm because the statute provides relief only from future damage, not past damage." *Mgmt. Registry, Inc. v. A.W. Companies, Inc.*, No. 17-5009 (JRT/KMM), 2019 WL 7838280, at *4 (D. Minn. Sept. 12, 2019) (quotation omitted), *R&R adopted in relevant part*, 2020 WL 487315 (D. Minn. Jan. 30, 2020); *see also Jaskulske v. State Farm Mut. Auto. Ins. Co.*, No. 14-869, 2014 WL 5530758, at *6 (D. Minn. Nov. 3, 2014) (dismissing a MDTPA claim for failing to allege a likelihood of future harm).

Plaintiff alleges she is a ***former*** patient of North Memorial who used North Memorial's website in the ***past***. (Compl. ¶ 15.)[9] Therefore, Plaintiff did not allege that she

[9] On this point, Plaintiff's allegations are different from the allegations in *Kurowski*, because the plaintiff in *Kurowski* claimed to be a current patient of the defendant.

is likely to suffer a future harm, and Plaintiff did not plausibly plead an MDTPA claim. *See Jaskulske*, 2014 WL 5530758, at *6.

Even if Plaintiff's Complaint did allege that she will be a patient in the future, her MDTPA claim would still fail. First, a plaintiff alleging MDTPA violations is on notice of the practice and can no longer be harmed by continued violations. *Id.* ("Having experienced, investigated, and alleged the settlement practice, Jaskulske is on notice of the practice and can no longer say that he will again be deceived by the practice."). Courts in the District of Minnesota routinely dismiss MDTPA claims in these circumstances, because the fact that one cannot be deceived again eliminates the risk of future harm. *E.g.*, *id.*; *Olen v. N. Tier Retail, LLC*, No. 11-2665, 2012 WL 1580994, at *6 (D. Minn. May 4, 2012); *Indep. Glass Ass'n, Inc. v. Safelite Grp., Inc.*, No. 05-238, 2005 WL 3079084, at *2 (D. Minn. Nov. 16, 2005). Because Plaintiff is on notice of the alleged practice, Plaintiff cannot be deceived again, and her MDTPA claim should be dismissed.

Second, and in contrast to *Kurowski*, Plaintiff does not allege that she would be required to use the website if she were to receive care from North Memorial in the future. In *Kurowski*, the complaint alleged that the plaintiff "must engage with [defendant's] web properties to continue receiving care" and the court denied the motion to dismiss on that basis. *Kurowski*, 2023 WL 2349606, at *8. Here, the Complaint does ***not*** allege that

---

*Kurowski*, 2023 WL 2349606, at *8. Here, Plaintiff does not claim to be a current patient of North Memorial.

Plaintiff (or any individual) is required to engage with North Memorial's website to receive care. Plaintiff's MDTPA claim should be dismissed.

### C. Because North Memorial's alleged practices were consistent with its representations, Plaintiff fails to plausibly allege a deceptive trade practice.

As noted above, Plaintiff has failed to plead any allegedly deceptive statements with particularity. But to the extent that Plaintiff is referring to statements North Memorial made in its Privacy Policy, no reasonable person could plausibly find the Privacy Policy to have misrepresented North Memorial's practices. Plaintiff claims that North Memorial's practices were not as it represented because North Memorial shared certain data with Meta, "had a duty to disclose," and failed to "disclose[] to Plaintiff and the Class that it used Meta Pixel." (Compl. ¶¶ 143–44.)

While the Privacy Policy may not reference Pixel by name, it explicitly and repeatedly discloses that North Memorial may engage in the exact practices Plaintiff complains of. It states that North Memorial "may disclose information to third-parties," "may share . . . your information," and that it uses cookies to analyze web traffic and track visitors' habits so that its website can respond to visitors individually. (Privacy Policy at 2.) It also explains that cookies require the users' permission before placement and that users can decline cookies. (*Id.* at 2–3.) This is exactly the behavior Plaintiff complains of: North Memorial allegedly used Pixel's cookie technology to disclose information to the third-party Meta.[10] Because under the facts alleged in and embraced by the Complaint

[10] Further, the Privacy Policy states that North Memorial uses data gathered "to understand your needs and provide you with better service." (Privacy Policy; Compl. ¶ 16.)

