**UNITED STATES DISTRICT COURT**
**DISTRICT OF MINNESOTA**

---

JACQUELINE MEKHAIL,

*individually, and on behalf of those similarly situated,*

Plaintiff,

v.

NORTH MEMORIAL HEALTH CARE,

*d/b/a North Memorial Health,*

Defendant.

Case No. 23-cv-00440 (KMM/TNL)

**DEFENDANT'S MEMORANDUM IN SUPPORT OF MOTION TO DISMISS PLAINTIFF'S AMENDED COMPLAINT**

---

# TABLE OF CONTENTS

Page

INTRODUCTION ..... 1

BACKGROUND ..... 1
- I. The Parties. ..... 1
- II. North's Website. ..... 1
- III. North's Policies. ..... 3

LEGAL STANDARD ..... 4

ARGUMENT ..... 5
- I. The Court should dismiss Plaintiff's claims under § 2511(1) of the Electronic Communications Privacy Act and § 626A.02 of the Minnesota Protection of Communications Act (Counts I, II). ..... 5
  - A. Plaintiff fails to allege an unlawful interception under the FWA or the MWA. ..... 6
  - B. The Complaint fails to plausibly allege that the crime-tort exception applies. ..... 9
- II. The Court should dismiss Plaintiff's MCFA claim (Count III). ..... 11
  - A. The Complaint fails to allege with particularity a plausible misrepresentation or omission that can support an MCFA claim. ..... 12
  - B. The Complaint fails to plead the necessary scienter for an MCFA claim. ..... 16
  - C. Plaintiff fails to allege her MCFA claim may proceed under Minnesota's private attorney general statute. ..... 17
- III. The Court should dismiss Plaintiff's MDTPA claim (Count IV). ..... 19
  - A. Plaintiff fails to plead a plausible basis for her MDTPA claim with particularity. ..... 20
  - B. Plaintiff fails to allege that she is likely to suffer future harm as required by the MDTPA. ..... 21
  - C. Because of the remedies available, Plaintiff also lacks standing for her MDTPA claim. ..... 23
- IV. The Court should dismiss Plaintiff's Minnesota Health Records Act claim (Count V). ..... 24
- V. The Court should dismiss Plaintiff's invasion of privacy claims (Count VI). ..... 27
  - A. Plaintiff's publication of private facts claim must be dismissed for failure to plead "publicity." ..... 28
  - B. Plaintiff's intrusion upon seclusion claim must be dismissed because Plaintiff fails to allege an "intrusion" that is "highly offensive." ..... 29
- VI. The Court should dismiss Plaintiff's unjust enrichment claim (Count VII). ..... 32
  - A. The Complaint fails to plausibly allege an implied or quasi-contract. ..... 33

B. Plaintiff fails to allege that she conferred an uncompensated benefit on North. .......... 33

C. No unjust enrichment occurred because the Complaint alleges that North acted consistently with its statements. .......... 35

CONCLUSION .......... 36

## INTRODUCTION

Defendant North Memorial Health Care ("North") moves to dismiss Plaintiff Jacqueline Mekhail's ("Plaintiff") Amended Complaint ("Complaint") with prejudice under Rule 12(b)(6) for failure to state a claim upon which relief can be granted claims and the putative class action.

## BACKGROUND

### I. The Parties.

North is a Minnesota health care system based in Robbinsdale, Minnesota providing a wide range of health care services to patients across Minnesota. (*See* Doc. 22 ¶¶ 24, 26.) North maintained the website www.northmemorial.com. (*See id.* ¶ 2.) The website included a "MyChart" portal for patients to pay bills and view test results, among other activities. (*Id.* ¶ 3.) North licensed MyChart from Epic Systems Corporation ("MyChart"). *See* https://mychart.northmemorial.com/NorthMemorial/Authentication/Login.[1]

Plaintiff claims she is a former patient of North who began receiving medical services in or around October 2021. (Doc. 22 ¶ 19.) She claims to have used North's website and patient portal. (*Id.*) She also claims to have Facebook and Instagram accounts. (*Id.* ¶ 21.)

### II. North's Website.

[1] The Court may consider this fact for this Motion to Dismiss because the Complaint necessarily embraces relevant parts of North Memorial's website as Plaintiff predicates her allegations on the website. *See Zean v. Fairview Health Servs.*, 858 F.3d 520, 526 (8th Cir. 2017); *see also Nelson Auto Ctr., Inc. v. Multimedia Holdings Corp.*, 951 F.3d 952, 955–56 (8th Cir. 2020) (considering a defendant's website on a motion to dismiss as it was necessarily embraced by the complaint).

The Complaint alleges that North installed a piece of code, the Meta Pixel ("Pixel"), on its website that transmitted visitors' activities to Meta.[2] (*Id.* ¶¶ 4–5.) The Complaint alleges Meta and Pixel track, transmit, and match data in part through "cookies." (*See id.* ¶¶ 50–51, 57, 63.) "Cookies are a text file that website operators, and others use to store information on the visitor's device" that can be used to transmit certain data and communicate with the device, websites, and third parties. (*Id.* ¶ 57.)

Plaintiff alleges that North's use of Pixel sent Meta information that website visitors provided North on its website. (*See id.* ¶¶ 5, 49.) This allegedly included visitors' button clicks; appointment information; information about providers, treatments, and conditions; communications with North; location; and IP addresses. (*Id.* ¶¶ 7, 9, 38, 54, 66–69.) Plaintiff alleges MyChart allows patients to schedule appointments, receive billing, review test results, and request prescription refills. (*Id.* ¶ 3.) North's MyChart patient portal is available only to North patients and is password-protected.[3] Plaintiff alleges that North shared the following data with Meta: IP addresses, device identifiers, Facebook user numbers, and URLs which she alleges can be used to direct targeted advertising to patients. (*See* Doc. 22 ¶¶ 5, 38, 57.) Plaintiff also alleges that patient communications within the

---

[2] Facebook and Instagram are both part of and products offered by Meta. *Introducing Meta: A Social Technology Company*, Meta Platforms, Inc. (Oct. 28, 2021), https://about.fb.com/news/2021/10/facebook-company-is-now-meta; (*see also* Doc. 22 ¶ 41.)

[3] *See* https://mychart.northmemorial.com/NorthMemorial/Authentication/Login.

MyChart portal are shared with Meta. (*Id.* ¶ 9.) Plaintiff alleges that North deployed the Pixel without her knowledge, consent, or authorization. (*Id.* ¶ 22.)

Plaintiff also alleges that website operators generally include Pixel on their websites to better understand how users interact with their websites and increase the efficiency and effectiveness of advertising. (*See id.* ¶¶ 8, 48, 52.) The Complaint alleges North used the improved data analytics generated by Pixel to reach new patients and improve North's services to existing patients. (*Id.* ¶ 8.)

## III. North's Policies.

The Complaint alleges North provided two documents regarding information related to its patients and customers: a Notice of Privacy Practices and a Privacy Policy. (*See id.* ¶¶ 28–29; *see also* Decl. of Nicole Moen, Exs. A ("Notice of Privacy Practices"), B ("Privacy Policy").)[4]

The Notice of Privacy Practices explained how North used and disclosed medical information created or received by North and its doctors, nurses, and other caregivers. (Notice of Privacy Practices at 1.)

The Privacy Policy described how North used, collected, and protected any information gathered by its website. (Privacy Policy at 1–2; *see also* Doc. 22 ¶ 28.) It explained that North may gather "personally identifiable information" from its users and

[4] As the Complaint quotes from and cites to these documents, their contents are alleged in the Complaint and are incorporated by reference. (*See* Doc. 22 ¶¶ 20, 28–30, 108–09, 112, 116–17.) Therefore, the Court may consider them for this Motion. *See Zean*, 858 F.3d at 526.

that it does so "to understand your needs and provide you with better service." (Privacy Policy at 1; Doc. 22 ¶ 20.) The Privacy Policy stated North may:

- "use the information to improve our products and services;"
- "***disclose information to third-parties*** who act for us on our behalf;" and
- "share or use your information for any other legally permitted business purpose upon our sole discretion."

