**UNITED STATES DISTRICT COURT**
**DISTRICT OF MINNESOTA**

| | |
|---|---|
| Jacqueline Mekhail, individually, and on behalf of those similarly situated,<br><br>Plaintiff,<br>v.<br><br>North Memorial Health Care, d/b/a North Memorial Health,<br><br>Defendant. | Case No. 0:23-cv-00440-KMM-TNL<br><br>**MEMORANDUM OF LAW IN OPPOSITION TO DEFENDANT'S MOTION TO DISMISS PLAINTIFF'S AMENDED COMPLAINT** |

## TABLE OF CONTENTS


INTRODUCTION ........ 1

BACKGROUND ........ 3

LEGAL STANDARD ........ 6

ARGUMENT ........ 6

I. PLAINTIFF ALLEGES VALID WIRETAP CLAIMS ........ 6

A. Defendant intentionally disclosed the "contents" of Plaintiff's Website communications. ........ 8

B. The "Party Defense" does not apply here. ........ 10

1. North violated the Wiretap Statutes by secretly duplicating and forwarding communications. ........ 11

2. North intentionally used the contents of unlawfully intercepted communications. ........ 13

a. North Violated § 2511(1)(d) and Minn. Stat. § 626A.02, subd. 2(d). ........ 13

*i. Meta intercepted Plaintiff's Website Communications with North* ........ 14

*ii. Meta's Interceptions Were Unlawful* ........ 15

*iii. North used the content from Meta's unlawful interceptions for its own financial gain* ........ 17

*iv. North's use was intentional* ........ 18

*v. North knew Meta unlawfully intercepted Plaintiff's electronic communications but used the contents anyway* ........ 18

b. The Party Defense does not apply to the Use Provision. ........ 19

3. The Crime-Tort Exception Applies to North's Party Defense. ........ 20

a. North's intentional HIPAA violation is a criminal purpose. ........ 21

b. Invasion of Privacy is a Tortious Purpose. ........ 23

*i. North physically intruded upon Plaintiff's solitude.* ........ 24

*ii. North's intrusion was highly offensive.* ........ 25

*iii. Plaintiff had a reasonable expectation of privacy in her Website Communications* ........ 27

II. PLAINTIFF ALLEGES A VALID MCFA CLAIM ........ 28

A. North's misrepresentations are actionable under the MCFA ........ 29

B. North's omissions are actionable under the MCFA ........ 30

1. North omitted material facts. ........ 31

2. Special circumstances created a duty for North to disclose material facts to Plaintiff ........ 31

C. Plaintiff alleges an actionable MCFA claim under Minnesota's private attorney general statute. ........ 34

III. PLAINTIFF ALLEGES A VALID MDTPA CLAIM ........ 35

A. Plaintiff pleaded her MDTPA claim with particularity. ........ 35

1. Plaintiff alleges North's actionable omissions with requisite specificity. ........ 36

2. North had a duty to disclose its use of Pixel ........ 38

B. Plaintiff alleged that she is likely to suffer future harm. ........ 39

C. Plaintiff has standing to bring an MDTPA claim. ........ 41

IV. PLAINTIFF ALLEGES A VALID MHRA CLAIM ........ 42

V. PLAINTIFF ALLEGES A VALID INTRUSION UPON SECLUSION CLAIM ........ 46

VI. PLAINTIFF ALLEGES A VALID UNJUST ENRICHMENT CLAIM ........ 49

A. An implied contract and/or quasi-contract exists. ........ 49

B. North has been unjustly enriched. ........ 50

C. North's privacy policy does not absolve its obligation to protect Plaintiff's information. ........ 53

CONCLUSION ........ 54

# TABLE OF AUTHORITIES

**Cases**

*Barclay et al. v. Icon Health & Fitness, Inc.*,
2022 WL 486999 (D. Minn. Feb. 17, 2022) .......... 41, 42

*Bartnicki v. Vopper*,
532 U.S. 514 (2001) .......... 19

*Bauer v. Ford Motor Credit Co.*,
149 F. Supp. 2d 1106 (D. Minn. 2001) .......... 26

*Bell Atl. Corp. v. Twombly*,
550 U.S. 544 (2007) .......... 6

*Bergstedt, Wahlberg, Berquist Assocs., Inc. v. Rothchild*,
225 N.W.2d 261 (Minn. 1975) .......... 50

*Bernstein v. Extendicare Health Servs., Inc.*,
607 F. Supp. 2d 1027 (D. Minn. 2009) .......... Passim

*Bible v. United Student Aid Funds, Inc.*,
799 F.3d 633 (7th Cir. 2015) .......... 16

*Billings v. Atkinson*,
489 S.W.2d 858 (Tex. 1973) .......... 47

*Blue Cross and Blue Shield of Minn. v. Wells Fargo Bank, N.A.*,
2012 WL 1343147 (D. Minn. April 18, 2012) .......... 37

*Boehner v. McDermott*,
484 F.3d 573 (D.C. Cir. 2007) .......... 19

*Boseovski v. McCloud Healthcare Clinic, Inc.*,
2020 WL 68578 (E.D. Cal. Jan. 7, 2020) .......... 11

*Brown v. Google*,
525 F. Supp. 3d 1049 (N.D. Cal.) .......... 20

*C.L.D. v. Wal-Mart, Inc.*,
79 F. Supp. 2d 1080 (D. Minn. 1999) .......... 49

*Clayton v. Richards*,
47 S.W.3d 149 (Tex. App. 2001) ....................................................................................47

*Cleveland v. Whirlpool Corp.*,
550 F. Supp. 3d 660 (D. Minn. 2021)........................................................................33, 41

*Collins v. Minnesota School of Business, Inc.*,
655 N.W.2d 329 (Minn. 2003) ........................................................................................34

*Cousin v. Sharp Healthcare*,
2023 WL 4484441 (S.D. Cal. July 12, 2023) .................................................................25

*Deteresa v. Am. Broadcasting Cos., Inc.*,
121 F.3d 460 (9th Cir. 1997) ..........................................................................................20

*Doe v. Beard*,
63 F. Supp. 3d 1159 (C.D. Cal. 2014) ............................................................................26

*Doe v. City of New York*,
15 F.3d 264 (2d Cir. 1994).......................................................................................27, 28

*Doe v. Regents of University of California*,
2023 WL 3316766 (N.D. Cal. May 8, 2023)...................................................................45

*Doe v. Smith*,
429 F.3d 706 (7th Cir. 2005) ..........................................................................................11

*Erickson Plus Ltd. V. Ventura*,
2002 WL 31867733 (Minn. Ct. App. Dec. 24, 2002).......................................................50

*E-Shops Corp. v. U.S. Bank Nat'l Ass'n*,
678 F.3d 659 (8th Cir. 2012) ..........................................................................................37

*Ferrari v. Best Buy Co.*,
2015 WL 2242128 (D. Minn. May 12, 2015) .................................................................41

*First Nat'l Bank of St. Paul v. Ramier*,
311 N.W.2d 502 (Minn. 1981)........................................................................................51

*Furlow v. Madonna Summit of Byron*,
2020 WL 413356 (Minn. Ct. App. Jan. 27, 2020)...................................................43, 44, 46

*Gelbard v. U.S.*,
408 U.S. 41 (1972) ....................................................................................... 7

*Georgopolis v. George*,
54 N.W.2d 137 (1952) ................................................................................. 52

*Gisairo v. Lenovo (United States) Inc.*,
516 F. Supp. 3d 880 (D. Minn. Feb. 2, 2021)........................................... 42, 51

*Goldberg v. McCormick*,
2018 WL 579407 (D. Minn. Jan. 26, 2018) ................................................. 24

*Graphic Commc'ns Loc. 1B Health & Welfare Fund A v. CVS Caremark Corp.*,
850 N.W.2d 682 (Minn. 2014) ..................................................................... 32

*Hall v. Centerspace LP*,
2023 WL 3435100 (D. Minn. May 12, 2023) ............................................... 52

*Hamberger v. Eastman*,
106 N.H. 107 (1964)...................................................................................... 49

*Hamilton v. Palm*,
621 F.3d 816 (8th Cir. 2010) ......................................................................... 6

*Hammerling v. Google LLC*,
615 F. Supp. 3d 1069 (N.D. Cal. 2022)........................................................ 26

*Harkey v. Abate*,
346 N.W. 74, 76 (Mich. App. 1983)............................................................. 47

*Hazel v. Prudential Fin., Inc.*,
2023 WL 3933073 (N.D. Cal. June 9, 2023)................................................ 26

*Herlache v. Rucks*,
2023 WL 3486679 (Minn. May 17, 2023) ............................................... 51, 52

*Hernandez v. Hillsides, Inc.*,
47 Cal. 4th 272 (2009).................................................................................. 25

*HomeStar Prop. Sols., LLC v. Safeguard Props., LLC*,
370 F. Supp. 3d 1020 (D. Minn. 2019)......................................................... 53

*Hoskins v. Howard*,
971 P.2d 1135 (Id. 1998) ....................................................................................47

*Hudock v. LG Elecs. U.S.A., Inc.*,
2017 WL 1157098 (D. Minn. Mar. 27, 2017) ......................................35, 39, 40, 41, 42

*In re Facebook, Inc. Tracking Litig.*,
956 F.3d 589 (9th Cir. 2020) ..........................................................................Passim

*In re Google Assist.*,
546 F. Supp. 3d 945 (N.D. Cal. 2021)................................................................17

*In re Google Asst. Priv. Litig.*,
457 F.Supp.3d 797 (N.D. Cal. 2020)..........................................................18, 25

*In re Google Inc. Cookie Placement Consumer Priv. Litig.*,
806 F.3d 125 (3d Cir. 2015)..............................................................9, 15, 20, 23

*In re Google RTB Consumer Priv. Litig.*,
606 F. Supp. 3d 935 (N.D. Cal. 2022)................................................................10

*In re Meta Pixel Healthcare Litig*.,
2022 WL 17869218 (N.D. Cal., Dec. 22, 2022)...........................................Passim

*In re Nat. Hockey League Players' Concussion Inj. Litig.*,
2015 WL 1334027 (D. Minn. Mar. 25, 2015) ..........................................................6

*In re Netgain Technology, LLC*,
2022 WL 1810606 (D. Minn. June 7, 2022) ......................................................39, 42

*In re Pharmatrak*,
329 F. 3d 9 (1st Cir. 2003)........................................................................7, 8, 12

*In re Pork Antitrust Litig*.,
495 F. Supp. 3d 753 (D. Minn. 2020)..................................................................51

*In re Target Corp. Customer Data Sec. Breach Litig.*,
64 F. Supp. 3d 1304 (D. Minn. 2014)...............................................................2, 36

*In re Vizio, Inc. Consumer Priv. Litig.*,
2017 WL 11420284 (C.D. Cal. July 25, 2017).........................................................9

*In re Zynga Priv. Litig.*,
750 F.3d 1098, 1106 (9th Cir. 2014)....................................................................8

*Income Allocation, LLC v. TruChoice Fin. Grp., LLC*,
2023 WL 3916738 (D. Minn. June 9, 2023) ..................................................................51

*Joffe v. Google*,
746 F.3d 920 (9th Cir. 2013) ..........................................................................................12

*Johannessohn v. Polaris Indus., Inc.*,
450 F. Supp. 3d 931 (D. Minn. 2020)..............................................................................28

*Jones v. Walgreens Co.*,
2012 WL 1658895 (Minn. App. May 14, 2012)...............................................................48

*Katz v. U.S.*,
389 U.S. 347 (1967) .........................................................................................................24

*Katz-Lacabe v. Oracle Am., Inc.*,
2023 WL 2838118 (N.D. Cal. Apr. 6, 2023) ..................................................................15

*Knotts v. Nissan North America, Inc.*,
346 F. Supp. 3d 1310 (D. Minn. 2018)............................................................................35

*Kurowski v. Rush Sys. For Health*,
No. 22-5380, 2023 WL 2349606 (N.D. Ill. Mar. 3, 2023) ................................41, 44, 48

*Kurowski v. Rush Sys. For Health*,
No. 22-5380, 2023 WL 4707184 (N.D. Ill. July 24, 2023)..........................................45

*Latture v. Emmerling*,
2013 WL 5225243 (Mich. App. 2013) ............................................................................47

*LeCrone v. Ohio Bell Tel. Co.*,
201 N.E.2d 533 (Oh. App. 1963)....................................................................................47

*Lehman v. Zumbrota-Mazeppa Pub. Sch.*,
2005 WL 894756 (Minn. App. Apr. 19, 2005) ...............................................................48

*Leimer v. State Mut. Life Assur. Co. of Worcester, Mass.*,
108 F.2d 302 (8th Cir. 1940) .............................................................................................6

*Lonegan v. Hasty*,
436 F. Supp. 2d 419 (E.D.N.Y. 2006)........................................................................11

*Lujan v. Defs. of Wildlife*,
504 U.S. 555 (1992) ..........................................................................................41

*MacRae v. HCR Manor Care Servs.*,
2014 WL 12588464 (C.D. Cal. Oct. 30, 2014) ........................................................36

*Mallak v. Aitkin Cnty.*,
9 F. Supp. 3d 1046 (D. Minn. 2014)..............................................................25, 26

*Masterson Personnel, Inc. v. The McClatchy Co.*,
2005 WL 3132349 (D. Minn. Nov. 22, 2005) ..........................................................39

*McGregor v. Uponor, Inc.*, No.,
2010 WL 55985 (D. Minn. Jan. 4, 2010) ................................................................37

*Mike v. Mike*,
2004 WL 2801585 (D. Minn. 2004)...........................................................................7

*Nader v. Gen. Motors Corp.*,
25 N.Y.2d 560 (1970) ..........................................................................................47

*Norman-Bloodsaw v. Lawrence Berkeley Lab'y*,
135 F.3d 1260 (9th Cir. 1998) ...............................................................................27

*O'Brien & Wolf, LLP v. South Central Minnesota Elect. Workers' Fam. Health Plan*,
923 N.W.2d 310 (Minn. Ct. App. 2018)...................................................................50