North Memorial accurately represented that its web services had the characteristics and qualities that it did in fact have, the Complaint does not plausibly allege a deceptive practice.[11]

**D. Even if Plaintiff's MDTPA claim could survive, Plaintiff's claim for damages cannot.**

Although the Court should dismiss Plaintiff's MDTPA claim in its entirety, at a minimum, it should dismiss any claim for damages under MDTPA. (*See* Compl. ¶ 146 (seeking monetary damages under her MDTPA claim).) The only relief available under MDTPA is injunctive relief for future harms. *See* Minn. Stat. § 325D.45; *see also Chairez v. AW Distrib., Inc.*, No. 20-1473, 2021 WL 1600494, at *9 (D. Minn. Apr. 23, 2021) ("An injunction is the only available remedy for the [MDTPA] claim[.]"); *Hudock v. LG Elecs. U.S.A., Inc.*, No. 16-1220, 2017 WL 1157098, at *7 (D. Minn. Mar. 27, 2017) ("[B]oth this Court and the Minnesota Court of Appeals have consistently found the sole remedy for violations of the MDTPA is injunctive relief."); *Alsides v. Brown Inst., Ltd.*, 592 N.W.2d 468, 476 (Minn. Ct. App. 1999). Because damages are not available, Plaintiff's request for monetary relief under MDTPA should be dismissed.

---

The Complaint alleges that North Memorial used Pixel for this purpose. (*See* Compl. ¶ 5 ("improving its services for existing patients").)

[11] Plaintiff appears to assert that North Memorial had some heightened duty to disclose its practices to Plaintiff because Plaintiff could not have discovered North Memorial's alleged practices and Plaintiff could not avoid North Memorial's alleged practices. (*See* Compl. ¶¶ 139–44.) This argument lacks merit. First, as discussed, North Memorial did disclose its practices. Second, there is no basis under MDTPA for such a heightened duty. Third, the Privacy Policy explains that there are ways to block tracking technologies.

## V. The Court should dismiss Plaintiff's unjust enrichment claim.

"To state a claim for unjust enrichment, a plaintiff must allege facts showing that the plaintiff conferred a benefit on the defendant, the defendant appreciated and knowingly accepted the benefit, and the defendant's acceptance and retention of the benefit under the circumstances would be unjust or inequitable." *Hall v. Centerspace, LP*, No. 22-2028 (KMM/DJF), 2023 WL 3435100, at *6 (D. Minn. May 12, 2023). "Unjust enrichment claims do not lie simply because one party benefits from the efforts or obligations of others[.]" *Caldas v. Affordable Granite & Stone, Inc.*, 820 N.W.2d 826, 838 (Minn. 2012) (original alteration omitted) (quoting *ServiceMaster of St. Cloud v. GAB Bus. Servs., Inc.*, 544 N.W.2d 302, 306 (Minn. 1996)). "Rather, the plaintiff must show that the defendant was enriched illegally or unlawfully, or in a manner that is morally wrong." *Herlache v. Rucks*, No. A21-1427, 2023 WL 3486679, at *4 (Minn. May 17, 2023) (internal quotation marks and citations omitted).

### A. No unjust enrichment occurred because the Complaint fails to allege an implied or quasi-contract.

Minnesota courts "have limited the application of unjust enrichment to claims premised on an implied or quasi-contract between the claimant and the party alleged to be unjustly enriched." *Caldas*, 820 N.W.2d at 838. Plaintiff has failed to allege any implied or quasi-contract specifically related to her use of the website and, accordingly, this claim should be dismissed.

**B. No unjust enrichment occurred because the Complaint alleges that North Memorial acted consistently with its representations.**

Even if the Complaint had plausibly alleged an implied or quasi-contract between North Memorial and Plaintiff specifically related to use of the website, any such alleged agreement would have included the terms of North Memorial's Privacy Policy, which expressly stated that North Memorial might share data generated on the website. (*See* Privacy Policy at 1–2.) Plaintiff used the website even though she was aware of the Privacy Policy. Essentially, the Complaint alleges that North Memorial acted consistently with its representations—i.e., to the extent there was an agreement, North Memorial held up its end of the agreement. It is not plausibly "unjust" or "morally wrong" for a defendant to act in accordance with its representations to a plaintiff. That North Memorial allegedly benefited from this practice does not give rise to an unjust enrichment claim. *See Caldas*, 820 N.W.2d at 838.