(Privacy Policy at 2 (emphasis added); *see also* Doc. 22 ¶ 108.)

The Privacy Policy explained what cookies are and how they can be used to track information, identify and respond to users as individuals, create data, and improve North's website. (Privacy Policy at 2–3; *see also* Doc. 22 ¶ 109.) The Privacy Policy stated that "the cookie helps analyze web traffic or ***track when you visit a particular site***." (Privacy Policy at 2–3.) The Privacy Policy also informed users that accepting cookies is optional, a user's browser must grant permission for the cookie to operate, and that users can decline to accept cookies on North's website.[5] (*Id.*) The Privacy Policy advised website users that: "By using this website, you are consenting to the collection, use, and disclosure of your information as described in this policy." (*Id.* at 1; Doc. 22 ¶ 116.)

## LEGAL STANDARD

To survive a Rule 12(b)(6) motion to dismiss for failure to state a claim, a complaint must allege "enough facts to state a claim to relief that is plausible on its face." *Bell Atl.*

---

[5] The Complaint references a website to explain cookies; this website confirms that cookies can be disabled. (*See* Am. Compl. ¶ 57 n.14); First-Party Cookie, PCMAG.com, https://www.pcmag.com/encyclopedia/term/first-partycookie.

*Corp. v. Twombly*, 550 U.S. 544, 570 (2007). While a complaint "does not need detailed factual allegations," it must contain enough specific facts "to raise a right to relief above the speculative level." *Id.* at 555. Thus, a complaint needs "more than labels and conclusions." *Id.*; *accord Ashcroft v. Iqbal,* 556 U.S. 662, 678 (2009) ("Threadbare recitals of the elements of a cause of action, supported by mere conclusory statements, do not suffice."). While the Court accepts as true the Complaint's factual allegations and draws reasonable inferences in the light most favorable to the plaintiff, the Court "need not accept as true a plaintiff's conclusory allegations or legal conclusions drawn from the facts." *Glick v. W. Power Sports, Inc.*, 944 F.3d 714, 717 (8th Cir. 2019).

## <u>ARGUMENT</u>

### I. The Court should dismiss Plaintiff's claims under § 2511(1) of the Electronic Communications Privacy Act and § 626A.02 of the Minnesota Protection of Communications Act (Counts I, II).

In Counts I and II of her Complaint, Plaintiff alleges that North unlawfully intercepted, disclosed, and used the electronic communications of Plaintiff and other Class members in violation of Section 2511(1) of the Electronic Communications Privacy Act (the "Federal Wiretap Act" or "FWA") and Section 626A.02 of the Minnesota Protection of Communications Act (the "Minnesota Wiretap Act" or "MWA"). *See* 18 U.S.C. § 2511(1)(a)–(d); Minn. Stat. § 626A.02; (Doc. 22 ¶¶ 129–47, 148–66.) Counts I and II fail to state a claim because North was a party to Plaintiff's alleged communications, and therefore did not unlawfully intercept those communications. Plaintiff also fails to allege any facts that would support application of the crime-tort exception. Both counts should be dismissed.

### A. Plaintiff fails to allege an unlawful interception under the FWA or the MWA.

Because the MWA is "nearly identical" to its federal counterpart, Minnesota courts have routinely analyzed the statutes together. *Wilson v. McRae's US Mail Serv. Inc.*, No. 20-01664, 2020 WL 6808861, at *4 (D. Minn. Oct. 29, 2020), *R.&R. adopted*, 2020 WL 6802395 (D. Minn. Nov. 19, 2020) (stating that 18 U.S.C. § 2511 and Minn. Stat. § 626A.02 are "nearly identical" and recommending 12(b)(6) dismissal of plaintiff's wiretap claims). Plaintiff's allegations are similar for both statutes. (*Compare* Doc 22 ¶¶ 129–47, *with* ¶¶ 148–66.) North jointly addresses Counts I and II.

To state a claim under the FWA and MWA, a plaintiff must allege that the defendant engaged in an interception. *See* 18 U.S.C. § 2511(1); Minn. Stat. § 626A.02, subd. 1; *Jurgens v. Build.com, Inc.*, No. 17-00783, 2017 WL 5277679, at *4 (E.D. Mo. Nov. 13, 2017) (stating that under Section 2511(1) an "interception is a necessary element for each type of violation") (internal quotation omitted). Under the FWA, an "interception" is the "aural or other acquisition of the contents of any wire, electronic, or oral communication through the use of any electronic, mechanical, or other device." 18 U.S.C. § 2510(4); *see also* Minn. Stat. 626A.01, subd. 5 (similarly defining "intercept").

Under the FWA and the MWA, a "party to a communication" cannot unlawfully intercept that same communication (the "party exception"). *See* 18 U.S.C. § 2511(2)(d); *see also* Minn. Stat. § 626A.02, subd. 2(d); *Capitol Recs. Inc. v. Thomas-Rasset*, No. 06-1497, 2009 WL 1664468, at *3–4 (D. Minn. June 11, 2009) (applying the party exception

where the alleged interceptor received claimant's IP address through a peer-to-peer network making it a party to the communication).

Where the alleged interceptor is the "intended recipient of a communication [it] is necessarily one of its parties" and cannot be held liable under the wiretap statutes. *In re Google Inc. Cookie Placement Consumer Priv. Litig.*, 806 F.3d 125, 142–43, 153 (3d Cir. 2015) (affirming 12(b)(6) dismissal of FWA claims where Google and other internet advertising businesses were parties to the electronic transmissions at issue); *see also In re Nickelodeon Consumer Priv. Litig.*, 827 F.3d 262, 274–76 (3d Cir. 2016) (affirming 12(b)(6) dismissal of FWA claims where "Google was either a party to all communications with the plaintiffs' computers or was permitted to communicate with the plaintiffs' computers by [a third party], who was itself a party to all such communications"); *Caro v. Weintraub*, No. 09-00335, 2009 WL 2358919, at *2–4 (D. Conn. July 31, 2009), *aff'd*, 618 F.3d 94 (2d Cir. 2010) (applying party exception to dismiss FWA claims under § 2511(1)(a)–(b)).

The court in *Kurowski* applied the party exception to nearly identical facts to those at issue here. *See Kurowski v. Rush Sys. For Health*, No. 22-5380, 2023 WL 2349606, at *3–5 (N.D. Ill. Mar. 3, 2023) ("*Kurowski I*"). The plaintiff alleged that the defendant health care system, Rush, violated the FWA by "non-consensually and deceptively embed[ing] [a] third-party source code on its website and its MyChart patient portal" and that the source code caused "transmissions of her personally identifiable patient data to Facebook, Google, and Bidtellect for advertising purposes"—thereby allegedly intercepting, using, and disclosing plaintiff's electronic communications. *Id.* at *1, 3. In granting Rush's motion to

dismiss, the *Kurowski* court reasoned that, because "Rush—and not Facebook, Google, or Bidtellect—was the intended recipient of the allegedly intercepted communications," Rush was "therefore a party to those communications and cannot be liable under the [FWA] for its alleged interception of them, if such an interception even occurred." *Id.* at *4.

Here, like *Kurowski*, Plaintiff's claims are based exclusively on her communications with North. (*See* Doc. 22 ¶¶ 19, 22–23, 27, 30, 134.) As Plaintiff alleges, North was the intended recipient of Plaintiff's communications and thus was a party to those communications. Both the FWA and MWA explicitly exclude liability under these circumstances. *See* 18 U.S.C. § 2511(2)(d); Minn. Stat. § 626A.02, subd. 2(d). As party to any allegedly intercepted communications, North cannot be held liable under either wiretap statute. *See Kurowski*, 2023 WL 2349606, at *4.