*Peavy v. WFAA-TV, Inc.*,
221 F.3d 158 (5th Cir. 2000) ................................................................................11

*Pereira v. United States*,
347 U.S. 1 (1954) ................................................................................................18

*Perry v. Bay & Bay Transp. Servs., Inc.*,
2023 WL 171885 (D. Minn. Jan. 12, 2023) ......................................................40, 42

*Planned Parenthood v. Ctr. for Med. Progress*,
214 F. Supp. 3d 808 (N.D. Cal. 2016)...............................................................21, 23

*Ransom v. VFS, Inc.*,
918 F. Supp. 2d 888 (D. Minn. 2013)....................6

*Rhoades v. Lourey*,
2019 WL 1006804 (Minn. Ct. App. Mar. 4, 2019)....................43, 45

*Richfield Bank & Trust Co. v. Sjogren*,
244 N.W.2d 648 (Minn. 1976)....................33

*Ruzicka Elec. & Sons v. IBEW*,
427 F.3d 511 (8th Cir. 2005)....................47

*Schaaf v. Residential Funding Corp.*,
517 F.3d 544 (8th Cir. 2008)....................51, 52

*ServiceMaster of St. Cloud v. GAB Bus. Servs., Inc.*,
544 N.W.2d 302 (Minn. 1996)....................51

*Smartout v. Mut. Serv. Life Ins. Co.*,
632 N.W.2d 741 (Minn. Ct. App. 2001)....................24

*Smith v. Facebook*,
262 F. Supp. 3d 943 (N.D. Cal. 2017)....................44

*Souder v. Pendleton Detectives*,
88 So.2d 716 (La. App. 1956)....................47

*Stubbs v. North Medical Cntr.*,
448 N.W.2d 78 (Minn. Ct. App. 1989)....................50

*Sussman v. Am. Broad. Cos., Inc.*,
186 F.3d 1200 (9th Cir. 1999)....................20, 23

*TransUnion LLC v. Ramirez*,
141 S. Ct. 2190 (2021)....................42

*U.S. v. Harpel*,
493 F.2d 346 (10th Cir. 1974)....................7

*U.S. v. Szymuszkiewicz*,
622 F.3d 701 (7th Cir. 2010)....................12

*Valentine v. WideOpen West Finance, LLC*,
288 F.R.D. 407 (N.D. Ill. 2012) ........................................ 11

*Varela v. State Farm Mutual Automobile Ins. Co.*,
2023 WL 1971753 (D. Minn. Feb. 13, 2023) ........................................ 33

*Watkins v. L.M. Berry & Co.*,
704 F.2d 577 (11th Cir. 1983) ........................................ 7

*Williams v. Poulos*,
11 F.3d, 271 (1st Cir. 1993) ........................................ 13

*Williams v. Total Life Changes, LLC*,
2021 WL 2592385 (D. Minn. June 24, 2021) ........................................ 41

*Wilson v. McRae's US Mail Service Inc.*,
2020 WL 6808861 (D. Minn. Oct. 29, 2020) ........................................ 6

*Wittwer v. Enbridge, Inc.*,
2007 WL 152533 (Minn. App. Jan. 23, 2007) ........................................ 48

*Yath v. Fairview Clinics, NP*,
767 N.W.2d 34 (Minn. Ct. App. 2009) ........................................ 43

**Statutes**

18 U.S.C. § 2510(4) ........................................ 14
18 U.S.C. § 2510(8) ........................................ 8
18 U.S.C. § 2511 ........................................ 1, 15, 20
18 U.S.C. § 2511(1) ........................................ 13
18 U.S.C. § 2511(1)(a) ........................................ 19
18 U.S.C. § 2511(1)(a)–(e) ........................................ 6
18 U.S.C. § 2511(1)(c) ........................................ 19
18 U.S.C. § 2511(1)(d) ........................................ 2, 13, 17, 19
18 U.S.C. § 2511(2)(d) ........................................ Passim
18 U.S.C. § 2511(d)(2) ........................................ 19
18 U.S.C. § 2510(5) ........................................ 14
18 U.S.C. § 2520 ........................................ 19
42 U.S.C. § 1320d-6 ........................................ 21
Minn. Stat. § 144.291 ........................................ 1
Minn. Stat. § 144.291, subd. 2(c) ........................................ 3, 43
Minn. Stat. § 144.293 ........................................ 1
Minn. Stat. § 144.293, subd. 2 ........................................ 43

Minn. Stat. § 325D.43-48 .......... 1
Minn. Stat. § 325D.45, subd. 1 .......... 35, 39
Minn. Stat. § 325F.69 .......... 1
Minn. Stat. § 626A.01, subd. 5 .......... 14
Minn. Stat. § 626A.01, subd. 6 .......... 14
Minn. Stat. § 626A.01, subd. 8 .......... 8
Minn. Stat. § 626A.02 .......... 1, 20
Minn. Stat. § 626A.02, subd. 2(d) .......... Passim

**Rules**

Fed. R. Civ. P. 12(b)(6) .......... 1
Fed. R. Civ. P. 9(b) .......... 6

**Regulations**

45 C.F.R. § 104.508(c)(1) .......... 16
45 C.F.R. § 160.103 .......... 16
45 C.F.R. § 164.508(a)(3)(4) .......... 16

**Other Authorities**

1986 U.S.C.C.A.N. 2112 .......... 12
Restatement (Second) of Torts § 652B (1977) .......... 3, 24, 46

Plaintiff Jacqueline Mekhail ("Plaintiff") respectfully submits this memorandum of law in opposition to North Memorial Health Care's ("North" or "Defendant") motion to dismiss Plaintiff's First Amended Complaint ("FAC") pursuant to Fed. R. Civ. P. 12(b)(6). ECF 29 ("Motion") & ECF 31 ("Def. Br.").

## INTRODUCTION

Defendant violated its patients' and website users' privacy rights by placing hidden tracking pixels on its websites, www.northmemorial.com and northmemorial.com/mychart-medical-records/ (collectively "Websites"). Defendant intercepted and procured Meta Platforms, Inc.'s ("Meta"), f/k/a Facebook, to intercept, Plaintiff's and the Class Members' HIPAA-protected communications, surreptitiously and simultaneously transmitting the contents of those communications to Meta through the Meta Pixel ("Pixel") for commercial purposes. In short, unbeknownst to Plaintiff, Defendant profited off the sale and sharing of her data, including her medical information.

Defendant's conduct explicitly violates the federal Electronic Communications Act, 18 U.S.C. § 2511 ("ECPA") and Minnesota Protection of Communications Act, Minn. Stat. § 626A.02 ("MWA") (collectively "Wiretap Statutes"), the Minnesota Consumer Fraud Act, Minn. Stat. § 325F.69 *et seq*., ("MCFA"), the Minnesota Uniform Deceptive Trade Practices Act, § 325D.43-48, ("MDTPA"), the Minnesota Health Records Act, Minn. Stat. §§ 144.291 and 144.293, ("MHRA"), and constituted an invasion of privacy and unjust enrichment.

***First*** (wiretap claims), Defendant argues it cannot be held liable for any violations of the Wiretap Statutes because it was a party to the relevant communications, citing 18

U.S.C. 2511(2)(d). Def. Br. at 5. Courts have held defendants, like North, liable under the ECPA for duplicating and forwarding content to third parties. *In re Facebook, Inc. Tracking Litig.*, 956 F.3d 589, 607 (9th Cir. 2020). Moreover, any "party defense" under § 2511(2)(d) is limited to the act of interception and does not exempt North from liability for using content acquired through an interception, as Plaintiff has alleged. 18 U.S.C. § 2511(1)(d); FAC, ¶¶ 131, 139-40, 150, 158. Thus, the § 2511(2)(d) party defense does not bar any of Plaintiff's claims and Plaintiff's wiretap claims should proceed.

***Second,*** (MCFA & MDTPA), Defendant argues Plaintiff's allegations lack Rule 9(b) specificity. Def. Br. at 12 & 18. Notably, Plaintiff's claims are based on North's misrepresentations *and* omissions. While Plaintiff alleged adequate information to put North on notice of its unlawful misrepresentations, Plaintiff's claims are based on omissions, which have a relaxed Rule 9(b) standard, also met here. FAC, ¶¶ 171-172, 179, 183; *see In re Target Corp. Customer Data Sec. Breach Litig.*, 64 F. Supp. 3d 1304, 1311 (D. Minn. 2014) (Rule 9(b) is satisfied "if the omitted information is identified"). These claims should also proceed.

***Third,*** (MHRA claim), Defendant argues Plaintiff has not alleged Defendant disclosed "health records." Def. Br. at 24. This should fail because Plaintiff alleges her Website Communications[1] identified her as a patient of North and disclosed her medical records, the names and practice areas of her physicians, treatments, diagnosis, and prescriptions Plaintiff communicated with Defendant through its Websites. FAC, ¶¶ 9, 19,

[1] Website Communications are defined in the FAC, ¶ 7, and herein refer to communications on both of Defendant's Websites.

38, 54. Those records are exactly the kinds of health records the MHRA seeks to protect, Minn. Stat. § 144.291, sub. 2(c), and the claims should proceed.

***Fourth*** (Intrusion Upon Seclusion), Defendant argues Plaintiff did not allege an intrusion or highly offensive conduct. Def. Br. at 29-32. Plaintiff has alleged that North installed and embedded Pixel on its Websites to record and disclose Plaintiff's communications to third-parties. FAC, ¶¶ 5, 53, 114, 144-45, 201, 204, 206. This conduct is an affirmative act of intrusion and happens before any actual interception occurs. *See* Restatement (Second) of Torts § 652B (1977) (illustrating that tapping a telephone wire and installing a recording device to make a record of conversations is an invasion of privacy). The claim should proceed.

***Finally*** (Unjust Enrichment), Defendant argues Plaintiff has not alleged a benefit received by Defendant. However, Plaintiff has adequately alleged North received a benefit from by trading Plaintiff's data to Meta, including, *inter alia*, generating revenue from targeted advertisements, thereby depriving Plaintiff of the opportunity to receive value for the data shared. FAC, ¶¶ 5, 13, 23, 211-212.

None of Defendant's arguments change Plaintiff's well-pleaded allegations that Defendant unlawfully intercepted, or procured Meta to intercept, Plaintiff's Sensitive Information through its Websites in violation of federal and state statutes and various common laws. The Court should deny Defendant's motion in its entirety.

**BACKGROUND**

Defendant makes its Websites available to patients and encourages patients use them to, among other things, search for providers and specialists, find facilities, pay medical

bills, and research medical conditions and medications. FAC, ¶¶ 2-3. To obtain healthcare services, including scheduling an appointment, patients must enter highly sensitive information, including Personal Health Information ("PHI") and Personally Identifiable Information ("PII") (collectively "Sensitive Information"). *Id.*, ¶ 27.

Defendant knows the critical importance of safeguarding patients' Sensitive Information, and that it has a duty to protect the Sensitive Information from unauthorized disclosure. *Id.*, ¶¶ 29-31. On its Websites, North states that it is committed to safeguarding patients' sensitive information, maintaining patients' privacy, and that it abides by applicable federal, state, and local laws and regulations. *Id.* Rather than safeguard Plaintiff's and Class Members' Sensitive Information, however, Defendant intentionally embedded Pixel on its Websites and gave Meta direct and real-time access to its patients' information. *Id.*, ¶¶ 11, 22, 31-2, 39, 69, 74. Pixel is a piece of source code that can be integrated into websites to surreptitiously redirect a website user's actions and data to third parties. *Id.*, ¶¶ 35, 40. The Pixel tracks information and collects everything patients submit to the Websites, including metadata and substantive content.

Defendant used and continues to use Pixel on its Websites. *Id.*, ¶¶ 147, 164, 209. As a result, when Plaintiff and Class Members visited Defendant's Websites and entered Sensitive Information, that information was secretly transmitted to Meta. *Id.*, ¶ 34. The information transmitted to Meta included (but was not limited to) Plaintiff's and Class Members' status as medical patients and the following:

> [C]omputer IP addresses; dates, times, and/or locations of scheduled appointments; information about patients' health care providers; types of treatments or conditions researched; type of appointment or procedure

> scheduled; communications between patients and North, which may have included first and last names and medical record numbers; information about whether patients have insurance; gender and sexual orientation; and if a patient had a proxy portal account, the name of the proxy, and other information
>
> [P]rivate information [that] would allow Meta to know that a specific patient was seeking confidential medical care or being treated for a specific condition.
>
> **
>
> [E]ach page a user visits, what buttons they click, as well as specific information they input into the website and what they searched. Pixel sends each of these pieces of information to Meta with PII, such as the user's IP address. Meta stores this data on its own servers, in some instances for years on end.
>
> [I]f a patient or website visitor selects researching a particular private treatment or condition selects filters or enters keywords into the search bar on the "Find a Doctor" webpage, the filters and search terms are transmitted via Meta's Pixel. Additionally, if a patient or website visitor uses the Website's general search bar or chat, the terms and phrases the patient or visitor types are transmitted to Meta, even if they contain a website visitor's private treatment, procedure, medical conditions, and related inquiries. This information is automatically sent from the website visitor's device to Meta, and it reveals the individual's FID along with each search filter the patient selected.

FAC, ¶¶ 9-10, 49, 60.

Plaintiff and the Class Members never consented to have their Sensitive Information transmitted to Meta and other third parties. Based on Defendant's privacy-related commitments and its status as a medical care provider, Plaintiff and Class Members also had a reasonable expectation of privacy in their communications with Defendant. *Id.*, ¶¶ 30, 91-7, 200. Plaintiff's and Class Members' data is also valuable, and its unauthorized disclosure created further harm. *Id.*, ¶¶ 75, 78-90. These facts support Plaintiff's claims and Defendant's Motion should be denied.