**C. The Complaint fails to allege an uncompensated benefit.**

To state a claim for unjust enrichment, a plaintiff must also allege an uncompensated benefit. *See Amann v. Allianz Income Mgmt. Servs., Inc.*, No. A09-1891, 2010 WL 3220061, at *5 (Minn. Ct. App. Aug. 17, 2010) ("Moreover, appellants failed to properly assert an uncompensated benefit, a prerequisite to a finding of unjust enrichment."). Here, the Complaint fails to plausibly allege that Plaintiff received an uncompensated benefit from using North Memorial's website. To the contrary, the Complaint alleges that North Memorial used Pixel to "improve" its services to patients. (Compl. ¶ 5.) In other words, the Complaint admits that Plaintiff benefited from voluntarily using North Memorial's

website. The Complaint's failure to allege that North Memorial received an uncompensated benefit requires dismissal of her unjust enrichment claim.

To the extent that Plaintiff seeks to allege that she should have received more benefits from North Memorial for her use of the website, any such allegations would be insufficient to state a claim for unjust enrichment. *See Cady v. Bush*, 166 N.W.2d 358, 362 (Minn. 1969) ("[U]njust enrichment should not be invoked merely because a party has made a bad bargain."); *see also Loftness Specialized Farm Equip., Inc. v. Twiestmeyer*, 742 F.3d 845, 855 (8th Cir. 2014) (quoting *Cady*). This is especially true when North Memorial disclosed the nature of the bargain. According to the Complaint, the Privacy Policy stated that it used the data "to understand [their] needs and provide [them] . . . service." (Compl. ¶ 16 (alterations in original).)[12] The Privacy Policy immediately goes on to state North Memorial may share this data with third parties. (Privacy Policy at 1–2.) Plaintiff received the benefit that North Memorial promised to deliver based on her use of the website, and she had access to information informing her of the benefit North Memorial would receive. Plaintiff's use of the website cannot plausibly be inequitable, even if Plaintiff now wishes she had gotten more from the exchange.

Further, the plausibly alleged exchange here was the provision of medical services to Plaintiff as a patient in exchange for payment for those services. Therefore, North

[12] Plaintiff's Complaint uses this quotation to suggest that Plaintiff had no choice but to provide data to receive services from North Memorial. (*See* Compl. ¶ 16.) The quotation, however, omits the word "better" before "service" thereby implying the data is necessary to receive service altogether. (*See* Privacy Policy at 1.)

Memorial's data practices on its website cannot serve as the basis for an unjust enrichment claim because Plaintiff does not allege that she paid more for medical services to prevent data sharing than those who did not provide data on North Memorial's website. *See Hall*, 2023 WL 3435100, at *7 (dismissing unjust enrichment claim, holding that the plausibly alleged exchange was unrelated to the allegations regarding the defendant's treatment of the plaintiff's personal identifying information).

Finally, Plaintiff had the opportunity to retain all benefits from using the website while denying North Memorial an alleged benefit. North Memorial explained in the Privacy Policy that website users could block cookies, such that users retained a benefit and North Memorial did not. (Privacy Policy at 3.) Plaintiff's failure to do so does not render North Memorial's actions inequitable. *Cf. Twiestmeyer*, 742 F.3d at 855 (affirming dismissal of an unjust enrichment claim where counterclaimants sought to rewrite an agreement they agreed to).

Plaintiff's unjust enrichment claim should be dismissed.

## CONCLUSION

The Court should grant North Memorial's Motion to Dismiss.

Dated: June 6, 2023

*s/ Nicole M. Moen*

Nicole M. Moen (#0329435)
Geoffrey Koslig (#0402717)
**FREDRIKSON & BYRON, P.A.**
200 South Sixth Street, Suite 4000
Minneapolis, MN 55402-1425
Telephone: 612.492.7000
Facsimile: 612.492.7077

nmoen@fredlaw.com
gkoslig@fredlaw.com

***Attorneys for Defendant North Memorial Health Care***