Additionally, Plaintiff's FWA and MWA claims should be dismissed because Plaintiff failed to allege that North intercepted or disclosed the "contents" of her communications. *See* 18 U.S.C. §§ 2510(4), (8); Minn. Stat. § 626A.01, subds. 5, 8. The "contents" of a communication refers to the "substance" of the communication. *See* 18 U.S.C. § 2510(8). In *In re Zynga Priv. Litig.*, 750 F.3d 1098, 1106–08 (9th Cir. 2014), the court held that "content" under the ECPA "refers to the intended message conveyed by the communication, and does not include record information regarding the characteristics of the message". The *Zynga* court also held that information such as names, Facebook IDs, and webpage addresses did not constitute "contents" under the ECPA. *Id.* Here, to the extent Plaintiff alleges that "record information" such as identification and address information were disclosed, that information would not qualify as "contents" under ECPA.

**B. The Complaint fails to plausibly allege that the crime-tort exception applies.**

To avoid dismissal of her wiretap claims, Plaintiff may argue that North intercepted the alleged communications "for the purpose of committing any criminal or tortious act" (the "crime-tort" exception) rendering the party-exception inapplicable. *See* 18 U.S.C. § 2511(2)(d); Minn. Stat. § 626A.02, subd. 2(d); *Copeland v. Hubbard Broad. Inc.*, 526 N.W.2d 402, 406 (Minn. Ct. App. 1995) (holding that "the burden of proof is on the party attempting to show that the communication was intercepted for criminal or tortious purposes"). This argument fails.

The crime-tort exception is a narrow one. *See In re DoubleClick Inc. Priv. Litig.*, 154 F. Supp. 2d 497, 514–15 (S.D.N.Y. 2001). "Congress chose the word '*purpose*' for a reason." *Caro v. Weintraub*, 618 F.3d 94, 100 (2d Cir. 2010) (emphasis in original). A plaintiff seeking to invoke the crime-tort exception must sufficiently allege that the offender's objective was to have a tortious or criminal result. *Id.*

Where an offender's primary purpose for the alleged interception is based in financial gain—and not to tortiously injure the plaintiff—the crime-tort exception does not apply. *See In re DoubleClick Inc. Priv. Litig.*, 154 F. Supp. 2d at 519 (granting motion to dismiss FWA claim and holding the crime-tort exception inapplicable where defendant's "purpose has plainly not been to perpetuate torts on millions of Internet users, but to make money by providing a valued service to commercial Web sites"); *see also Katz-Lacabe v. Oracle Am., Inc.*, No. 22-04792, 2023 WL 2838118, at *10 (N.D. Cal. Apr. 6, 2023)

(dismissing pixel wiretap claim and finding crime-tort exception inapplicable where the goal was to "make money").

Here, Plaintiff fails to sufficiently allege that North's use of Pixel was for a criminal or tortious purpose. *See Iqbal*, 556 U.S. at 678. To the extent Plaintiff alleges any facts to infer the "purpose" of North's actions, this purpose was undoubtedly commercial, not tortious, in nature: North's alleged use of Pixel was to "attract[] new patients," "save money on advertising and marking costs," and "improv[e] its services for existing patients". (*See* Doc. 22 ¶¶ 8, 48, 52.)

Regardless, any crime or tort to trigger the exception must be independent from the interception itself. *See In re Nickelodeon Consumer Priv. Litig.*, 827 F.3d at 276 (finding an intrusion upon seclusion claim insufficient to provide a basis for any crime-tort intent). Because Plaintiff's alleged violations arose "through the act of interception itself," any application of the crime-tort exception is moot. (*See* Doc. 22 ¶ 144); *In re Google Inc. Cookie Placement Consumer Priv. Litig.*, 806 F.3d at 145.

To the extent that Plaintiff seeks to base the crime-tort exception on HIPAA, 42 U.S.C. § 1320(d)(6), and/or guidance issued by the Department of Health and Human Services in 2022 ("HHS Guidance"), those assertions lack merit. (Doc. 22 ¶¶ 98–106.) Here, as in *Kurowski v. Rush Sys. For Health*, No. 22-C-5380, 2023 WL 4707184, at *2 (N.D. Ill. July 24, 2023) ("*Kurowski II*"), Plaintiff failed to allege sufficient facts to suggest

that North disclosed her "patient health information" and/or "individually identifiable health information."[6]

Plaintiff's complaint does not allege any transfer of internet metadata specific as to her, personally. Instead, the Complaint alleges hypothetical visits to North's website made by hypothetical patients. These general allegations say nothing about the specific contents of any alleged internet communication Plaintiff may have had with North. Like the allegations in *Kurowski II*, Plaintiff failed to allege "any particular health or treatment information disclosure specific as to [her] that [North] allegedly made to any third-party, whether within the portal or not." *Id.* at *3.

Accordingly, Counts I and II should be dismissed.

## II. The Court should dismiss Plaintiff's MCFA claim (Count III).

In Count III, Plaintiff alleges North violated the Minnesota Consumer Fraud Act ("MCFA"). The MCFA prohibits the "act, use, or employment by any person of any fraud, false pretense, false promise, misrepresentation, misleading statement or deceptive

---

[6] The HHS Guidance can only be applied prospectively, not retroactively. *See Kurowski II*, 2023 WL 4707184, at *3. Plaintiff is a former North patient that began receiving medical services in October 2021 (*See* Doc. 22 ¶ 19). Because the Guidance was issued in December 2022, Plaintiff fails to allege that the prospective Guidance is applicable to her claim. Even if the Guidance were applicable, it would not aid Plaintiff. HHS's interpretation of HIPAA is not entitled to *Chevron* deference. *See Chevron, U.S.A., Inc. v. Nat. Res. Def. Council, Inc.*, 467 U.S. 837 (1984). Informal agency interpretations including opinion letters and enforcement guidelines do not receive *Chevron* deference. *Kurowski II*, 2023 WL 4707184, at *3 (citing *United States v. Mead Corp.*, 533 U.S. 218, 230 (2001); *Christensen v. Harris Cnty.*, 529 U.S. 576, 587 (2000)). The interpretation "offered by HHS in its Guidance goes well beyond the meaning of what the statute can bear." *Id.* at *4.

practice, with the intent that others rely thereon in connection with the sale of any merchandise." Minn. Stat. § 325.69, subd. 1. Federal Rule of Civil Procedure 9(b)'s heightened pleading standards apply to MCFA claims. *E-Shops Corp. v. U.S. Bank Nat. Ass'n*, 678 F.3d 659, 665 (8th Cir. 2012). Plaintiff must allege the circumstances constituting the alleged MCFA violation with particularity by specifically setting forth "the who, what, when, where, and how." *Id.* at 666 (affirming dismissal of an MCFA claim for failure to plead with particularity). Plaintiff's MCFA claim fails for several independent reasons.

**A. The Complaint fails to allege with particularity a plausible misrepresentation or omission that can support an MCFA claim.**

To proceed on an MCFA claim, a plaintiff must allege either a "fraud, false pretense, false promise, misrepresentation, misleading statement or deceptive practice," Minn. Stat. § 325.69, subd. 1, or "an omission of material fact, [and] special circumstances that trigger a duty to disclose," *Graphic Commc'ns Loc. 1B Health & Welfare Fund A v. CVS Caremark Corp.* ("*Graphic Commc'ns*"), 850 N.W.2d 682, 696 (Minn. 2014).

Plaintiff bases her claim on: (1) North allegedly misrepresented that it complied with law; (2) North allegedly misrepresented that it acted in accordance with healthcare standard practices; and (3) North allegedly omitted reference to Meta Pixel or Meta on its website. (*See* Doc. 22 ¶¶ 171–72.)