## LEGAL STANDARD

To survive a motion to dismiss, a complaint must contain sufficient factual matter that, when accepted as true, states a claim for relief that is plausible on its face. *See, e.g., Hamilton v. Palm*, 621 F.3d 816, 817-18 (8th Cir. 2010). All doubts are to be resolved in favor of the complaint's sufficiency. *Leimer v. State Mut. Life Assur. Co. of Worcester, Mass.*, 108 F.2d 302, 304 (8th Cir. 1940); *accord Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 563, n.8 (2007).

Federal Rule of Civil Procedure 9(b) requires that "[in] allegations of fraud or mistake, a party must state with particularity the circumstances constituting fraud or mistake." "Rule 9(b) does not require that the exact particulars of every instance of fraud be alleged, so long as the complaint includes enough detail to inform the defendant of the core factual basis of the fraud claims." *Ransom v. VFS, Inc.*, 918 F. Supp. 2d 888, 898 (D. Minn. 2013); *see also In re Nat. Hockey League Players' Concussion Inj. Litig.*, No. MDL 14-2551 SRN, 2015 WL 1334027, at *10 (D. Minn. Mar. 25, 2015) (recognizing omission cases are inherently difficult to plead with particularity because they involve events that did not occur).

## ARGUMENT

### I. PLAINTIFF ALLEGES VALID WIRETAP CLAIMS

The Wiretap Statutes prohibit the unauthorized interception of electronic communications. *Facebook Tracking*, 956 F.3d at 606–07 (*quoting* 18 U.S.C. § 2511(1)(a)–(e)); *see also Wilson v. McRae's US Mail Service Inc.*, No. 0:20-cv-01664-PJS-KMM, 2020 WL 6808861, at * 4 (D. Minn. Oct. 29, 2020) (considering the ECPA and

MWA and finding them to be "nearly identical."). Minnesota courts have historically analyzed the ECPA and MWA together, and Plaintiff will likewise do so in addressing Counts I and II.

The paramount objective of the Wiretap Statutes is to provide for the privacy of communications. *Gelbard v. U.S.*, 408 U.S. 41, 48 (1972). Thus, the statutes express "a strong purpose to protect individual privacy by strictly limiting the occasion on which interception may lawfully take place." *Watkins v. L.M. Berry & Co.*, 704 F.2d 577, 581 (11th Cir. 1983) (*citing U.S. v. Harpel*, 493 F.2d 346, 351 (10th Cir. 1974)).

To state a claim under the Wiretap Statutes, Plaintiff must allege Defendant or Meta: (1) intentionally (2) intercepted (3) the contents of (4) plaintiffs' electronic communications (5) using a device. *See In re Pharmatrak*, 329 F. 3d 9, 18 (1st Cir. 2003) (listing elements for a Wiretap Act claim); *In re Meta Pixel Healthcare Litig*., No. 22-cv-03580, 2022 WL 17869218 (N.D. Cal., Dec. 22, 2022); *Mike v. Mike*, No. 03-cv-6203 JMR/FLN, 2004 WL 2801585, at *2 (D. Minn. 2004) (same elements). Here, Plaintiff alleges Defendant intentionally embedded Pixel on its Website, which caused the content of Plaintiff's Website Communications to be simultaneously and surreptitiously tracked, intercepted, and sent to Meta without proper authorization. FAC, ¶¶129-166. This satisfies each of the elements for a valid wiretap claim under both Wiretap Statutes (collectively "Wiretap Claims").

Defendant makes three challenges to Plaintiff's Wiretap Claims: (1) it did not disclose the "contents" of Plaintiff's communications; (2) the party to a communication defense in 18 U.S.C. § 2511(2)(d) and Minn. Stat. § 626A.02, subd. 2(d)

(*id.*, at 5); and (3) the crime-tort exception in 18 U.S.C. § 2511(2)(d) and Minn. Stat. § 626A.02, subd. 2(d) does not apply. None of these arguments warrant dismissal of Plaintiff's Wiretap Claims.

### A. Defendant intentionally disclosed the "contents" of Plaintiff's Website Communications.

North incorrectly argues that "Plaintiff failed to allege that North intercepted or disclosed the 'contents' of her communications." Def. Br. At 8. The Wiretap Statutes broadly define "content" to include "any information concerning the substance, purport, or meaning of [a] communication." 18 U.S.C. § 2510(8); Minn. Stat. § 626A.01, subd. 8; *see also Pharmatrak*, 329 F.3d at 18 ("contents" included URLs, or web page address information, that included personally identifiable information).

"Contents" refers to the "intended message conveyed by the communication"—but arguably does not include record information regarding the characteristics of the message that is generated in the course of the communication. *In re Zynga Priv. Litig.*, 750 F.3d 1098, 1106 (9th Cir. 2014). While North relies on the non-binding *Zynga* decision to argue that Plaintiff only alleges "characteristic" information, not "substantive" information, its arguments are simply incorrect. Indeed, because a communication may contain characteristic information does not mean that it does not also contain substantive information.

The findings in *Meta Pixel* are instructive. In *Meta Pixel*, plaintiffs brought wiretapping claims against Meta, alleging their healthcare providers secretly "installed Pixel on their patient portals." 2022 WL 17869218, at *1. While Meta argued "the names

of buttons clicked on websites and their associated URLs are not 'content' within the meaning of the statute," *see id.*, at *11, the court disagreed, explaining:

> [C]ontact information provided as part of a sign-up process constitutes "content" because this information is the subject of the communication. [*Zynga*] at 1107 ("Because the users had communicated with the website by entering their personal medical information into a form provided by the website, the First Circuit correctly concluded that the defendant was disclosing the contents of a communication."). ***And while a URL that includes "basic identification and address information" is not "content," a URL disclosing a "search term or similar communication made by the user" "could constitute a communication" under the statute.*** *Id.* at 1108–09.
>
> [L]og-in buttons and the kinds of descriptive URLs identified in the Smith Decl. are "contents" within the meaning of the statute. ***Unlike in Zynga, the URLs at issue here would not merely reveal the name of a Facebook user or group—as Smith explained, the transmitted URLs include both the "path" and the "query string."*** Smith Decl. ¶¶ 50–51; *see also id.* ¶ 189 (showing hardfordhospital.org/services/digestive-health/conditions-we-treat/colorectal-small-bowel-disorders/ulcerative-colitis URL). These items are content because they concern the substance of a communication.

*Id.* (emphasis added)[2] (*citing In re Google Inc. Cookie Placement Consumer Priv. Litig.*, 806 F.3d 125, 137 (3d Cir. 2015) ("If an address, phone number, or URL is ... part of the substantive information conveyed to the recipient, then by definition it is 'content.' "); *In re Vizio, Inc. Consumer Priv. Litig.*, No. 8:16-ml-02693-JLS-KES, 2017 WL 11420284, at *6 (C.D. Cal. July 25, 2017) ("[N]othing in [*Zynga*] suggests that the standard for determining whether information qualifies as record or content data depends on how much content is collected or whether the intercepted information would be recognizable.")

---

[2] The "Smith Decl." referenced here by the court is attached as Exhibit A to the accompanying Declaration of Brian C. Gudmundson for the purpose of providing the full purview of buttons and URLs the court considered "content".

(internal quotations omitted); *see also In re Google RTB Consumer Priv. Litig.,* 606 F. Supp. 3d 935, 949 (N.D. Cal. 2022) (finding "content categories of the site or app," along with other types of information, "fall[s] within the definition of content").

Here, since North revealed the same type of information as the healthcare providers in *Meta Pixel*, the Court should reach the same result. Plaintiff's FAC amply alleges "content" was illegally shared as it specifically alleges that Plaintiff (and putative Class Members) communicated substantive private, medical information via the Websites. FAC, ¶¶ 9-10, 19-20, 27, 38, 40, 49, 54, 66-71. Thus, Plaintiff has sufficiently pled that "content" was intercepted by, disclosed to, and used by North and Meta, and the Court should deny North's request to dismiss Counts I and III.

**B. The "Party Defense" does not apply here.**

North's primary argument to avoid liability under the Wiretap Statutes (Counts I and II) is the party to the communication defense ("Party Defense"). Def. Br. at 6. The relevant section of the federal statute expressly states:

> [i]t shall not be unlawful under [chapter 2511] for a person not acting under the color of the law to intercept a wire, oral, or electronic communication where such person is a party to the communication or where one of the parties to the communication has given prior consent to such interception unless such communication is intercepted for the purpose of committing any criminal or tortious act in violation of the Constitution or laws of the United States or of any State.

18 U.S.C. § 2511(2)(d)[3]; *see also* Minn. Stat. § 626A.02, subd. 2(d) (similar language). Notably, North improperly raised this defense in its Rule 12(b)(6) motion, and the Court

[3] North only asserted the Party Defense here, and not that Plaintiff or North consented to Meta's interception of the communications.

should deny it as premature. *See Doe v. Smith*, 429 F.3d 706, 709 (7th Cir. 2005) (finding "[c]omplaints need not anticipate or attempt to defuse potential defenses," … "the defense of single-party consent has limits," and reasoning that plaintiff may be able to show a crime-tort purpose).

Dispositively, though, North is not eligible to invoke the Party Defense because it intentionally: (1) duplicated and forwarded protected communications to Meta, without Plaintiff's knowledge or authorization; and (2) used the contents of Plaintiff's Website Communications after they were unlawfully intercepted by Meta.[4], [5] Moreover, where the interceptor acts "for the purpose of" committing any crime or tort in violation of state or federal law, the crime-tort exception to the Party Defense applies and North can still be held liable under the Wiretap Statutes. For these reasons, Counts I and II should proceed.

**1. North violated the Wiretap Statutes by secretly duplicating and forwarding communications.**

Circuit Courts of Appeal have consistently confirmed that valid wiretap claims are presented where the intended recipient "permit[ed] an entity to engage in the unauthorized

---

[4] *Kurowski* (Def. Br. at 7-8) does not consider Plaintiff's argument here, that North "used" the content collected from Meta's unlawful interception.

[5] North did not make and waived any defense to Plaintiff's allegation that it procured Meta to intercept Plaintiff's communications, which is itself actionable. FAC, ¶¶ 139, 157. The Party Defense is limited to intercepting and does not exempt persons that procure another to intercept, like North did here. Civil liability exists for procuring another to intercept communications. *See Lonegan v. Hasty*, 436 F. Supp. 2d 419, 428 (E.D.N.Y. 2006) ("[B]oth the person who actually intercepted the communications and the person who procured the interception have violated the Act, and the victim is authorized to sue any person or entity who engage in that violation."); *Valentine v. WideOpen West Finance, LLC*, 288 F.R.D. 407, 412 n.3 (N.D. Ill. 2012) (similar); *Boseovski v. McCloud Healthcare Clinic, Inc.,* No. 2:16-CV-2491-DMC, 2020 WL 68578, at *6 (E.D. Cal. Jan. 7, 2020); *compare with Peavy v. WFAA-TV, Inc.*, 221 F.3d 158, 169 (5th Cir. 2000) (opposite finding).

duplication and forwarding of unknowing users' information." *Facebook Tracking*, 956 F.3d at 607 (*citing Pharmatrak*, 329 F.3d at 22; *U.S. v. Szymuszkiewicz*, 622 F.3d 701, 701 (7th Cir. 2010)). In *Facebook Tracking*, after reviewing the legislative history at length, the Ninth Circuit adopted the reasoning of the First and Seventh Circuits, concluding that ECPA claims are properly presented against parties that secretly duplicated and forwarded communications to third-parties:

> [S]imultaneous, unknown duplication and communication of GET requests do not exempt a defendant from liability under the party exception. As we have previously held, the "paramount objective of the [Electronic Communications Privacy Act, which amended the Wiretap Act] is to protect effectively the privacy of communications." *Joffe v. Google*, 746 F.3d 920, 931 (9th Cir. 2013). We also recognize that the Wiretap Act's legislative history evidences Congress's intent to prevent the acquisition of the contents of a message by an unauthorized third-party or "an unseen auditor." *See* S. Rep. No. 90-1097, reprinted in 1986 U.S.C.C.A.N. 2112, 2154, 2182. Permitting an entity to engage in the unauthorized duplication and forwarding of unknowing users' information would render permissible the most common methods of intrusion, allowing the exception to swallow the rule.

*Id.* The conduct described in the FAC falls squarely within the rule articulated in *Facebook Tracking*—the only difference being North procured Meta to intercept, which creates the same liability under the Wiretap Statutes. As alleged, North embedded Pixel on its Websites, which caused the unauthorized duplication and redirection of the Websites' users' Sensitive Information to Meta without the users' knowledge or consent. FAC, ¶¶ 35, 54, 69, 72, 147, 161, 172, 195, 197, 201, 204, 205, 209, 211; *See Szymuszkiewicz*, 622 F.3d at 706 (holding "the duplication and forwarding" of content violates the Wiretap Act). In turn, the Party Defense does not apply here.

### 2. North intentionally used the contents of unlawfully intercepted communications.

Plaintiff alleged North intentionally "used" the contents of Plaintiff's Website Communications after they were illegally intercepted by Meta in violation of 18 U.S.C. § 2511(1)(d) and Minn. Stat. § 626A.02, subd. 2(d). This is a distinct violation of the Wiretap Statutes and also falls outside the protection of the Party Defense. *See Williams v. Poulos*, 11 F.3d, 271, 290 (1st Cir. 1993) (finding federal wiretapping law prohibits more than just the initial wrongful invasion; disclosure and/or use of information obtained through wrongful invasion amounts to separate injuries prohibited by statute).

#### a. North Violated § 2511(1)(d) and Minn. Stat. § 626A.02, subd. 2(d).

Squarely relevant here is the "Use Provision" of the ECPA, § 2511(1)(d), which prohibits:

> Intentionally us[ing], or endeavor[ing] to use, the contents of any wire, oral, or electronic communication, knowing or having reason to know that the information was obtained through the interception of a wire, oral, or electronic communication in violation of this subsection.[6]

*Id; see also* Minn. Stat. § 626A.02, subd. 2(d) (nearly identical). Plaintiff alleges that North violated every letter of this statutory provision. Indeed, North is liable under subsection 2511(1)(d), because: (1) Meta intercepted Plaintiff's communications (*see* 18 U.S.C. § 2511(1)(d) (requiring an interception)); (2) Meta's interception of Plaintiff's communications was unlawful (*see id.* (requiring an actionable interception under § 2511(1))); (3) North used the contents and product of Meta's interceptions (*see id.*

[6] Referring to subsection 18 U.S.C. § 2511(1).