In *Bernstein v. Extendicare Health Servs., Inc.* ("*Bernstein I*"), 607 F. Supp. 2d 1027 (D. Minn. 2009), the court dismissed MCFA and Minnesota Uniform Deceptive Trade Practices Act ("MDTPA") class action claims with a similar fact pattern. The *Bernstein*

defendants owned and operated a Minnesota nursing home where the named plaintiff resided. *Id.* at 1028. The plaintiff alleged defendants stated they would "provide care in accordance with or exceeding applicable laws and regulations" and that they had "established rigorous standards" for caring for their "health care customers" as supporting plaintiff's fraud claims. *Id.* at 1030. The plaintiff contended these statements were false because the defendants did "not operate their nursing homes in accordance with legal standards," citing notices of noncompliance by state regulatory officials. *Id.*

The *Bernstein I* court dismissed the class action in its entirety. *Id.* at 1033. The court reasoned that even if the defendants had in fact broken the law, statements that they would comply with the law were non-actionable under these statutes. *See id.* at 1031. The court determined that statements that the defendants would comply with "applicable laws" or had established "rigorous standards" were "puffery" that "cannot serve as the basis for claims under Minnesota consumer protection statutes. *Id.* at 1031–32. The court held those statements do not establish "any particular standard or make[] any specific promise." *Id.* at 1032. The court also explained that promising to comply with the law is a redundancy that "does not create a promise independent of the legal obligations already imposed by State and Federal laws and regulations." *Id.*

As the court explained in *Bernstein II* (an order denying a motion for reconsideration), claims predicated on services not provided in compliance with law "cannot form the basis of a consumer protection action." *Bernstein v. Extendicare Health Servs., Inc.* ("*Bernstein II*") 653 F. Supp. 2d 939, 943 (D. Minn. 2009). If it could, such an action would be filed every time a nursing home received notice of a failure to comply with

a law or a regulation, which would result in litigation "supplant[ing] the extensive regulatory structure imposed on nursing homes, and it would insert the courts as overseers of the day-to-day operations of nursing homes." *Id.* at 944.

Like *Bernstein*, Plaintiff's MCFA claims arise out of alleged misrepresentations and omissions related to its compliance with law, regulations, and standards. The Court should similarly dismiss Plaintiff's MCFA claim.

### 1. The MCFA claim cannot proceed on a compliance-with-law theory.

As in *Bernstein*, North's alleged statement that it complies with the law cannot serve as the basis for this claim because the statements do not "reference[] any particular standard or make[] any specific promise" by which North's conduct can be judged. *Bernstein I*, 607 F. Supp. 2d at 1031–32. The Complaint does not allege which laws North supposedly represented that it would comply with. Nor do the statements create an independent legal obligation that can be vindicated by the MCFA. *See id.* at 1032. "A consumer protection action simply is not the path to resolution" for any alleged violations of health care law or regulations. *Id.*

### 2. The MCFA claim cannot proceed on a "healthcare standard practices" theory.

The second alleged misrepresentation—compliance with "healthcare standard practices"—also fails. (Doc. 22. ¶ 171.) The Complaint does not even identify a place where North made such a statement. Even if North had made that statement, the Complaint does not allege what the "standards" are or how North failed to comply with them. As in *Bernstein*, a claim based on alleged noncompliance with "standard practices" relies on

vague, puffing language that cannot serve as the basis for an MCFA claim. *See Bernstein I*, 607 F. Supp. 2d at 1032 (dismissing an MCFA claim based on a representation of establishing "rigorous standards").

**3. The MCFA claim cannot proceed on an omission theory.**

Plaintiff alleges that although North stated it "may disclose information to third-parties," it omitted specifically referencing Meta or Pixel. An MCFA claim based upon an omission must allege "not only an omission of material fact, but also special circumstances that trigger a duty to disclose." *Graphic Commc'ns*, 850 N.W.2d at 696. Plaintiff has failed to plead either a "special circumstance" or a "material" omission.

The Minnesota Supreme Court has recognized three "special circumstances": (1) a confidential or fiduciary relationship; (2) "special knowledge of material facts to which the other party does not have access;" and (3) "a person who speaks must say enough to prevent the words communicated from misleading the other party." *Id.* at 695. Plaintiff failed to plead any of these.

First, Plaintiff does not allege a fiduciary or confidential relationship based on website users' interactions with a public website.

Second, Plaintiff failed to plead a specialized-knowledge duty, because that circumstance requires allegations of "actual knowledge of fraudulent activity," not exclusive knowledge of certain facts. *Grady v. Progressive Direct Ins. Co.*, No. 22-866, 2022 WL 18494898, at *4 (D. Minn. Nov. 30, 2022) (quoting *Richfield Bank & Tr. Co. v. Sjogren*, 244 N.W. 2d 648, 651 (Minn. 1976)). Moreover, as the Complaint demonstrates,

Plaintiff also had access to this information, because it was possible for Plaintiff to determine that North's website was sending information to Meta. (*See* Doc. 22 ¶¶ 67–71.)

Third, as in *Grady*, Plaintiff fails to allege any affirmative statement apart from the Privacy Policy that would have required additional explanation. 2022 WL 18494898, at *4. Moreover, the Privacy Policy states that North "may disclose information to third-parties," (Privacy Policy at 2), exactly what the Complaint alleges North did with Pixel.

Even if the Complaint alleged a special circumstance applied, the Complaint does not allege an "omission of material fact." *See Graphic Commc'ns*, 850 N.W.2d at 696. As Plaintiff admits, North disclosed that it may share information with third parties and that it uses tracking technologies. (*See* Doc. 22 ¶¶ 108–09.) The only omission Plaintiff plausibly alleges is the omission of the specific technology North used and who it shared information with, i.e., "Meta Pixel" and "Meta." The Complaint does not plausibly allege that including "Meta Pixel" and "Meta" as examples of technologies or third-parties would be "material."

**B. The Complaint fails to plead the necessary scienter for an MCFA claim.**

To state an MCFA claim, a plaintiff must plead the defendant acted "with the intent that others rely" on the alleged misrepresentation. Minn. Stat. § 325F.69, subd. 1. Under *Ly v. Nystrom*, 615 N.W.2d 302, 310 (Minn. 2000), a plaintiff must allege the defendant's conduct "must have been intended to deceive someone." Courts dismiss MCFA claims where plaintiffs failed to allege an intent to deceive. *See Pickford v. Kemp & Assocs., Inc.*, No. 19-997, 2019 WL 3537219, at *3 (D. Minn. Aug. 2, 2019) ("Without specific allegations of intentional fraud, the Plaintiffs' MCFA claim cannot survive the motion to

dismiss."). Here, the Complaint does not plead any facts demonstrating that North intended to deceive.

### C. Plaintiff fails to allege her MCFA claim may proceed under Minnesota's private attorney general statute.

An MCFA private cause of action arises only through Minn. Stat. § 8.31, subd. 3a, Minnesota's Private AG Statute. *See Ly*, 615 N.W.2d at 310; Minn. Stat. § 325F.70, subd. 1. When pursuing private MCFA causes of action, plaintiffs must demonstrate their case provides a public benefit. *Ly*, 615 N.W.2d at 314.

Courts dismiss MCFA claims where the plaintiff fails to plausibly allege a public benefit. *See Gisairo v. Lenovo (United States) Inc.*, 516 F. Supp. 3d 880, 889–90 (D. Minn. 2021); *Select Comfort Corp. v. Tempur Sealy Int'l, Inc.*, 11 F. Supp. 3d 933, 936, 940 (D. Minn. 2014). In *Gisairo*, the court dismissed a putative class action MCFA claim for failure to plead a public benefit. 516 F. Supp. 3d at 890. Although the complaint alleged an ongoing misrepresentation about the defendant's product on the defendant's website, the court held that those allegations did not establish the representations were directed at the public, and the primary relief sought was damages for past harm. *Id.* at 889–90. As the court explained, MCFA claims alleging false advertising to the public do not necessarily create a public benefit. *Id.* at 889 (citing *Select Comfort*, 11 F. Supp. 3d at 938)).