(requiring use)); (4) North's use was intentional (*see id.* (requiring use to be intentional); and (5) North knew Meta's interceptions were unlawful but used the contents from them anyway for its own commercial benefit (*see id.* (requiring knowledge)).

#### *i. Meta intercepted Plaintiff's Website Communications with North*

Plaintiff alleges Meta intercepted the content of her Website Communications. By definition, an interception is the "aural or other acquisition of the contents of any wire, electronic, or oral communication through the use of any electronic, mechanical, or other device." Minn. Stat. § 626A.01, subd. 5; 18 U.S.C. § 2510(4). Meta's alleged interception satisfies each of these elements. *See Meta Pixel,* 2022 WL 17869218, at *18 (finding Pixel surreptitiously and contemporaneously intercepts communications on third-party websites).

Meta acquired Plaintiff's and the Class Members' electronic communications. FAC, ¶¶ 5-10, 34, 40, 49, 54, 66-73, 115, 140, 159. These communications included content, including specific search terms. *Id.*, ¶¶ 66-71*; see also supra* § ARGUMENT I(A). Finally, Meta used Pixel, a device under the Wiretap Statutes, to acquire Plaintiff's Website Communications and the products of those communications, such as targeted advertising. *See* 18 U.S.C.§ 2510(5) (defining device); Minn. Stat. § 626A.01, subd. 6. Plaintiff's allegations thus satisfy the "interception of content" element of the Use Provision.

### *ii. Meta's Interceptions Were Unlawful*

Meta's interceptions of Plaintiff's Website Communications were unlawful unless a statutory exemption applies, such as the Party Defense.[7] This defense does not apply to Meta's interception, however.

Meta was not a party to the communications between Plaintiff and North. Generally, courts consider the intended recipient of a communication to be a party to the communication. *See generally In re Google Cookie*, 806 F.3d at 142-43 (finding a party to a communication is the intended recipient); *Katz-Lacabe v. Oracle Am., Inc.,* No. 22-CV-04792-RS, 2023 WL 2838118, at *9 (N.D. Cal. Apr. 6, 2023) (reasoning that Facebook was not a party to the communications because it "track[s] its users to third-party websites [through Pixel] … and then it sold that data to advertisers.")

Here, North was Plaintiff's only intended recipient. Therefore, no Party Defense applies to Meta. Additionally, Plaintiff did not consent or provide valid authorization to Meta to intercept her communications. North could not itself consent to release Plaintiff's Sensitive Information to Meta—only Plaintiff could have provided that consent.[8] Plaintiff alleged the contents of her communications included protected information related to her

---

[7] *See also 1050. Scope of 18 U.S.C. §2511 Prohibitions*, The U.S. Dept. of Justice Archives, https://www.justice.gov/archives/jm/criminal-resource-manual-1050-scope-18-usc-2511-prohibitions ("Unless an interception is specifically authorized, it is impermissible … in violation of 18 U.S.C. § 2511.")

[8] To the extent North argues that it consented to Meta's interception of Plaintiff's Website Communications, this argument is a catch-22 and fact intensive issue. Consent to the interceptions at issue, which involve the intentional disclosure of medical and personal identifying information, are violations of HIPAA, which includes a provision for criminal liability, along with blatant violations of Plaintiff's privacy. This would further implicate the Crime-Tort Exception, which also negates the Party Defense.

medical records, including doctors and doctors referred to her, medical treatments, prescriptions, and diagnosis, along with identifiers that connect her to all of these communications and reveal her patient status. FAC, ¶¶ 5, 19, 64, 86. This content is federally protected health information pursuant to 45 C.F.R. § 160.103, which defines "individual identifiable health information" as including data that relates to the individual's past, present, or future physical or mental health condition, the provision of health care to the individual, or the past present, or future payment for the provision of health care to the individual, which identifies the individual and which also requires full authorization from Plaintiff. As such, *any* disclosure by North of Sensitive Information required adherence to 45 C.F.R. § 104.508(c)(1) and 45 C.F.R. § 164.508(a)(3)(4), which set forth the parameters of a patient's valid authorization. The ECPA, which provides for single party consent, does not negate or preempt the requirements of another federal statute, HIPAA, requiring special authorization for specific Sensitive Information. *See Bible v. United Student Aid Funds, Inc.*,799 F.3d 633, 660 (7th Cir. 2015) ("Preemption is limited to conflicts between federal and state law.").

Plaintiff never authorized North to disclose her information to Meta or procure Meta to intercept her communications. Without an applicable exemption in 18 U.S.C. § 2511(2)(d), Meta's interceptions of Plaintiff's Website Communications were unlawful and satisfy the "unlawful" element of the Use Provision.

#### *iii. North used the content from Meta's unlawful interceptions for its own financial gain*

Plaintiff alleges North "used" the contents of Meta's unlawful interception to send targeted advertisements to the Websites' users and patients. Using content from unlawful interceptions to target consumers with advertisements is a use under § 2511(1)(d). *See In re Google Assist.*, 546 F. Supp. 3d 945, 960 (N.D. Cal. 2021) (finding targeted advertisements are an example of "use" under § 2511(1)(d)).

Here, North used the contents of the unlawful interceptions to target Plaintiff and other consumers with advertisements related to their activity on North's Websites. *See* FAC, ¶¶ 5, 8, 12, 23, 36, 139 ("North willfully used or attempted to use the contents of Plaintiff's and the Class Members' electronic communications, knowing that the information was obtained through interception."). Indeed, after Meta unlawfully intercepted the content of Plaintiff's communications, Meta associated the data it collected with users' Facebook accounts. *Id.*, ¶¶ 50-51, 66. Meta and North then collaborated to use the intercepted information to send targeted advertisements to the users. *Id.*, ¶ 23. The content from the interceptions allowed North to impact the delivery of ads, measure the cross-device conversion, create custom audiences, learn about its Websites, save money on advertising and marketing costs, and for other revenue generating schemes. *Id.*, ¶¶ 8, 36, 48, 55, 139. These are all actions North could not take without procuring Meta to intercept the communications of current or prospective patients using its Websites. Thus, Plaintiff alleged North used the unlawfully intercepted content, which satisfies the "use" element of the Use Provision.

#### *iv. North's use was intentional*

North also *intentionally* used the content from the unlawful interceptions. Intent is satisfied when a defendant is aware its product is recording information it should not. *See In re Google Asst. Priv. Litig.,* 457 F.Supp.3d 797, 815 (N.D. Cal. 2020) ("knowinglygly allow[ing] the defect to recur . . . foreclose[s]" a defense of "inadvertence or mistake."). Plaintiff alleged North intended Pixel to transmit information from its Websites to Meta, was aware the information was sensitive, and yet did not prevent the transmission from occurring. FAC, ¶¶ 11, 32, 39, 139, 151, 158. These allegations are sufficient to establish the intent element of the Use Provision.

#### *v. North knew Meta unlawfully intercepted Plaintiff's electronic communications but used the contents anyway*

Plaintiff alleges North *knew* Meta acquired the contents of Plaintiff's communications via an unlawful interception. The knowledge element can be satisfied either when the subject has actual knowledge or when the occurrence of the element "can reasonably be foreseen." *See generally Pereira v. United States*, 347 U.S. 1, 9 (1954). Plaintiff alleges just that here.

North procured Meta to intercept the contents of Plaintiff's and the Class Members' Website Communications. FAC, ¶¶ 139, 157. By procuring Meta, North allowed, and in fact instructed, Meta to acquire swaths of federally protected patient data and aggregate, analyze, and process that data in a way that North could use it to improve its own marketing and increase revenue. North then actually used that data, which presented North with the

full scope of information Meta was collecting, including Sensitive Information. This satisfies the knowledge element to the Use Provision.

Taken together, Plaintiff has sufficiently alleged North violated the Use Provision, 18 U.S.C. § 2511(1)(d).

**b. The Party Defense does not apply to the Use Provision.**

North raises the Party Defense in § 2511(d)(2) to absolve it of Plaintiff's Wiretap Claims, but this defense is not applicable to the "Use Provision". 18 U.S.C. § 2520 makes actionable the "intercept[ion], disclos[ure] or use[]" of intercepted communications. *Id.* This is broader than the Party Defense, which *only* exempts persons who "intercept" communications. 18 U.S.C. § 2511(2)(d). Indeed, courts have recognized two distinct interests served by the Wiretap Statutes, articulated by distinct provisions. One is "to protect effectively the privacy of wire and oral communications." *Boehner v. McDermott,* 484 F.3d 573, 583 (D.C. Cir. 2007) (Sentelle, dissent) (*citing Bartnicki v. Vopper,* 532 U.S. 514, 529 (2001)). This interest is served by the statutory prohibition on interceptions. 18 U.S.C. § 2511(1)(a). The second interest is to "minimize[e] the harm to persons whose conversations have been illegally intercepted," which is served by prohibiting further use and disclosure. *Id.*; *see also* 18 U.S.C. § 2511(1)(c), (d).

Here, North procured Meta to intercept Plaintiff's communications (an act outside the scope of the Party Defense by its own accord, *see supra* n. 4), and later used the fruits from those unlawful interceptions for its own commercial benefit. To hold the Party Defense applies to this conduct would negate the second and distinct purpose of the

Wiretap Statutes, which strategically applies to conduct after the unlawful interception. Thus, no Party Defense applies here, and Plaintiff's Wiretap Claims should proceed.

**3. The Crime-Tort Exception Applies to North's Party Defense.**

The Crime-Tort Exception also negates the Party Defense and North's conduct falls within it. The Party Defense provisions in 18 U.S.C. § 2511(2)(d) and Minn. Stat. § 626A.02 state that parties to a communication are still liable under the Wiretap Statutes if the "communication is intercepted for the purpose of committing any criminal or tortious act" ("Crime-Tort Exception"). *Id.* To assert the Crime-Tort Exception, Plaintiff need only plead "sufficient facts to support an inference that the offender intercepted the communication [or caused the communication to be intercepted] for the purpose of a tortious or criminal act that is independent of the intentional act of recording." *In re Google Cookie*, 806 F.3d at 145; *see also Sussman v. Am. Broad. Cos., Inc.*, 186 F.3d 1200, 1202 (9th Cir. 1999) ("Under section 2511, 'the focus is not upon whether the interception itself violated another law; it is upon whether the purpose for the interception--its intended use--was criminal or tortious.'") (citations omitted).

As Plaintiff alleges, North is a healthcare provider intentionally facilitating the intercepting, disclosing, and its own improper use of *private, personally identifiable medical information.* Criminal or tortious purposes may include "invading [a plaintiff's] privacy . . . defrauding her, or . . . committing unfair business practices." *Deteresa v. Am. Broadcasting Cos., Inc.*, 121 F.3d 460, 467, n.4 (9th Cir. 1997). Similarly, courts have found this element satisfied where a plaintiff alleges the defendant's intent to commit common law privacy claims. *See Brown v. Google*, 525 F. Supp. 3d 1049, 1067 (N.D. Cal.)

(intrusion upon seclusion, invasion of privacy, and other violations); *Planned Parenthood v. Ctr. for Med. Progress,* 214 F. Supp. 3d 808, 828 (N.D. Cal. 2016) (recognizing "further invading privacy of plaintiffs' staff" sufficed to state crime-tort exception to consent exception). Here, Plaintiff alleges North intercepted and procured Meta to intercept Plaintiff's electronic communications[9] for the purpose of collecting private information without consent—consent that could have been theoretically attained through a proper disclosure. Indeed, under Plaintiff's allegations, North embedded the Pixel to: (1) violate HIPAA by subverting the consent required to disclose Sensitive Information (a crime); and (2) invade the privacy of Plaintiff and the Class Members (a tort).

**a. North's intentional HIPAA violation is a criminal purpose.**

North argues that Plaintiff has not alleged North's criminal or tortious purpose. Def. Br. at 8-9. Not so. Plaintiff alleged, at length, North's privacy obligations as a HIPAA-covered healthcare provider and its intentional disregard for those obligations when it installed Pixel on its Websites. FAC, ¶ 9.

It is a federal crime for healthcare providers to "knowingly" disclose "individually identifiable health information"[10] to third parties for "commercial" reasons without consent, as Plaintiff alleges North did here. *See* 42 U.S.C. § 1320d-6 (HIPAA criminal provision).[11] North is a healthcare provider, covered by HIPAA, who received sensitive

[9] *See also supra* § ARGUMENT I(B)(1).
[10] Plaintiff also demonstrated North's disclosure of "individually identifiable health information" in § ARGUMENT I(B)(2)(a)(ii).
[11] "[C]overed entities … may be prosecuted directly under 42 U.S.C. § 1320d-6" and "the 'knowingly' element of the offense set forth in that provision requires only proof of knowledge of the facts that constitute the offense."

and federally protected data and disclosed that data, without authorization, to a faceless tech corporation under constant scrutiny for violating privacy boundaries; North also used the intercepted data for its own benefit. FAC, ¶¶ 5, 46, 52, 80. Thus, Plaintiff alleges North's criminal purpose for intercepting or procuring Meta to intercept the content of Plaintiff's communications.

North also knew Pixel was not an innocuous website technology it could secretly benefit from without consequence. Recent Department of Health and Human Services ("HHS") guidance states:

> **Regulated entities are not permitted to use tracking technologies in a manner that would result in impermissible disclosures of PHI to tracking technology vendors or any other violations of the HIPAA Rules.** For example, disclosures of PHI to tracking technology vendors for marketing purposes, without individuals' HIPAA-compliant authorizations, would constitute impermissible disclosures.