The Complaint does not plead sufficient facts showing that Plaintiff's MCFA claim will benefit the public. Like *Gisairo*, the alleged misrepresentation on North's website is not directed to the public at large. (*See* Doc. 22 ¶ 107.) The primary MCFA relief Plaintiff seeks is monetary damages for past harms. (*See id.* ¶ 174.) Primarily seeking damages for

past harms does not benefit the public. *Gisairo*, 516 F. Supp. 3d at 890. Finally, Plaintiff does not plausibly allege that the MCFA claim would benefit the public, because North disclosed it would share information with third parties.

**D. The Complaint does not allege a misrepresentation "in connection with the sale of any merchandise."**

The MCFA only applies to misrepresentations "in connection with the sale of any merchandise." Minn. Stat. § 325F.69, subd. 1. The MCFA "does not apply to all allegations of fraud, but only to those where there is a nexus between the alleged fraud and the sale of merchandise." *Grady*, 2022 WL 18494898, at *3 (quoting *Banbury v. Omnitrition Int'l, Inc.*, 533 N.W.2d 876, 882 (Minn. Ct. App. 1995)); *see also Moua v. Jani-King of Minnesota, Inc.*, 613 F. Supp. 2d 1103, 1113 (D. Minn. 2009) (dismissing an MCFA claim where the alleged misrepresentations were unrelated to the sale of merchandise).

To the extent that there is a "sale" at issue, the only plausibly alleged sale was the provision of healthcare. (*See* Doc. 22. ¶ 170.)[7] The Complaint does not allege that the use of North's website is a "sale of merchandise." Even if healthcare services constitute "merchandise," the Complaint does not allege that North misrepresented the nature or quality of its healthcare services. *See Moua*, 613 F. Supp. 2d at 1113. The alleged misrepresentation relates to Plaintiff's use of North's website. *See id.* Accordingly, there is no connection or nexus between the alleged misrepresentation and the sale of merchandise.

[7] "Merchandise" is defined in Minn. Stat. § 325F.68, subd. 2.

### E. The Complaint does not allege a causal nexus between any wrongful conduct and any harms.

To state an MCFA claim, a complaint must allege a "causal relationship between an alleged injury and the alleged wrongful conduct." *Bernstein II*, 653 F. Supp. 2d at 944. This causal nexus includes "a reliance component" on the alleged misrepresentation. *In re St. Jude Med., Inc.*, 522 F.3d 836, 839 (8th Cir. 2008). In *Bernstein II*, the court denied a motion to reconsider the dismissal of the MCFA claim, holding that even if the plaintiff was injured, and had alleged actionable misrepresentations, the complaint still did not plead a causal nexus between the two. 653 F. Supp. 2d at 944–45. Here, the Complaint does not allege reliance on any misrepresentation that supports a causal nexus between the alleged misrepresentation and Plaintiff's alleged injuries.

The Court should dismiss the MCFA claim.

## III. The Court should dismiss Plaintiff's MDTPA claim (Count IV).

In Count IV, Plaintiff alleges North violated Minn. Stat. § 325D.44, subds. 1(5), (7). These subsections bar certain misrepresentations regarding the nature of goods and services offered in the course of business. Minn. Stat. § 325D.44, subds. 1(5), (7).[8] MDTPA provides that a person "likely to be damaged by a deceptive trade practice of another may be granted an injunction against it." Minn. Stat. § 325D.45, subd. 1. Rule 9(b)'s heightened pleading standard applies to MDTPA claims. *E-Shops Corp.*, 678 F.3d at 665.

---

[8] In Paragraph 183, the Complaint suggests that MDTPA contains certain other phrases. While Minn. Stat. § 325D.44, subd. 1 includes some of these ideas, the phrases appear to be drawn from Indiana law. *See* Ind. Code. § 24-5-0.5-3(b)(1)–(2).

### A. Plaintiff fails to plead a plausible basis for her MDTPA claim with particularity.

The Complaint includes a list labeled as "misrepresentations and omissions." (Doc. 22 ¶ 179.) Several of these allegations are not representations or omissions and cannot serve as a basis for this claim even if the allegations were true. (*See id.* ¶ 179(a)–(c).)

The Complaint makes similar allegations as it did for the MCFA claim, alleging North: (1) misrepresented and/or omitted information related to its compliance with law; (2) misrepresented and/or omitted information related to whether it reasonably or adequately protected privacy; and (3) omitted that it shared information with Meta using Pixel.

First, the statement that North complies with the law is a vague, non-actionable statement that does not create an independent, actionable legal obligation. *See Bernstein I*, 607 F. Supp. 2d at 1032 (dismissing an MDTPA claim based on a similar representation that a health care provider complied with the law).

Second, a statement that one takes "reasonable" measures is a vague, puffing statement with no specific promise. *See id.* (dismissing MDTPA claim predicated on the defendant representing it established "rigorous standards"). The Complaint fails to allege with particularity what the "reasonable" standard is and what basis Plaintiff has for imposing this standard. Allowing Plaintiff to proceed on either of these two theories would improperly allow the MDTPA to supplant the health care regulatory structure with courts overseeing the industry's day-to-day operations. *See Bernstein II*, 654 F. Supp 2d. at 944.

Third, Plaintiff fails to allege with particularity (1) the special circumstance giving North a duty to disclose and (2) why omitting the words "Meta" and "Pixel" are material when North's actions were consistent with its statements. *See Graphic Commc'ns*, 850 N.W.2d at 696; *see also Song v. Champion Petfoods USA, Inc.*, No. 18-3205, 2020 WL 7624861, at *11 & n.15 (D. Minn. Dec. 22, 2020) (applying *Graphic Commc'ns* to an MDTPA claim and dismissing both MCFA and MDTPA claims), *aff'd*, 27 F.4th 1339 (8th Cir. 2022). In a possible attempt to allege a duty to disclose, Plaintiff asserts that North "had exclusive or superior knowledge" and that Plaintiff could not discover North's practices. (Doc. 22 ¶¶ 184–85.) These conclusory allegations are belied by other allegations in the Complaint showing North disclosed its practices of tracking and sharing information with third parties in the Privacy Policy and that Plaintiff could discover the use of Meta Pixel specifically. (*See* Doc. 22 ¶¶ 67–71, 108–09; Privacy Policy at 2.) These conclusory allegations "are not entitled to the assumption of truth." *Iqbal*, 556 U.S. at 679. Moreover, even if North had exclusive or superior knowledge, this is insufficient to trigger a special duty, as Plaintiff does not allege "actual knowledge of fraudulent activity." *Grady*, 2022 WL 18494898, at *4 (alleging defendant "'possessed exclusive knowledge' . . . does not support a specialized knowledge duty"); *Jaskulske*, 2014 WL 5530758, at *5.

**B. Plaintiff fails to allege that she is likely to suffer future harm as required by the MDTPA.**

MDTPA only creates a remedy for a "person likely to be damaged by a deceptive trade practice." Minn. Stat. § 325D.45, subd. 1; *see also Jaskulske v. State Farm Mut. Auto.*

*Ins. Co.*, No. 14-869, 2014 WL 5530758, at *6 (D. Minn. Nov. 3, 2014) (dismissing a MDTPA claim for failing to allege a likelihood of future harm).

Plaintiff alleges she is a former patient of North who used North's website in the past. (Doc. 22 ¶ 19.)[9] Therefore, Plaintiff did not plausibly allege that she is likely to suffer a future harm, and Plaintiff did not plead an MDTPA claim. *See Jaskulske*, 2014 WL 5530758, at *6.

Plaintiff seeks to avoid this fact in two ways, both of which fail. First, she asserts she may suffer "an ongoing and future harm" because an invasion of privacy "cannot be undone." (Doc. 22 ¶ 187.) This assertion is a conclusory allegation insufficient to support this element. *See Iqbal*, 556 U.S. at 678 ("Threadbare recitals of the elements of a cause of action, supported by mere conclusory statements, do not suffice."). But even if not conclusory, an injunction barring North's future use of Pixel or requiring disclosure of its use would serve no purpose for Plaintiff because, as she alleges, Meta already has her data so the supposed harm of sharing it has already occurred.