("HHS Guidance"). FAC, ¶ 103 (emphasis in original). This HHS guidance was aimed squarely at healthcare providers like North, which intentionally chose to ignore it. Indeed, this HHS guidance put North on notice that use of the Pixel on its Websites was linked to violations of HIPAA.

Plaintiff's allegations that North used patient data for advertising in violation of § 2511(2)(d) are sufficient at the pleading stage to evince that "plaintiffs may be able to show that the crime-tort exception applies," particularly given "state court decisions establishing that tort claims may lie against health care providers over their use of Pixel." *Meta Pixel*,

---

www.justice.gov/sites/default/files/olc/opinions/attachments/2014/11/17/-hipaa_final.htm.

No. 22-cv-03580, 2022 WL 17869218, at *12 (denying "extraordinary remedy" of preliminary injunction, but noting "[o]f course, this claim will present differently in a motion to dismiss context," *id.*, at *13); *In re Google Cookie*, 806 F.3d at 145 (holding "all authority of which we are aware indicates that the criminal or tortious acts contemplated by § 2511(2)(d) are acts secondary to the acquisition of the communication involving tortious or criminal use of the interception's fruits.")

Additionally, even if the Court finds that commercial marketing is a legitimate purpose for using Pixel, it is recognized law that any purported legitimate purpose that North now asserts, after committing the violation, does not "sanitize" an interception that was made for a tortious purpose. *See Sussman*, 186 F.3d at 1202 ("the existence of a lawful purpose does not mean that the interception is not also for a tortious or unlawful purpose . . . [t]he existence of the lawful purpose would not sanitize a [recording] that was also made for an illegitimate purpose"). Here, Plaintiff alleges North embedded the Pixel for the purpose of collecting Sensitive Information without required consent. North later using that data for marketing does not remove the primary purpose. Therefore, the crime-tort exception applies, and North is ineligible to invoke the Party Defense.

**b. Invasion of Privacy is a Tortious Purpose.**

Plaintiff has also alleged an invasion of her privacy, and this also negates the Crime-Tort Exception. *See Planned Parenthood*, 214 F. Supp. 3d at 828 (holding "defendants' subsequent disclosure of the contents of the intercepted conversations for the alleged purpose of further invading the privacy of plaintiffs' staff satisfies" the Crime Tort Exception). Plaintiff alleges North invaded her privacy through an intrusion upon her

seclusion. FAC, ¶¶ 139, 144, 199-209. "Intrusion upon seclusion occurs when one intentionally intrudes, physically or otherwise, upon the solitude or seclusion of another or her private affairs or concerns … if the intrusion would be highly offensive to a reasonable person." Restatement (Second) of Torts § 652B (1977). The tort has three elements: (1) an intrusion; (2) that is highly offensive; and (3) is into some matter in which a person has a legitimate expectation of privacy. *Goldberg v. McCormick,* No. CV 17-919 (PAM/LIB), 2018 WL 579407, at *2 (D. Minn. Jan. 26, 2018) (*citing Smartout v. Mut. Serv. Life Ins. Co.*, 632 N.W.2d 741, 744 (Minn. Ct. App. 2001) (finding an intrusion could also be made by defendant's senses, such as overhearing plaintiff's private affairs)[12]). Plaintiff's allegations satisfy these elements.

***i. North physically intruded upon Plaintiff's solitude.***

North unlawfully intruded upon Plaintiff's and the Class Members' privacy and seclusion when it intentionally embedded Pixel on its Websites for the purpose of secretly recording users' activity, without disclosing that fact to the Websites' users. *See* FAC, ¶ 206 ("intrusion upon Plaintiff's seclusion, including embedding Pixel within the website browser and also the disclosure of intimately personal facts"). For all intents and purposes, Pixel is a recording device akin to secretly installing a tape recorder or camera (owned and controlled by a third-party) on Plaintiff's computer that broadcasts Plaintiff's online

---

[12] *See also* Restatement (Second) of Torts §652B and comm. b (1977) ("[The invasion] may also be by use of the defendant's senses, with or without mechanical aids, to oversee or overhear the plaintiff's private affairs, as by … tapping his telephone wires.");*Katz v. U.S.,* 389 U.S. 347, 351 (1967) (considering the Fourth Amendment, but recognizing that privacy laws protect people, not places).

activity to an unknown third party. This was a physical intrusion into Plaintiff's private web browser and browsing session and satisfies the physical intrusion element.

***ii. North's intrusion was highly offensive.***

Resolution of the "highly offensive" element of North's intrusion on Plaintiff's personal and private web browsing session is premature at the pleading stage. *See Mallak v. Aitkin Cnty.,* 9 F. Supp. 3d 1046, 1064 (D. Minn. 2014) ("What is "highly offensive" is generally considered a "question of fact" for the jury…"); *In re Google Assist.*, 457 F.Supp.3d at 830–31 (*citing Hernandez v. Hillsides, Inc.,* 47 Cal. 4th 272, 295 (2009) ("[D]etermining whether an intrusion is 'highly offensive' requires a fact-intensive inquiry that 'examine[s] all of the surrounding circumstances" and "[s]uch an inquiry cannot be conducted at the motion to dismiss stage where, as here, there are open factual questions…"); *Facebook Tracking*, 956 F.3d at 606. ("The ultimate question of whether [] tracking and collection practices could highly offend a reasonable individual is an issue that cannot be resolved at the pleading stage."). Notwithstanding this, the disclosure of Plaintiff's Sensitive Information is allegedly "highly offensive" and sufficient to allow the claims to proceed at this stage. *Cousin v. Sharp Healthcare*, No. 22-cv-2040-MMA (DDL), 2023 WL 4484441, at *6 (S.D. Cal. July 12, 2023) (denying a motion to dismiss because disclosure of sensitive health information is "highly offensive").

Plaintiff alleges North's secret installation of Pixel on its Websites for the purpose of tracking, recording, and disclosing Sensitive Information to third parties is egregious and meets the "highly offensive" standard.

> To determine whether an interference is offensive, courts consider, 'the degree of intrusion, the context, conduct and circumstances surrounding the intrusion as well as the intruder's motives and objectives, the setting into which he intrudes, and the expectations of those whose privacy is invaded' and 'the number and frequency of the intrusive contacts.'

*Mallak,* 9 F. Supp. 3d at 1064 (*quoting Bauer v. Ford Motor Credit Co.,* 149 F. Supp. 2d 1106, 1109 (D. Minn. 2001).[13]

The conduct Plaintiff alleges here is not garden-variety data sharing. There are strong social norms surrounding the confidentiality of medical information because disclosure can "subvert a public interest favoring communication of confidential information to medical personnel"—precisely the conduct alleged here. *Doe v. Beard*, 63 F. Supp. 3d 1159, 1170 (C.D. Cal. 2014). North was on notice pursuant to HIPAA, other federal law, and HHS guidance that use of Pixel and other tracking technologies was not permitted. North was also aware that Plaintiff had not provided the required consent to disclose her health and other sensitive information to third parties. Yet, North intentionally

---

[13] North incorrectly relies on *Hammerling v. Google LLC,* 615 F. Supp. 3d 1069 (N.D. Cal. 2022). In *Hammerling*, the plaintiffs argued that Google wiretapped their communications by "secretly us[ing] their Android smartphones to collect data about non-installation metrics, the amount of time spent using the non-Google apps, and how often those apps were opened." *See Id.* at 1077. The Court properly recognized that those allegations only amounted to generalized "usage and engagement data," and contrary to the content of click, search and URL data at issue here, that data failed to reveal "the specific information (*i.e.*, content) that a user input[ted]." *Id.* at 1093. For this reason, the Court in *Meta Pixel* found any reliance on *Hammerling* to be misplaced, observing that the plaintiffs in *Hammerling* "did not allege that Google can read the specific information (*i.e.,* content) that a user inputs, and therefore "the kind of data collected in *Hammerling* is not analogous to the data at issue here". 2022 WL 17869218 at fn. 13; *see also Hazel v. Prudential Fin., Inc.,* No. 22-cv-07465-CRB, 2023 WL 3933073, at *5 (N.D. Cal. June 9, 2023) (finding "surreptitious monitoring a critical factor" on determining whether the intrusion was "highly offensive"). The same holds true here.

disclosed Plaintiff's Sensitive Information to a hidden third party anyway. The Websites' users submitted their information from the privacy of their personal devices and under the expectation that their communications were only going to North and not being recorded by a secret third party. North's alleged disregard for its patients and their federally protected privacy may be fairly construed as highly offensive.

The means by which North tracks users of its Websites is also highly offensive and users would not expect or detect this kind of invasion on a routine visit to North's Websites. The secretly installed Pixel allowed North and Meta to capture and track nearly every action users took in real-time while visiting the sites, including collecting and disclosing visitors' Sensitive Information. FAC, ¶¶ 7, 52, 110, 114. North does all of this, admittedly, for its own gain, commercial and otherwise. This, again, may be considered highly offensive conduct and satisfies the element.

***iii. Plaintiff had a reasonable expectation of privacy in her Website Communications***

Plaintiff and any reasonable person would rationally expect, outside of consent, that communications with a healthcare provider via their computer device, no matter where the device is used, is private. FAC, ¶¶ 91-97; *see Facebook Tracking*, 956 F.3d at 604 n.7 ("[I]ndividuals maintain the expectation that entities will not be able to collect such broad swaths of personal information absent consent[]"); *Norman-Bloodsaw v. Lawrence Berkeley Lab'y*, 135 F.3d 1260, 1269 (9th Cir. 1998) ("One can think of few subject areas more personal and more likely to implicate privacy interests than that of one's health or genetic make-up."); *see also Doe v. City of New York*, 15 F.3d 264, 267 (2d Cir. 1994)

("Extension of the right to confidentiality to personal medical information recognizes there are few matters that are quite so personal as the status of one's health").

Plaintiff and the Class Members had a reasonable expectation of privacy in their Website Communications and reasonably relied on North to protect their Sensitive information. FAC, ¶¶ 22, 30. Medical facilities are always required to maintain confidentiality of patient records and communications, with limited exceptions. *Id.*, ¶¶ 98-106. North's own policies acknowledge its obligation to reasonably safeguard sensitive information and protect against unauthorized disclosure. *Id.* Moreover, North did the opposite of what is represented it would do with Plaintiff's Sensitive Information by secretly utilizing a device the primary purpose of which was to surreptitiously disclose information, sensitive and otherwise. This demonstrates that not only did Plaintiff have a reasonable expectation of privacy, but North violated that expectation.

Taken together, Plaintiff's allegations satisfy the Crime Tort Exception and negates any Party Defense North asserts. The Court should deny North's Motion to Dismiss Counts I and II and allow these claims to proceed.

## II. PLAINTIFF ALLEGES A VALID MCFA CLAIM

Plaintiff sufficiently alleged North's misrepresentations and material omissions to support her MCFA claim and her claim under the private attorney general statute.[14]

[14] North secondarily argues that Plaintiff failed to plead scienter by failing to plead facts that demonstrate North intended to deceive, and reliance, thereby failing to allege a causal nexus between the wrongful conduct and harm suffered. However, "[t]o the extent the parties read 'scienter' to mean intentional misrepresentations, courts have held that the MCFA 'does not require the making of an intentional misrepresentation.'" *Johannessohn v. Polaris Indus., Inc.*, 450 F. Supp. 3d 931, 952 (D. Minn. 2020), *aff'd,* 9 F.4th 981 (8th

### A. North's misrepresentations are actionable under the MCFA

North attempts to liken this case to *Bernstein v. Extendicare Health Servs., Inc.* 607 F. Supp. 2d 1027 (D. Minn. 2009). Def. Br. at 12. In *Bernstein*, a nursing home allegedly misrepresented the *quality* of medical services it provided. *See Id.* at 1032 ("Statements that a nursing home will comply with or exceed 'applicable laws,' or that it has established 'rigorous standards,' are similar to statements that services provided will be 'high quality.'). The court found these representations insufficient to support a MCFA claim for two reasons. First, the court found the representations were too "general and unspecific" and did not "reference[] any particular standard." *Id.* And second, the court found a promise to follow the "comprehensive regulatory scheme" is not a promise that legally obliges the nursing home to something more than those regulations, which they were already obligated to follow. *Id.*

As North notes, the *Bernstein* plaintiffs alleged that the defendant's nursing homes failed to comply with "applicable laws and regulations," and the alleged fraud underlying the plaintiffs' MCFA claim involved statements on defendant's website (among other places) that their nursing homes were operated in compliance with those laws. 607 F. Supp. 2d at 1030. There is a critical distinction, however, between the misrepresentations in *Bernstein* and this case.

---

Cir. 2021). Additionally, if defendant's misrepresentations were directed at and affected a broad group of consumers, like they did here, proof of direct individual reliance is not required to establish a causal nexus between MCFA violations, and the harm suffered by consumers." *Id.*

Here, Plaintiff alleges that Defendant's privacy policy stated, "We protect health and medical information as required by federal and state privacy laws." FAC, ¶ 108. This is a substantially narrower and more specific representation than those made by the nursing home in *Bernstein*. That is, the universe of "federal and state laws" governing "protect[ion of] health and medical information" is a subset—and a comparatively miniscule one—of "applicable laws and regulations" governing "health care services." *Bernstein*, 607 F. Supp. 2d at 1030. In other words, the misrepresentations here were not a nebulous pledge but rather specifically focused on privacy – the heart of Plaintiff's complaint.

Additionally, federal and state laws and regulations governing protection of medical information all have something in common that many medical-services regulations do not: notice and consent elements. Among other regulations, Plaintiff alleges that Defendant's conduct violated HIPAA. FAC, ¶ 98. As summarized in the FAC, "HIPAA is a federal law that required the creation of national standards to protect sensitive patient health information from being disclosed without the patient's *consent or knowledge*." *Id.*, ¶ 99 (emphasis added, quotation omitted). Therefore, Defendant's representations with respect to its handling of health information *can* alter its legal obligations with respect to a given individual. The fraudulent representations alleged here are fundamentally different from those alleged in *Bernstein*, and it should not control the outcome of this case.