Second, Plaintiff asserts that she "may return to North in the future . . . at which point she will be required or encouraged to use North's Websites." (Doc. 22 ¶ 188.)[10] First, this allegation is speculative and insufficient to show a likelihood of harm. *See Tusen v.*

---

[9] Plaintiff's allegations are different from the allegations in *Kurowski*, because the plaintiff in *Kurowski* claimed to be a current patient of the defendant. *Kurowski*, 2023 WL 2349606, at *8.

[10] Plaintiff's allegation that she will be "required" to use North's website is conclusory and implausible. She has alleged no facts showing that she will be "required" to use the website, even if she does become a patient again.

*M&T Bank*, No. 16-4339, 2017 WL 4990524, at *4 (D. Minn. Oct. 31, 2017) (dismissing an MDTPA claim because "merely demonstrating the possibility of harm is not enough" (cleaned up)). Second, a plaintiff alleging MDTPA violations is on notice of the practice and can no longer be deceived or harmed by continued violations. *Jaskulske*, 2014 WL 5530758, at *6 ("Having experienced, investigated, and alleged the settlement practice, Jaskulske is on notice of the practice and can no longer say that he will again be deceived by the practice."); *see also Olen v. N. Tier Retail, LLC*, No. 11-2665, 2012 WL 1580994, at *6 (D. Minn. May 4, 2012). Because Plaintiff is on notice of the alleged practice, Plaintiff cannot be deceived again if she chooses to return despite knowing North's alleged practices.

### C. Because of the remedies available, Plaintiff also lacks standing for her MDTPA claim.

In a class action, "federal courts lack jurisdiction if no named plaintiff has standing." *Frank v. Gaos*, 139 S. Ct. 1041, 1046 (2019). To have standing, "it must be likely, as opposed to merely speculative, that the injury will be redressed by a favorable decision." *Lujan v. Defs. of Wildlife*, 504 U.S. 555, 561 (1992) (cleaned up). Plaintiffs "must demonstrate standing for each claim that they press and for each form of relief that they seek (for example, injunctive relief and damages)." *TransUnion LLC v. Ramirez*, 141 S. Ct. 2190, 2208 (2021). Even if a plaintiff may have standing for a damages claim for past harms, the plaintiff may not be able to pursue an injunction. *See id.*; *City of Los Angeles v. Lyons*, 461 U.S. 95, 109 (1983).

The only relief available under MDTPA is injunctive relief for future harms. *See* Minn. Stat. § 325D.45; *see also Barclay v. Icon Health & Fitness, Inc.*, No. 19-2970, 2022 WL 486999, at *1 (D. Minn. Feb. 17, 2022) ("The MDTPA's only remedy is injunctive relief"). As explained above, Plaintiff's risk of future harm is speculative, not imminent. *See Lujan*, 504 U.S. at 564 & n.2 (holding that plaintiffs lacked standing despite alleging they had visited a place allegedly affected by the defendant and they intended to "some day" return there);[11] *see also Barclay*, 2022 WL 486999, at *2 (holding that MDTPA's likelihood of harm requirement is "indistinguishable from Article III's threat-of-future-harm requirement"). All Plaintiff's alleged harms are based on North's past practices. Therefore, a favorable decision granting the only relief available under MDTPA would not redress any alleged injury Plaintiff has suffered, and she has no standing for this claim. *See Barclay*, 2022 WL 486999, at *2 (denying motion for reconsideration of dismissal of MDTPA class action claim for lack of standing).

Plaintiff's MDTPA claim should be dismissed.

## IV. The Court should dismiss Plaintiff's Minnesota Health Records Act claim (Count V).

In Count V, Plaintiff alleges that North violated the Minnesota Health Records Act ("MHRA"). Because Plaintiff failed to plausibly allege that North disclosed her "health records" to Meta or any other third party, Count V must be dismissed.

[11] Unlike the *Lujan* plaintiffs who specifically alleged that they intended to return in the future, Plaintiff has not alleged an intent to return. 504 U.S. at 564.

The MHRA "governs the release of a patient's health-related records by health-care providers." *Expose v. Thad Wilderson & Assocs., P.A.*, 863 N.W.2d 95, 102 (Minn. Ct. App. 2015), *aff'd*, 889 N.W.2d 279 (Minn. 2016). Under the MHRA, a healthcare provider "may not release a patient's health records to a person" without the patient's consent or specific authorization in law. Minn. Stat. § 144.293, subd. 2. Where there is no "release and disclosure of 'health records'" the MHRA does not apply. *Rhoades v. Lourey*, No. A18-1120, 2019 WL 1006804, at *2 (Minn. Ct. App. Mar. 4, 2019) (citing Minn. Stat. §§ 144.293, subd. 1–2, .298, subd. 2).

Under the MHRA, a "health record" includes any information that "relates to the past, present, or future physical or mental health or condition of a patient; the provision of health care to a patient; or the past, present, or future payment for the provision of health care to a patient." Minn. Stat. § 144.291, subd. 2(c); *see also Expose*, 863 N.W.2d at 102 (defining "health record"). "Health records" afforded protection under the MHRA include "laboratory reports, x-rays, prescriptions, and other technical information[.]" *Furlow v. Madonna Summit of Byron*, No. A19-0987, 2020 WL 413356, at *2 (Minn. Ct. App. Jan. 27, 2020) (internal quotations omitted).

A "health record" under the MHRA does not extend to documents or records from which a person's health condition or patient status can be "inferred" or "deduced." *See Furlow*, 2020 WL 413356, at *2–3; *Rhoades*, 2019 WL 1006804, at *1–2. Instead, to qualify as a "health record," a record must "expressly" state an individual's past, present, or future physical or mental health condition as a patient or provision of health care. *See Furlow*, 2020 WL 413356, at *2.

Here, Plaintiff makes the conclusory allegation that by using North's website, Plaintiff exchanged information with North that concerned her past, present, and future health conditions and provision of health care, and thus created a health record under the MHRA. (*See* Doc. 22 ¶ 193.) Plaintiff further alleges that by North embedding Pixel onto its website, it unlawfully disclosed her health records to Meta. (*See id.* ¶ 196.) These allegations do not support an MHRA claim.

Courts have disposed of similar theories under HIPAA (a federal health information statute with nearly identical language to the MHRA). As the Ninth Circuit held in *Smith*, "the connection between a person's browsing history and his or her own state of health is too tenuous to support . . . the disclosure requirement of HIPAA." *Smith v. Facebook, Inc.*, 745 F. App'x 8, 9 (9th Cir. 2018). Similarly, in *Kurowski I*, the court found that the "hypothetical data disclosures" from the plaintiff's "clicks on certain areas of [the health provider's] public website" did not involve the "the past, present, or future physical or mental health or condition of an individual[.]" *Kurowski I*, 2023 WL 2349606, at *5; *see also Smith v. Facebook, Inc.*, 262 F. Supp. 3d 943, 954–55 (N.D. Cal. 2017), *aff'd*, 745 F. App'x 8 (9th Cir. 2018) (finding that URLs reflecting searches for doctors, melanoma treatment, and intestine transplants did not relate to the "past, present, or future physical or mental health or condition of an individual").

Minnesota courts have likewise dismissed MHRA claims where the record did not constitute a "health record," because it did not "expressly" state the individual's "past, present, or future physical or mental health condition." *See Furlow*, 2020 WL 413356, at *2–3; *see also Rhoades*, 2019 WL 1006804, at *1–2. In *Furlow*, the court affirmed the

district court's decision granting a motion to dismiss, on the basis that the record at issue did not "expressly" state the individual's health condition and, accordingly, did not qualify as a "health record" under the MHRA. *Furlow*, 2020 WL 413356, at *1, 3. Similarly, in Rhoades, the court affirmed the granting of a motion to dismiss, holding that a form that contained substantial information about the plaintiff, from which his status as a patient could be "deduced" or "inferred," nevertheless did not qualify as a "health record". *Rhoades*, 2019 WL 1006804, at *1–2.