**B. North's omissions are actionable under the MCFA**

Plaintiff has alleged North omitted material facts related to its use of Pixel on the Websites and the "special circumstances" that create North's duty to disclose those material facts.

**1. North omitted material facts.**

As alleged, North omitted material facts from its Privacy Policy related its use of Pixel on its Websites and its unauthorized disclosure of Sensitive Information to Meta.[15] An omission is material if a reasonable consumer would attach importance to its existence or nonexistence in determining his choice of action in the transaction in question. *Johannessohn*, 450 F. Supp. 3d at 955. Here, North omitted that it routinely divulged all of Plaintiff's Website Communications, sensitive and medically related or otherwise, to Meta via the use of a secret recording device (Pixel) and later financially benefited from those disclosures. *See generally* FAC. Knowledge that North was disclosing Sensitive Information to Meta would certainly impact whether any reasonable person would communicate or provide Sensitive Information to North on its Websites. North's omissions were therefore of material.

**2. Special circumstances created a duty for North to disclose material facts to Plaintiff**

Special circumstances may trigger a duty to disclose material facts. *Graphic Commc'ns Loc. 1B Health & Welfare Fund A v. CVS Caremark Corp.*, 850 N.W.2d 682, 695 (Minn. 2014). Plaintiff alleged three special circumstances recognized both by Minnesota law and by Defendant as giving rise to a duty to disclose material information:

[15] Plaintiff adequately alleges that North's policy states it will protect users' information in accordance with the law, and notes only that it *may* disclose that information with certain third parties, and also that these representations were knowingly false and fraudulent. This demonstrates North's intent to deceive its users and patients that relied on those statements in selecting and using North's services. This further establishes the special circumstances necessary to bring an "omission" claim under the Act.

(1) a confidential relationship; (2) defendant's knowledge of the wrongful activity; and (3) disclosure of partial information. *Id.*

First, Plaintiff alleges that North is a "regulated entity" under HIPAA, *i.e.,* a healthcare provider, and that the information it collects from the Websites' users—even prospective patients—is protected health information covered by HIPAA. FAC, ¶ 106. This creates a "confidential relationship," through which the parties exchanged confidential information, and also through which North was obligated to clearly disclose its use of the Pixel and subsequent disclosures to third parties on the Websites.

Second, Plaintiff has sufficiently alleged North had actual knowledge of its fraudulent activity, including its' secret use of and financial benefit from Pixel. A duty to disclose material facts occurs when one party has "special knowledge of material facts to which the other party does not have access." *Graphic Commc'ns Local 1B Health & Welfare Fund A.*, 850 N.W.2d at 696 (concluding that "an omission-based consumer fraud claim is actionable" when "special circumstances exist to trigger a legal or equitable duty to disclose the omitted facts"). For the special knowledge circumstances to trigger a duty to disclose, the complaint must allege that the defendant had "actual knowledge of fraudulent activities." *Richfield Bank & Trust Co. v. Sjogren*, 244 N.W.2d 648, 652 (Minn. 1976). A special knowledge of material facts that trigger a duty to disclose exists when the complaint alleges that defendant knew of the fraudulent conduct. *See Varela v. State Farm Mutual Automobile Ins. Co.*, 2023 WL 1971753, at *7 (D. Minn. 2023) (finding at the motion to dismiss stage, that the question remains as to whether defendant in fact had actual knowledge of the fraudulent activities); *see also Cleveland v. Whirlpool Corp.*, 550 F. Supp.

3d 660, 675 (D. Minn. 2021) (holding that plaintiff plausibly alleged defendant had actual knowledge of a material fact that plaintiff did not have, creating a special knowledge for the fraudulent omissions claim).

Here, Plaintiff has alleged that North knew it was unlawful to divulge Plaintiff's highly Sensitive Information, but intentionally granted Meta access to Plaintiff's and the Class Members' confidential information anyway. FAC, ¶ 11 ("North knowingly and intentionally disclosed Plaintiff's and the Class Members' Sensitive Information to its vendors and other undisclosed third parties."); *id.*, ¶ 32. North also willfully used the contents of Plaintiff's electronic communications, despite knowing that the information was unlawfully obtained. *Id.*, ¶ 158. Moreover, North knowingly and unlawfully received a benefit from the use of Plaintiff's Sensitive Information, including monetary compensation. *Id.*, ¶ 211. Thus, North had actual knowledge of its fraudulent activity, thereby creating a special relationship and a duty to disclose its use of Pixel on its Websites and the disclosures to Meta stemming from that use. [16]

Third, Plaintiff alleged North made partial but insufficient and misleading statements related to its disclosure of Plaintiff's Website Communications to third parties. To disclose Plaintiff's Sensitive Information, North was required by federal law, HIPAA, to obtain consent. *See supra* § ARGUMENT I(B)(2)(a)(ii). The vague statement in North's Privacy Policy that it "may disclose information to third parties," is unavailing because it fails to demonstrate Plaintiff saw this disclosure, and also, the disclosure itself is not even

[16] This argument also applies to Plaintiff's MDTPA claim *infra* § ARGUMENT III(A)(2).

close to satisfying HIPAA required disclosures and consent. *See supra* § Argument Taken together, Plaintiff has alleged the special circumstances to support an MCFA claim (and MDTPA claim) based on North's omission.

**C. Plaintiff alleges an actionable MCFA claim under Minnesota's private attorney general statute.**

To assert a MCFA claim under the private attorney general statute, Plaintiff must allege a public benefit, and has done so here. *See Collins v. Minnesota School of Business, Inc.,* 655 N.W.2d 329, 330 (Minn. 2003) (finding defendant's representations were to the public at large, and plaintiff's successful prosecution of their claims would benefit the public). North argues that Plaintiff's claims do not allege a public benefit because Plaintiff "primarily seeks damages." Def. Br. at 17–18. However, in Minnesota, the public benefit inquiry weighs the public impact of the alleged misrepresentations over any damages plaintiffs seek:

> although federal courts in Minnesota have focused the public benefit inquiry on whether plaintiff is seeking only money damages . . . after *Collins*, it seems reasonable to infer that the Minnesota Supreme Court is as much if not more concerned with the degree to which defendants' alleged misrepresentations affect the public.

*Hudock v. LG Elecs. U.S.A., Inc.*, No. CV 16-1220 (JRT/FLN), 2017 WL 1157098, at *6 (D. Minn. Mar. 27, 2017) (quotation omitted). Here, Plaintiff seeks damage and injunctive relief enjoining North from continuing to engage in the wrongful and unlawful acts described herein. FAC, ¶¶ 147, 164, 190, 209. This relief would have a substantial impact on the public. Accordingly, Plaintiff respectfully requests the Court deny North's Motion.

## III. PLAINTIFF ALLEGES A VALID MDTPA CLAIM

North asserts that "[s]everal of [Plaintiff's] allegations are not representations or omissions and cannot serve as a basis for [an MDTPA] claim even if the allegations were true." Def. Br. at 20. North is wrong. The MDTPA provides that a person "likely to be damaged by a deceptive trade practice of another may be granted an injunction against it." Minn. Stat. § 325D.45. subd. 1. To assert a claim under the MDTPA, Plaintiff "must allege an irreparable injury or threat of future harm." *Knotts v. Nissan North America, Inc*., 346 F. Supp. 3d 1310, 1328 (D. Minn. 2018) (citation omitted). Here, Plaintiff meets this standard by alleging an irreparable injury and a likely threat of ongoing and future harm.

### A. Plaintiff pleaded her MDTPA claim with particularity.

North argues Plaintiff has not met Rule 9(b)'s heightened pleading standard because her allegations amount to "vague, non-actionable statement[s]". Def. Br. at 19-20 (citing *Bernstein*, 607 F. Supp. 2d at 1032). However, the court in *Bernstein* made clear it was "not address[ing] Defendants' argument that Plaintiff failed to plead her fraud claims with sufficient particularity." *See id.* (recognizing the allegations could not serve as the basis for a consumer protection claim because the affirmative statements were merely puffery).[17] Here, Plaintiff's allegations center on what North did *not* say and are actionable.

[17] Although the court in *Bernstein* found the plaintiffs' vague and sweeping statements to provide services "as required by law" to constitute mere puffery, here Plaintiff has alleged that North affirmatively omitted, suppressed, and concealed material facts that North used Pixel on its Websites to divulge protected health information with unauthorized third parties, in violation of HIPAA. FAC, ¶ 179; *see MacRae v. HCR Manor Care Servs*., No. 14-0715-DOC (RNHx), 2014 WL 12588464, at *4 (C.D. Cal. Oct. 30, 2014) (denying defendant's motion to dismiss because plaintiff's misrepresentation allegations were more specific and measurable than that in *Bernstein*).

#### 1. Plaintiff alleges North's actionable omissions with requisite specificity.

Rule 9(b)'s heightened pleading standard applies to Plaintiff's MDTPA claim based on North's omissions, and is satisfied here. *See In re Target Corp. Customer Data Sec. Breach Litig*., 64 F. Supp. 3d at 1311 (noting Rule 9(b) is satisfied "if the omitted information is identified" and the complaint states "how or when" the information was omitted from disclosure)Indeed, Plaintiff's FAC is rife with how and when the specific unlawful Pixel implementation on North's Websites has been omitted from disclosure.

As alleged, North's deceptive actions, revolve around the non-disclosure and omission of its failure to comply with HIPAA and protect Plaintiff's Sensitive Information *Id.*, ¶ 179(f-g). Plaintiff alleges "North accepted the responsibility of protecting the data while keeping the state of the tracking technology used on its site and application secret from the public." *Id.,* ¶ 184. She alleges North used Pixel on its Websites to secretly track Plaintiff's Website Communications. *Id.*, ¶¶ 6, 8, 34, 52, 54, 203, 204. She alleges "North's source code secretly instructs the website visitor's browser to duplicate the visitor's communications and send those communications to Meta… in real-time." *Id.*, ¶ 69. She further alleges North's unlawful activity was accomplished without Plaintiff's or Class Members' knowledge, and without consent or authorization. *Id.*, ¶¶ 74, 140, 159, 172. She also alleges North's conduct is ongoing, and it continues to unlawfully disclose Plaintiff's and the Class Members' communications any time they use or provide information to North through its Websites or application without their consent. *Id.*, ¶ 147.

Although Rule 9(b)'s heightened pleading requirement applies to Plaintiff's MDTPA claim, *E-Shops Corp. v. U.S. Bank Nat'l Ass'n*, 678 F.3d 659, 665 (8th Cir. 2012), Plaintiff has satisfied the heightened pleading requirement by asserting numerous detailed factual allegations describing the circumstances surrounding North's deceptive and misleading conduct. *Id.* at 663 (recognizing that the level of particularity depends on the case).[18] Contrary to North's assertion, Plaintiff is not required to allege the precise details of every instance of fraud, but instead, the complaint should include sufficient details to notify the North of the core factual basis for the fraud-based claims. *McGregor v. Uponor, Inc*., No. 09-1136, 2010 WL 55985, at *3 (D. Minn. Jan. 4, 2010) (citation omitted); *see also Blue Cross and Blue Shield of Minn. v. Wells Fargo Bank, N.A*., Civ. No. 11-2529 (DWF/JJG), 2012 WL 1343147, at *4 (D. Minn. April 18, 2012) (recognizing that a heightened pleading standard does not "require such surgical precision" when there is an ongoing course of fraudulent conduct). The "systematic practice of fraudulent activities" over an extended period of time, does not require specific details of every instance of the fraudulent activity. *Id*. at *2 (finding "representative samples" of fraud for an ongoing practice was sufficiently particularize).

Plaintiff has specifically alleged North's ongoing fraudulent activity. Plaintiff has alleged: "Who" – North (*See generally* FAC); "What" – North fails to disclose or omits the fact that is shares patient's personal health information with Meta via Pixel, without

[18] By contrast, the plaintiffs in *E-Shops* failed to identify how the defendant knowingly and substantially assisted the underlying fraud and thus failed to meet the heightened Rule 9 pleading requirement. 678 F.3d at 666.

consent or authorization (*id.*, ¶¶ 4, 9, 11, 22, 25, 37, 38, 40, 73, 185); "When" – Plaintiff was a patient of North in approximately October 2021 (*id.* ¶¶ 19-20), during this time, North encouraged and advised Plaintiff to utilize North's online website and patient portal (*id.*, ¶ 20) and has been a Facebook user since at least 2009 and also maintains an Instagram account (*id.*, ¶ 21), while North's conduct creates a continued and going risk and continued harm (*id.*, ¶¶ 13, 147, 164); "Where" – North's Websites (*id.*, ¶¶ 2, 4, 20, 107, 116, 134, 152), while in the State of Minnesota (*id.*, ¶¶ 16, 17); "How" – North's use of Meta's Pixel on its Websites and applications allowed for a broad scope of patient information, including highly confidential medical information, to be tracked, collected and transmitted to Meta on an ongoing basis without the patients' knowledge, authorization or consent. (*id.*, ¶¶ 4, 5, 22, 34, 35, 40, 203).

Plaintiff's allegations provide sufficient details to notify North of the principal factual basis for her omission-based claims.

### 2. North had a duty to disclose its use of Pixel

North further argues that Plaintiff fails to allege any special circumstances that create a duty to disclose and that Plaintiff should have discovered the secret implementation of Pixel because of North's Privacy Policy. Def. Br. at 21. Fundamentally, it is unclear whether North claims it had no duty to fully disclose the truth, or conversely, that it had a duty but that Plaintiff fails to allege North's "actual knowledge of fraudulent activity." *Id.* In either case, North's unsound arguments that it had no duty to disclose the truth fail. *See supra* § ARGUMENT II(B)(ii) (same argument applies here).

**B. Plaintiff alleged that she is likely to suffer future harm.**

North asserts Plaintiff's MDTPA claim fails because she did not plausibly allege she is likely to suffer a future harm. Def. Br. at 22. However, Plaintiff did plainly allege an ongoing threat and likely future harm. FAC, ¶¶ 13, 147, 164, 187, 209.