Here, Plaintiff failed to allege any "health record" under the MHRA. Plaintiff did not expressly share—nor did North collect—any information about her "past, present, or future physical or mental health or condition" to create a "health record." Plaintiff's clicking around North's website to "research information about medical issues and conditions, [and] research doctors" could, at most, permit an "inference" that Plaintiff, herself, *might be* experiencing a particular illness or looking for a particular doctor. (*See* Doc. 22 ¶ 2.) Regardless of any inference, Plaintiff's searches fail to disclose any substantive health information protected under the MHRA. Further, a health record under the MHRA must relate to the health or condition of a *patient*. North's website provides general health information accessible to the public. *Anyone*—not just patients—can use North's website at any time, for any purpose.

Because Plaintiff's communications with North are not "health records" under the MHRA, Plaintiff has failed to allege any unlawful disclosure of the same. Count V cannot survive.

## V. The Court should dismiss Plaintiff's invasion of privacy claims (Count VI).

Under Count VI, Plaintiff alleges a claim for "invasion of privacy," specifically the publication of private facts and intrusion upon seclusion. Plaintiff failed to state a claim for which relief can be granted under either tort. (*See* Doc. 22 ¶¶ 199–209.)

**A. Plaintiff's publication of private facts claim must be dismissed for failure to plead "publicity."**

A "claim for publication of private facts requires that private information be made public." *Cieslack v. Easly*, No. 17-2338, 2018 WL 2926502, at *2 (D. Minn. June 11, 2018). "Publicity" means that "the matter is made public, by communicating it to the public at large, or to so many persons that the matter must be regarded as substantially certain to become one of public knowledge." *Bodah v. Lakeville Motor Express, Inc.*, 663 N.W.2d 550, 557 (Minn. 2003) (citing Restatement (Second) of Torts § 652D). "[A]bsent dissemination to the public at large, [a] claimant's 'private persona' has not been violated." *Id.*

In *Bodah*, the Minnesota Supreme Court held that the dissemination of "204 employees' social security numbers to 16 terminal managers in six states" did not constitute "publicity" to withstand a motion to dismiss. *Bodah*, 663 N.W.2d at 557–59. In *Sherr v. HealthEast Care Sys.*, 262 F. Supp. 3d 869, 881–82 (D. Minn. 2017), the court held that the alleged dissemination by a health care provider "to a community of 35–40 individuals does not constitute publicity" and dismissed for failure to state a claim. In *Cieslack*, the court held that a disclosure "even if to 50 or 100 new employees, is not sure to reach the public" and granted a motion to dismiss plaintiff's claim for publication of private facts. *Cieslack*, 2018 WL 2926502, at *2.

Here, Plaintiff does not allege that North disclosed Plaintiff's information to the public at large. Plaintiff alleges only that North disclosed information to Meta and unspecified "vendors and other third parties." (*See* Doc. 22 ¶¶ 5, 37–38, 74, 201, 204.); *see also Sherr*, 262 F. Supp. 3d at 881 (bald conclusions do not sufficiently allege publicity). As in *Bodah*, *Sherr*, and *Cieslack*, these alleged disclosures do not constitute "publicity" because they were not made to the public at large. Because Plaintiff has not alleged "publicity," the Court should dismiss Plaintiff's claim for publication of private facts.

**B. Plaintiff's intrusion upon seclusion claim must be dismissed because Plaintiff fails to allege an "intrusion" that is "highly offensive."**

Under Minnesota law, a claim for intrusion upon seclusion has three elements: (1) an intrusion; (2) that is highly offensive; and (3) into some matter in which a person has a legitimate expectation of privacy. *Rasmusson v. Chisago Cnty.*, 991 F. Supp. 2d 1065, 1078 (D. Minn. 2014).

An act of "intrusion" is the threshold element for an intrusion upon seclusion privacy tort. *See Lehman v. Zumbrota-Mazeppa Pub. Sch.*, No. A04-1226, 2005 WL 894756, at *3–4 (Minn. Ct. App. Apr. 19, 2005). For an intrusion to occur, a defendant must partake in an "affirmative act . . . in obtaining the information at issue." *Id.* at *4; *see also Wittwer v. Enbridge*, Inc., No. A06-1049, 2007 WL 152533, at *4 (Minn. Ct. App. Jan. 23, 2007) (holding that because intrusion upon seclusion is an intentional tort, "there must be an intentional invasion of privacy such as eavesdropping or spying").

Where a plaintiff voluntarily provides information to a defendant, a defendant has not intruded into plaintiff's private affairs for purposes of the tort, *even if* that information

is subsequently disclosed. *See Lehman*, 2005 WL 894756, at *4 (affirming lack of intrusion where plaintiff voluntarily provided his medical leave letter which was later disclosed to the press—noting that what plaintiff "object[ed] to is not the school district obtaining the letter but its publication of the letter"); *Jones v. Walgreens Co.*, No. A11-1261, 2012 WL 1658895, at *4 (Minn. Ct. App. May 14, 2012) (affirming dismissal for lack of intrusion where defendants knew plaintiff's medical and insurance information because they worked at the pharmacy, not because they intruded into plaintiff's private affairs); *C.L.D. v. Wal-Mart Stores, Inc.*, 79 F. Supp. 2d 1080, 1083 n.1 (D. Minn. 1999) ("plaintiff voluntarily disclosed her medical circumstances to [the defendant] and cannot claim that he obtained the information by intrusive means").

The court in *Kurowski* dismissed an intrusion upon seclusion claim under nearly identical facts as those alleged in the Complaint. *See Kurowski,* 2023 WL 2349606, at *8–9. The *Kurowski* court held the core of the intrusion upon seclusion tort is the "offensive prying into the private domain of another," "not publication of publicity." *Id.* at *9 (quoting *Dinerstein v. Google, LLC*, 484 F. Supp. 3d 561 (N.D. Ill. 2020)). "Thus, disclosures of private personal information do not support a claim for unauthorized intrusion." *Id.* (internal quotations omitted).

Like *Kurowski*, the core of Plaintiff's intrusion upon seclusion claim is her allegation that she voluntarily engaged in communications with North and intended for her information to reach North, and that North disclosed her website communications to Meta. (*See* Doc 22 ¶¶ 19, 22–23, 27, 30, 134.) Because Plaintiff voluntarily engaged in

communications with North, North could not have *intruded* in Plaintiff's private affairs. *See Kurowski I*, 2023 WL 2349606, at *8–9.

Even if North committed an intrusion through its use of Pixel, Plaintiff fails to plausibly allege this was "highly offensive". Liability for an intrusion upon seclusion claim only attaches where "interference with the plaintiff's seclusion is a substantial one[.]" *Loeffler v. City of Anoka*, No. 13-2060, 2014 WL 4449674, at *25 (D. Minn. June 24, 2014) *R.&R. adopted*, 2014 WL 4449692 (D. Minn. Sept. 9, 2014), *aff'd*, 893 F.3d 1082 (8th Cir. 2018) (internal quotations omitted). To have a viable claim "plaintiffs must meet a high threshold of offensiveness and expectation of privacy." *Id*. at *26; *see also id.* at *26–27 (collecting cases granting dismissal of intrusion claim for lack of offensiveness); *Boring v. Google Inc.*, 362 F. App'x 273, 279 (3d Cir. 2010) (holding that plaintiff alleging an intrusion claim must "aver sufficient facts to establish that the information disclosed would have caused mental suffering, shame or humiliation to a person of ordinary sensibilities").