Under the MDTPA, "[a] person likely to be damaged by a deceptive trade practice of another may be granted an injunction against it under principles of equity and on the terms that the court considers reasonable." Minn. Stat. § 325D.45, subd. 1. At this early stage, the Court should deny North's motion to dismiss Plaintiff's MDTPA claim unless it "appears beyond a reasonable doubt that [p]laintiffs can prove no set of facts in support of their claim which would entitle them to relief." *See Masterson Personnel, Inc. v. The McClatchy Co.*, No. 05-1274RHKJJG, 2005 WL 3132349, at *6 (D. Minn. Nov. 22, 2005) (cleaned up) (denying defendant's motion to dismiss plaintiff's MDTPA claim); *see also In re Netgain Technology, LLC*, No. 21-cv-1210 (SRN/LIB), 2022 WL 1810606, at *16-17 (D. Minn. June 7, 2022) (finding defendant's argument "premature at this stage of the litigation" when allegations of inadequate and unreasonable data security constituted an ongoing and continued injury). Instead, the plaintiff must merely allege "facts sufficient to support a likelihood of future harm." *Hudock v. LG Electronics U.S.A., Inc.*, No. 16-1220 (JRT/FLN) 2017 WL 1157098, at *6 (Mar. 27, 2017) (cleaned up). This, Plaintiff has done and, upon information and belief, North is still using Pixel on its Websites. FAC, ¶¶ 147, 164, 187, 188, 209

North further asserts that because Plaintiff has pleaded she "is a former patient of Defendant" it is not plausible that she is "likely to suffer a future harm." Def. Br. at 21.

But, Plaintiff's injunctive relief request is necessary to prevent future injury to Plaintiff and Class Members who have used and continue to use North's Websites. It is unknown whether Plaintiff and the Class may be required to use North's services, even if they may currently be former patients (for example, if taken to the emergency room and need follow up care.) Consumers' need for healthcare is ongoing and Plaintiff has sufficiently alleged she may return to North for additional care, should she need it, and at that time she would be encouraged to use the Websites. Moreover, Sensitive Information North previously collected and gathered in the past still, "exposes [Plaintiff and the Class Members] to a material risk of future harm that is concrete and imminent." *Perry v. Bay & Bay Transp. Servs., Inc.*, No. 22-973 (JRT/ECW), 2023 WL 171885, at *4 (D. Minn. Jan. 12, 2023) (finding standing to assert injunctive relief claim in a data breach action because the compromised information included highly sensitive personal information).

North's ongoing use of Pixel continues to unlawfully disclose Plaintiff's Website Communications, without consent, to unauthorized third parties. FAC, ¶¶ 147, 164, 187, 209. At this early stage of the litigation, it would be premature to dismiss Plaintiff's allegations of an ongoing harm without discovery into North's ongoing activities and intentions with respect to the data it has collected and may collect in the future.[19] *See Hudock*, 2017 WL 1157098, at * 6 ("At the motion to dismiss stage, these allegations

---

[19] In *Kurowski v. Rush Sys. For Health*, the defendant made a similar argument in its motion to dismiss the plaintiff's injunctive relief claim. No. 22-5380, 2023 WL 2349606, at *8 (N.D. Ill. Mar. 3, 2023). The court found that plaintiff and class members faced likely future harm by continuing to use defendant's website and the claim survived defendant's motion to dismiss.

provide a proper basis for Plaintiffs' MDTPA claim."); *Cleveland*, 550 F. Supp. 3d at 677 (recognizing that a plaintiff seeking injunctive relief pursuant to MDTPA does not need to allege a future purchase); *see also Ferrari v. Best Buy Co*., No. 14-2956 MJD/FLN, 2015 WL 2242128, at *10 (D. Minn. May 12, 2015) (holding that it was "premature to dismiss [p]laintiff's claim for injunctive relief" at the pleading stage because plaintiff should be allowed to "uncover evidence showing that he may be harmed in the future"); *Williams v. Total Life Changes, LLC,* No. 20-2463 (MJD/HB), 2021 WL 2592385, at *4 (D. Minn. June 24, 2021) (finding injunctive relief appropriate because plaintiff had no way of knowing if use of the product at issue in the future would cause future harm).

Thus, the Court should not dismiss Plaintiff's MDTPA claim for injunctive relief at the motion to dismiss stage.

**C. Plaintiff has standing to bring an MDTPA claim.**

North further asserts that "Plaintiff's risk of future harm is speculative, not imminent." Def. Br. at 23. Yet, "[a]t the pleading stage," general factual allegations of injury resulting from the defendant's conduct may suffice' to establish standing." *Lujan v. Defs. of Wildlife*, 504 U.S. 555, 561 (1992).[20] Moreover, in a class action, the question of whether a plaintiff maintains standing, "may be postponed when class certification is

[20] North cites *Barclay et al. v. Icon Health & Fitness, Inc*., No. 19-2970, 2022 WL 486999, at *1 (D. Minn. Feb. 17, 2022) (one time fitness product purchase) for the proposition that Plaintiff lacks Article III standing for failing to allege a future harm. Def. Br. at 24. But unlike in *Barclay*, Plaintiff here has alleged that North's conduct is ongoing and continues (FAC, ¶¶ 147, 187) and that Plaintiff "may return to North in the future for additional medical care…" *Id*., ¶ 188. Additionally, the information has already been extracted from Plaintiff and injunctive relief will "prevent future unlawful and unauthorized disclosure" and unauthorized use of Plaintiff's Sensitive Information. *Id*., ¶ 147.

'logically antecedent' to standing.'" *Hudock*, 2017 WL 1157098, at *2 (deferring the standing issue until after class certification); *Gisairo v. Lenovo (United States) Inc.*, 516 F. Supp. 3d, 516 F. Supp. 3d 880, 887 (D. Minn. Feb. 2, 2021) (same).

To maintain standing, plaintiffs must demonstrate, "that they suffered concrete harm." *TransUnion LLC v. Ramirez*, 141 S. Ct. 2190, 2200 (2021). The concrete harms traditionally recognized as providing a basis for lawsuits in American courts include reputational harms, *disclosure of private information*, and intrusion upon seclusion and can include intangible injuries. *Id*. at 2204 (emphasis added) (cleaned up). Plaintiff has alleged standing for injunctive relief under MDTPA because there is a "sufficiently imminent and substantial" risk of harm that would be avoided if the injunctive relief was granted. *Id.* at 2210 (*supra* § ARGUMENT III.B); *see also Perry*, 2023 WL 171885, at *4 (finding standing for injunctive relief because the future harm was concrete and imminent); *In re Netgain Tech.*, 2022 WL 1810606, at *5 (same).

Plaintiff has sufficiently alleged a substantial risk of future harm under the MDTPA.

## IV. PLAINTIFF ALLEGES A VALID MHRA CLAIM

North argues it is not liable under the MHRA because Plaintiff fails to allege North disclosed any "health records." Def. Br. at 24-27. The MHRA governs the release and disclosure of "health records" and imposes liability on "[a] person" who negligently or intentionally releases a health record in violation of MHRA guidelines. *Rhoades v. Lourey*, No. A18-1120, 2019 WL 1006804, at *2 (Minn. Ct. App. Mar. 4, 2019); Minn. Stat. § 144.293, subd. 2. The goal of the MHRA is to "protect the privacy of individual's health care information." *Yath v. Fairview Clinics, NP*, 767 N.W.2d 34, 49 (Minn. Ct. App. 2009).

Consistent with this broad statutory purpose, MHRA contains an expansive definition of "health records":

> [h]ealth records means any information, whether oral or recorded in any form or medium, that relates to the past, present, or future physical or mental health or condition of a patient [,] the provision of healthcare of a patient [or] or the past, present, or future payment for the provision of healthcare to a patient.

Minn. Stat. § 144.291, subd. 2(c).

There is "scant caselaw analyzing what constitutes a 'health record' under the [MHRA]." *Furlow v. Madonna Summit of Byron*, No. A19-0987, 2020 WL 413356, at *2 (Minn. Ct. App. Jan. 27, 2020). Even so, under the statutory definition, there is no question that the information Plaintiff alleges North collected—information identifying Plaintiff as a patient of North, or that she submitted as a patient to North for the purpose of seeking medical care, reviewing referred doctors, and researching future care (FAC, ¶¶ 19, 27, 105-06)—are health records. *See Id.* (considering that a health record may exist where the information released goes to the "nature of the care or condition"); *Meta Pixel*, 2022 WL 17869218, at *8 (finding "patient-status constitutes protected health information" and "information transmitted through the Pixel establish[ing] that a user is about to log in to a healthcare provider's website" discloses patient status).[21]

North cites *Smith v. Facebook* and *Kurowski* I to argue that browsing history is too tenuous to support HIPAA's disclosure requirement and that hypothetical data disclosures

[21] Outside of considering information that goes to the nature of the care or condition a health record, *Furlow* is inapposite. In *Furlow*, a person other than the plaintiff posted a photo of plaintiff to her own social media account. 2020 WL 413356, at *1. The photo did not identify the plaintiff by name or provide any medical or health information. *Id.* Here, the Websites identify patients and then collect Sensitive Information. FAC, ¶¶ 5, 64.

do not involve a health condition. Def. Br. at 26. However, these cases are distinguishable. *Smith* found no protected health information at issue because the information transmitted to Meta when a user visited www.cancer.net was the same kind of information transmitted to Meta any time a user of any kind visited any page on the internet that contained Pixel. *Smith v. Facebook*, 262 F. Supp. 3d 943, 954 (N.D. Cal. 2017). In short, the URLs did not "relate[] specifically to *Plaintiff's* health" but was essentially objective to any and all visitors. *Id.* This case is different. North is itself a healthcare provider, unlike cancer.net, a clearinghouse of information the court described as "general health information that [was] accessible to the public at large" *Id.* Here, North is a direct provider and the URLs and other information transmitted to Pixel on North's Websites establish that a specific user is a patient, connecting the particular user to a particular healthcare provider—*i.e.*, patient status—which falls within the scope of information protected by HIPAA. *Id.* *Smith* is inapposite.

*Kurowski* I, relying on *Smith*, held the plaintiffs failed to allege what patient data disclosures occurred when an actual patient enters the website. *Kurowski* I*,* 2023 WL 2349606, at *5. This is distinct from this case, where Plaintiff has alleged the disclosure of her patient status, prescriptions, diagnoses, and medical insurance information. FAC, ¶ 19. Moreover, in *Kurowski v. Rush Sys. For Health*, No. 22 C 5380, 2023 WL 4707184, at *3 (N.D. Ill. July 24, 2023) ("*Kurowski* II"), the same court recognized that care-related communications fall squarely within the meaning of individually identifiable health information ("IIHI") and further found the allegations in *Doe v. Regents of University of*

*California*, No. 22 C 5380, 2023 WL 3316766 (N.D. Cal. May 8, 2023) instructive, yet distinguishable from those of the *Kurowski* plaintiffs.

*Regents* is also instructive here. In *Doe*, the court found information provided relating to plaintiff's heart issues and high blood pressure was IIHI and held at the motion to dismiss stage that plaintiff had plausibly alleged her medical information was inappropriately accessed. 2023 WL 3316766 at *2. This is similar to Plaintiff's allegations, where she alleges that she provided her Sensitive Information to the Websites, including information related to her medical treatment, diagnoses, prescriptions and insurance information and reviewed doctor notes, medical bills, and medical records. FAC, ¶ 19. Like the court in *Regents*, the Court here should find that these types of communications disclose medical information and that neither *Smith* nor *Kurowski* I or II control.

The other cases North cites are also distinguishable as they do not analyze the types of information Plaintiff has alleged here. *See Rhoades,* 2019 WL 1006804, at * 1-2 (reviewed name, address, date of birth, height, weight, eye color, hair color, Minnesota driver's license number, Social Security number, place of employment, employer's address, Federal Bureau Investigation number, Minnesota prison offender identification number, and Bureau of Criminal Apprehension number and determined these were not health records); *Furlow*, 2020 WL 413356, at *2 (reviewed a photo identifying hair and eye color and approximate age and determined nothing in the photograph goes to the nature of the care or condition). These cases do not relate to the past, present, or future physical or mental health condition of a patient. Both cases are inapposite.

Here, Plaintiff alleges that she was a patient of North (FAC, ¶ 18); she was identified as a patient on North's Websites (*id*., ¶¶ 5, 19, 56 ("[North] shares patients' and website visitors identities…"), 64); that her electronic communications with the Websites included information related to her medical care from North (*id.*, ¶¶ 6, 10, 19, 64); and that when her communications were released to Meta, they included personal identifiers like IP address, device identifier, location, and unique Facebook user number (*id.*, ¶¶ 9, 38, 49, 54, 105). Together, these constitute health records. Additionally, the disclosure of personal identifiers is critical here because once Meta has that information, if Plaintiff or the Class Members *ever* identify as a patient on the Websites, Meta can link or associate all previous activity on the site to that specific individual and their patient status, which constitutes a large swath of patient information. *Id*., ¶¶ 50-51, n. 12, 57(b). Thus, North released the core content of health records to Meta and Count V should proceed.

## V. PLAINTIFF ALLEGES A VALID INTRUSION UPON SECLUSION CLAIM

As discussed above, North intentionally intruded, physically and otherwise, upon the solitude or seclusion of Plaintiff's and the Class Members' private affairs or concerns, and that intrusion was highly offensive to a reasonable person. Restatement (Second) of Torts § 652B (1977); *see also supra* § ARGUMENT I(B)(3)(b) (discussing Plaintiff's Intrusion Upon Seclusion Claim at length).

In addition to Plaintiff's previous arguments related to her Intrusion Upon Seclusion Claim, courts around the country routinely and perhaps universally find that a wiretap violation (and violations of other laws) gives rise to a claim for intrusion upon seclusion. *See LeCrone v. Ohio Bell Tel. Co.*, 201 N.E.2d 533, 536-37 (Oh. App.