Courts have held that "data collection and disclosure to third parties that is 'routine commercial behavior' is not a 'highly offensive' intrusion of privacy." *Hammerling v. Google*, 615 F. Supp. 3d 1069, 1090 (N.D. Cal. 2022) (citing *Low v. LinkedIn Corp.*, 900 F. Supp. 2d 1010, 1025 (N.D. Cal. 2012) (LinkedIn's disclosure of users' browser history to third parties was not highly offensive); *Google Priv. Pol'y*, 58 F. Supp. 3d 968, 987–88 (N.D. Cal. 2014) (Google's collection and disclosure of users' browsing histories was not highly offensive)). This is particularly true where the data allegedly collected is not "sufficiently specific or personal." *Hammerling*, 615 F. Supp. 3d at 1091 (granting motion

to dismiss and finding plaintiff failed to allege that Google's use of its "Android lockbox" to collect data was highly offensive).

Here, Plaintiff fails to plausibly allege a "highly offensive" interference that would meet the offensiveness threshold for purposes of her intrusion upon seclusion claim. Plaintiff's intrusion allegations rest on the collection and distribution of her website behaviors on North's publicly available website. But North's Privacy Policy explicitly provides that it may collect a user's information and disclose this information to third parties. Plaintiff's allegations are nothing other than "routine commercial behavior." *See Hammerling*, 615 F. Supp. 3d at 1090 (collecting cases). Moreover, any alleged collection of Plaintiff's IP address or URL data from browsing publicly accessible information is not sufficiently personal or specific. (*See* Section IV.)

Count VI should be dismissed in its entirety.

## VI. The Court should dismiss Plaintiff's unjust enrichment claim (Count VII).

"To state a claim for unjust enrichment, a plaintiff must allege facts showing that the plaintiff conferred a benefit on the defendant, the defendant appreciated and knowingly accepted the benefit, and the defendant's acceptance and retention of the benefit under the circumstances would be unjust or inequitable." *Hall v. Centerspace, LP*, No. 22-2028 (KMM/DJF), 2023 WL 3435100, at *6 (D. Minn. May 12, 2023). A plaintiff must also allege an "uncompensated" benefit. *See Amann v. Allianz Income Mgmt. Servs., Inc.*, No. A09-1891, 2010 WL 3220061, at *5 (Minn. Ct. App. Aug. 17, 2010).

### A. The Complaint fails to plausibly allege an implied or quasi-contract.

Minnesota courts "have limited the application of unjust enrichment to claims premised on an implied or quasi-contract between the claimant and the party alleged to be unjustly enriched." *Caldas v. Affordable Granite & Stone, Inc.*, 820 N.W.2d 826, 838 (Minn. 2012). Plaintiff has failed to plausibly allege any implied or quasi-contract related to her use of the website and, accordingly, this claim should be dismissed.

### B. Plaintiff fails to allege that she conferred an uncompensated benefit on North.

Plaintiff alleges that by using North's website, she conferred a benefit on North, which North unjustly retained. The Complaint provides only a vague and conclusory allegation that Plaintiff conferred a benefit on North, alleging it received "monetary compensation," without providing any details, including who allegedly provided the monetary compensation. (Doc. 22 ¶ 211.) This conclusory allegation is insufficient to plausibly allege a benefit. *See Iqbal*, 556 U.S. at 678.

Moreover, the "plausibly alleged exchange" here was North providing healthcare to Plaintiff in exchange for payment. *See Hall*, 2023 WL 3435100, at *7. North's data practices on its website cannot serve as the basis for an unjust enrichment claim because Plaintiff does not allege that she paid more for healthcare to prevent data sharing than those who did not provide data on North's website. *See id.* at *7 (dismissing an unjust enrichment claim and holding that the "plausibly alleged exchange" did not include an allegation that differentiated the plaintiff or class members from any other person engaged in similar transactions in exchange for greater protection of personal identifying information).

Even if Plaintiff conferred a benefit on North, the Complaint fails to allege any benefit was "uncompensated." *See Amann*, 2010 WL 3220061, at *5. Although the Complaint includes the conclusory allegation that Plaintiff was uncompensated, that allegation is belied by other allegations in the Complaint, including that North used Pixel to "improve" its services to patients like Plaintiff. (Doc. 22 ¶ 8.) "Threadbare recitals of the elements of a cause of action, supported by mere conclusory statements, do not suffice." *See Iqbal*, 556 U.S. at 678. To the extent that Plaintiff alleges that she should have received more "compensation" from North in exchange for her use of North's website, this allegation cannot support an unjust enrichment claim. *See Cady v. Bush*, 166 N.W.2d 358, 362 (Minn. 1969) ("unjust enrichment should not be invoked merely because a party has made a bad bargain"); *see also Loftness Specialized Farm Equip., Inc. v. Twiestmeyer*, 742 F.3d 845, 855 (8th Cir. 2014).

This is especially true where, as here, North disclosed the terms of the "bargain." According to the Complaint, the Privacy Policy stated that it used the data "to understand [their] needs and provide [them] . . . service." (Doc. 22 ¶ 20 (alterations in original).)[12] The Privacy Policy states North may share this data with third parties. (Privacy Policy at 1–2.) Plaintiff's use of the website cannot plausibly be inequitable, even if Plaintiff now wishes she had gotten more from the exchange.

[12] Plaintiff's Complaint uses this quotation to suggest that Plaintiff had no choice but to provide data to receive services from North. (*See* Doc. 22 ¶ 20.) The quotation, however, omits the word "better" before "service" thereby inaccurately implying the data is necessary to receive service altogether. (*See* Privacy Policy at 1.)

### C. No unjust enrichment occurred because the Complaint alleges that North acted consistently with its statements.

If the Complaint had plausibly alleged an implied or quasi-contract between North and Plaintiff, any such alleged agreement would have included the terms of North's Privacy Policy, which stated that North used tracking technology and might share data generated on the website.[13] (*See* Privacy Policy at 1–2.) Plaintiff's basis for her unjust enrichment claim is that North acted consistently with those statements. (*See* Doc. 22 ¶¶ 211–13.)[14] It is not plausibly "unjust" for North to act consistently with its statements to Plaintiff.[15] That North allegedly benefited from this practice does not give rise to an unjust enrichment claim. *See Caldas*, 820 N.W.2d at 838.

Plaintiff's unjust enrichment claim should be dismissed.

---

[13] To the extent that the Privacy Policy is an express contract, Plaintiff's unjust enrichment claim would also fail. *See HomeStar Prop. Sols., LLC v. Safeguard Props., LLC*, 370 F. Supp. 3d 1020, 1029–30 (D. Minn. 2019) (holding that unjust enrichment claims are precluded when an express contract "governs the at-issue conduct"); *see also Drobnak v. Andersen Corp.*, 561 F.3d 778, 786–87 (8th Cir. 2009) (affirming dismissal of unjust enrichment claim where plaintiffs had a legal remedy available but plaintiffs failed to properly plead it).

[14] The Privacy Policy refutes Plaintiff's conclusory allegation that the use of tracking technology was "secret." (*See* Doc. 22 ¶¶ 67–71); *see also Zean*, 858 F.3d at 526–27 (8th Cir. 2017) (affirming dismissal where documents embraced by the complaint refuted a conclusory allegation).

[15] North explained in the Privacy Policy that website users could block cookies. (Privacy Policy at 3.) Plaintiff had the opportunity to retain all benefits from using the website while denying North its alleged benefit. Plaintiff's failure to do so does not render North's actions inequitable. *Cf. Loftness*, 742 F.3d at 855 (affirming dismissal of an unjust enrichment claim where counterclaimants sought to rewrite an agreement via this claim).

## CONCLUSION

The Court should grant North's Motion to Dismiss Plaintiff's Amended Complaint.

Dated: July 25, 2023

*s/ Nicole M. Moen*

Nicole M. Moen (#0329435)
Geoffrey Koslig (#0402717)
Victoria M. Manfredonia (#0504171)
**FREDRIKSON & BYRON, P.A.**
60 South Sixth Street, Suite 1500
Minneapolis, MN 55402-4400
Telephone: 612.492.7000
Facsimile: 612.492.7077
nmoen@fredlaw.com
gkoslig@fredlaw.com
vmanfredonia@fredlaw.com

***Attorneys for Defendant***
***North Memorial Health Care***