1963) (telephone company liable for invasion of privacy by assisting husband by placing tap on wife's phone); *Hoskins v. Howard*, 971 P.2d 1135, 1141 (Id. 1998) (violation of state wiretap law gave rise to intrusion claim); *Clayton v. Richards*, 47 S.W.3d 149, 155-56 (Tex. App. 2001) (finding actionable intrusion where unlawful wiretap alleged); *Nader v. Gen. Motors Corp*., 25 N.Y.2d 560, 570 (1970) ("[T]o the extent the two challenged counts charge it with wiretapping and eavesdropping, an actionable invasion of privacy has been stated."); *Souder v. Pendleton Detectives*, 88 So.2d 716, 717-18 (La. App. 1956) (actionable invasion of privacy where trespass alleged*); Latture v. Emmerling*, No. 304833, 2013 WL 5225243, at *4 (Mich. App. 2013) (actionable intrusion where defendant obtained access to email by "illegally" accessing school computer system); *Billings v. Atkinson*, 489 S.W.2d 858, 860 (Tex. 1973) (adopting tort of intrusion in a wiretap case); *Ruzicka Elec. & Sons v. IBEW*, 427 F.3d 511, 524-25 (8th Cir. 2005) (trespass gives rise to intrusion claim); *Harkey v. Abate*, 346 N.W. 74, 76 (Mich. App. 1983) (installation of viewing device actionable). This case is no different.

North asserts that Plaintiff has failed to allege: (1) an actionable intrusion; and (2) highly offensive conduct that would offend the reasonable person. Def. Br. at 29-32. To the extent this analysis is ripe for disposition at the motion to dismiss phase, Plaintiff has sufficiently alleged both elements, including that North secretly embedded Pixel on its Websites for the purpose of recording healthcare communications. *See supra* § ARGUMENT I(B)(3)(b).

The cases North relies upon are distinguishable. *See Lehman v. Zumbrota-Mazeppa Pub. Sch.*, No. A04-1226, 2005 WL 894756, at * 4 (Minn. App. Apr. 19, 2005) (plaintiff

had not alleged any affirmative act by defendant to obtain information but rather, plaintiff voluntarily provided the information); *Wittwer v. Enbridge, Inc.*, No. A06-1049, 2007 WL 152533, at *4 (Minn. App. Jan. 23, 2007) (finding intrusion must be intentional and plaintiff had alleged an accidental intrusion); *Jones v. Walgreens Co.*, No. A11-1261, 2012 WL 1658895, at *4 (Minn. App. May 14, 2012) (denial of a claim for intrusion upon seclusion where plaintiff voluntarily provided information to Walgreens and Walgreens did not disclose that information via a device or otherwise); *Kurowski* I, 2023 WL 2349606, at * 8-9 (plaintiffs focused on the "disclosure of private personal information" and this did not support a claim for intrusion upon seclusion). While Plaintiff here did voluntarily submit her Sensitive Information to North, she did so under the reasonable expectation that she was not being recorded during her session by a secret device (*i.e.,* the intrusion into her solitude), and also, she did not voluntarily subject her information to tracking and collection by Pixel, or disclosure to Meta. Accordingly, this case is distinguishable from those North cites.

Additionally, one of the cases North cites analyzes a claim for the publication of private facts---a different tort based on different elements. *See C.L.D. v. Wal-Mart, Inc.,* 79 F. Supp. 2d 1080, 1083-84 (D. Minn. 1999) (considering the publication of private facts (a different tort) and dismissing the claim for failure to assert sufficient publication)[22]. *C.L.D.* is inapposite for an intrusion upon seclusion invasion claim, which requires its own,

[22] In a footnote, *C.L.D*, also referred to intrusion upon seclusion, and noted that a plaintiff that voluntarily discloses information cannot claim it was obtained by intrusive means. 79 F. Supp. at 1083, n. 1. This is distinguishable here, where Plaintiff did not know she was being recorded by Pixel, and thus did not "voluntarily" provide information.

entirely distinct analysis. *See Hamberger v. Eastman*, 106 N.H. 107, 110 (1964) (finding it is evident that the four forms of invasion of privacy are distinct and based on different elements). For these reasons and those identified in ARGUMENT I(B)(3)(b) herein, Count VI of Plaintiff's FAC should proceed.

## VI. PLAINTIFF ALLEGES A VALID UNJUST ENRICHMENT CLAIM

Plaintiff's Sensitive Information holds its own intrinsic value, which North knowingly and unlawfully exploited by surreptitiously leveraging the information's value for its own financial benefit without the necessary authorization, disclosure, or compensation to Plaintiff and Class Members. North has been unjustly enriched at the expense of Plaintiff and Class Members, and as such, North's motion to dismiss Plaintiff's unjust enrichment claim should be denied.

### A. An implied contract and/or quasi-contract exists.

North summarily states that "Plaintiff has failed to plausibly allege any implied or quasi-contract related to the use of the website and, accordingly, [her unjust enrichment] claim should be dismissed." Def. Br. at 33. Indeed, North provides no factual argument or legal authority supporting why it believes an implied contract or quasi-contract does not exist other than simply stating that unjust enrichment claims in Minnesota are limited to an "implied or quasi-contract between parties." *Id*.

An implied contract "is not really a contract, but a noncontracted obligation," which "does not really arise from law, but from equity." *O'Brien & Wolf, LLP v. South Central Minnesota Elect. Workers' Fam. Health Plan*, 923 N.W.2d 310, 317 (Minn. Ct. App. 2018). The issue of whether an implied contract exists and is to be implied is a question for the

trier of fact. *Stubbs v. North Medical Cntr*., 448 N.W.2d 78, 82 (Minn. Ct. App. 1989); *see also Bergstedt, Wahlberg, Berquist Assocs., Inc. v. Rothchild*, 225 N.W.2d 261, 263 (Minn. 1975) (finding the determination of an implied contract "is usually a question to be determined by the trier of fact as an inference of facts to be drawn from the conduct and statements of the parties."). Additionally, a quasi-contract is not a contract in the legal sense, but instead is imposed by law and is independent of any real or expressed intent of the parties. *Erickson Plus Ltd. V. Ventura*, 2002 WL 31867733, at *3 (Minn. Ct. App. Dec. 24, 2002). Thus, the ultimate right to recover for a quasi-contract is also governed by principles of equity. *Id.*

Plaintiff directly alleges the quasi-agreement to protect information between the Defendant and her. Plaintiff has alleged she had a "reasonable expectation of privacy and relied on North to protect the Sensitive Information" because "medical facilities are always required to maintain confidentiality of patient records, with very limited exceptions." FAC, ¶ 30. Plaintiff alleges "an objective and reasonable expectation of privacy" in the medical related communications with Defendant. *Id.*, ¶ 203. She alleges North was required by law to make sure that medical information was kept private. *Id.*, ¶ 29. She alleges North had a known obligation under federal and state laws to protect Plaintiff's health and medical information. *Id.*, ¶¶ 28, 30, 99. These clear allegations suffice to infer an implied contract and/or quasi-contract.

**B. North has been unjustly enriched.**

Plaintiff has stated a claim for unjust enrichment because North received a benefit that would be inequitable for it to retain. *See In re Pork Antitrust Litig.*, 495 F. Supp. 3d

753, 791 (D. Minn. 2020) (denying defendants' motion to dismiss unjust enrichment claims because alleged unlawful actions enriched defendants). "Unjust enrichment is an equitable doctrine that allows a plaintiff to recover a benefit conferred upon a defendant when retention of the benefit is not legally justifiable." *Income Allocation, LLC v. TruChoice Fin. Grp., LLC*, No. 22-cv-343 (JWB/JFD), 2023 WL 3916738, at *8 (D. Minn. June 9, 2023) (citing *Herlache v. Rucks*, No. A21-1427, 2023 WL 3486679, at *4 (Minn. May 17, 2023)). To prove unjust enrichment, a plaintiff must show that the defendant was enriched "illegally or unlawfully." *First Nat'l Bank of St. Paul v. Ramier*, 311 N.W.2d 502, 504 (Minn. 1981).

To establish a claim for unjust enrichment under Minnesota law, Plaintiff must merely allege that North "knowingly received or obtained something of value for which the defendant in equity and good conscience should pay." *Schaaf v. Residential Funding Corp.*, 517 F.3d 544, 553-54 (8th Cir. 2008) (citing *ServiceMaster of St. Cloud v. GAB Bus. Servs., Inc.*, 544 N.W.2d 302, 306 (Minn. 1996)); *Gisairo*, 516 F. Supp. 3d 880, 893 (D. Minn. 2021) (citation omitted) (plaintiff adequately alleges unjust enrichment by alleging "that another party knowingly receive something of value to which he was not entitled, and that the circumstances are such that it would be unjust for that person to retain the benefit.").

Minnesota law is clear that a claim for unjust enrichment is "*based on what the person allegedly enriched has received, not on what the opposing party has lost*." *Georgopolis v. George*, 54 N.W.2d 137, 142 (1952) (emphasis added); *Herlache*, 2023 WL 3486679, at * 4; *but see* Def. Br. at 34 (arguing there was no inequity, "even if Plaintiff

now wishes she had gotten more from the exchange"). Thus, the focus is on what North has unlawfully gained, not what Plaintiff has allegedly lost.

North argues that Plaintiff fails to allege North received a benefit that was uncompensated. Def. Br. at 32-33.[23] Defendant's attempt to misstate Plaintiff's allegations notwithstanding, Plaintiff plainly alleges that North benefited from the secret and unlawful collection of Plaintiff's Sensitive Information and highly confidential medical records, which North then shared with unauthorized third-parties such as Meta, (FAC, ¶¶ 4, 5) to "save costs on its marketing campaigns [and] improve its data analytics to increase revenue." *Id.*, ¶ 8. Indeed, Plaintiff alleges her Sensitive Information is a valuable commodity in the medical information industry. *Id.*, ¶¶ 78-89. North knowingly and unlawfully leveraged Plaintiff's valuable Private Information without authorization or consent, to increase its own profits and revenue, (*id.*, ¶¶ 8, 48, 139), and failed to compensate Plaintiff and Class Members or even ask permission as required by law.

North benefited by secretly collecting and sharing Plaintiff's Sensitive Information and it would not be legally justifiable to allow North to retain such benefit. North's motion to dismiss Plaintiff's unjust enrichment claim should be denied.

---

[23] North cites *Hall v. Centerspace LP*, No. 22-2028 (KMM/DJF), 2023 WL 3435100, at *7 (D. Minn. May 12, 2023) for the proposition that Plaintiff's unjust enrichment claim fails because Plaintiff did "not allege that she paid more for healthcare to prevent data sharing that those who did not provide data on North's website." Def. Br. at 33. The findings in *Hall* are distinguishable as is North's inapposite "overpayment argument" because here: (1) Plaintiff did not provide her information knowingly in exchange for services or employment; and (2) Centerspace was a victim of a cybersecurity attack and did not secretly collect and unlawfully share plaintiff's information for its own financial gain or benefit. *Cf. Schaaf*, 517 F.3d at 554 (finding unjust enrichment does not occur when a defendant is enriched by what he is entitled to under contract or otherwise).

### C. North's privacy policy does not absolve its obligation to protect Plaintiff's information.

North argues that any implied or quasi-contract between North and Plaintiff must be based on the terms of North's Privacy Policy, which stated that North "used tracking technology and might share data generated on the website." Def. Br. at 35.[24] North's Privacy Policy does not come close to satisfying the proper authorization, notice or waiver requirements under HIPAA (FAC, ¶ 118), and did not allow North to share Plaintiff's Sensitive Information with Meta or form the basis of a contractual relationship.

Plaintiff has pleaded that North's Privacy Policy does not excuse its use of pixels on its website. FAC, ¶ 107. To be clear, Plaintiff does not allege she viewed or agreed to any terms and conditions or other waiver language North may assert the Privacy Policy contains. In fact, Plaintiff alleges that the mere existence of the Privacy Policy does not authorize North to share Plaintiff's Sensitive Information. *Id.*, ¶¶ 107, 116. Although the Privacy Policy may mention some limited "personally identifiable information" that North "may collect" (ECF No. 32-2),[25] it does not apply to Plaintiff's highly sensitive PHI, nor does it "mention Pixel or describe its unfettered interception of all of Plaintiff's" website communications and "real-time transmission of those communications to Meta." *Id.*, ¶¶ 115-116.

---

[24] Plaintiff does not allege a contractual relationship with North for use of its Websites that would bar an unjust enrichment claim. Def. Br. at 35 n.13*; see HomeStar Prop. Sols., LLC v. Safeguard Props., LLC*, 370 F. Supp. 3d 1020, 1029-30 (D. Minn. 2019) (recognizing a claim for unjust enrichment fails if there is a written contract that governs the issue at hand).
[25] The Privacy Policy does not indicate that Plaintiff's Sensitive Information will be collected or shared when using North's Websites.

North's motion to dismiss Plaintiff's Unjust Enrichment claim should be denied.

**CONCLUSION**

The Court should deny North's Motion to Dismiss Plaintiff's FAC in its entirety.

Respectfully submitted,

Dated: August 29, 2023

*s/ Brian C. Gudmundson*
Brian C. Gudmundson (MN #0336695)
Jason P. Johnston (MN #0391206)
Michael J. Laird (MN #0398436)
Rachel K. Tack (MN #0399529)
**ZIMMERMAN REED LLP**
1100 IDS Center
80 South 8th Street
Minneapolis, MN 55402
Telephone: (612) 341-0400
brian.gudmundson@zimmreed.com
jason.johnston@zimmreed.com
michael.laird@zimmreed.com
rachel.tack@zimmreed.com

Hart L. Robinovitch (MN #024515)
**ZIMMERMAN REED LLP**
14648 N. Scottsdale Road, Suite 130
Scottsdale, AZ 85254
Telephone: (480) 348-6400
hart.robinovitch@zimmreed.com

Nathan D. Prosser (MN #0329745)
**HELLMUTH & JOHNSON, PLLC**
8050 West 78th Street
Edina, MN 55439
Telephone: (952) 522-4291
nprosser@hjlawfirm.com

*Attorneys for Plaintiff*