**UNITED STATES DISTRICT COURT**
**DISTRICT OF MINNESOTA**

---

JACQUELINE MEKHAIL,

*individually, and on behalf of those similarly situated*,

Plaintiff,

v.

NORTH MEMORIAL HEALTH CARE,

*d/b/a North Memorial Health*,

Defendant.

Case No. 23-cv-00440 (KMM/TNL)

**DEFENDANT'S REPLY IN SUPPORT OF ITS MOTION TO DISMISS PLAINTIFF'S AMENDED COMPLAINT**

---

# TABLE OF CONTENTS

Page

INTRODUCTION ..... 1

ARGUMENT ..... 2

I. The Court should dismiss Plaintiff's Wiretap Claims (Counts I–II). ..... 2
   A. North was a "party" to the communication and did not "procure" Meta's interception ..... 2
   B. North did not unlawfully "use" communications because there was no unlawful interception. ..... 5
   C. North did not intercept or disclose the "contents" of Plaintiff's communications. ..... 5
   D. The crime-tort exception does not apply. ..... 6
II. The Court should dismiss Plaintiff's MCFA claim (Count III). ..... 8
   A. No misrepresentation or omission "in connection with the sale of any merchandise." ..... 8
   B. No intent to deceive ..... 8
   C. No causal nexus. ..... 8
   D. No public benefit. ..... 9
   E. No plausible misrepresentation or omission. ..... 9
III. The Court should dismiss Plaintiff's MDTPA claim (Count IV). ..... 12
   A. No likelihood of future harm or standing. ..... 12
   B. No plausible misrepresentation or omission. ..... 14
IV. The Court should dismiss Plaintiff's Minnesota Health Records Act claim (Count V). ..... 15
V. The Court should dismiss Plaintiff's invasion of privacy claims (Count VI). ..... 16
VI. The Court should dismiss Plaintiff's unjust enrichment claim (Count VII). ..... 19

CONCLUSION ..... 20

# INTRODUCTION

Federal courts in other "Pixel" cases have dismissed claims similar to those Plaintiff asserts here. *See Allen v. Novant Health, Inc.*, No. 22-697, 2023 WL 5486240 (M.D.N.C. Aug. 24, 2023); *Kurowski v. Rush Sys. for Health* ("*Kurowski I*"), No. 22-5380, 2023 WL 2349606 (N.D. Ill. Mar. 3, 2023); *Kurowski v. Rush Sys. for Health* ("*Kurowski II*"), No. 22-5380, 2023 WL 4707184 (N.D. Ill. July 24, 2023); *Cousin v. Sharp Healthcare*, No. 22-2040, 2023 WL 4484441 (S.D. Cal. July 12, 2023).[1]

Further, most, if not all, of Plaintiff's claims hinge on alleged nondisclosure. But the Complaint itself pleads that North's website included a Privacy Policy—which specifically stated that North "may disclose information to third parties"—and the Complaint alleges that North acted consistently with its policy. (FAC ¶ 108 (quoting Privacy Policy).)[2] Thus, Plaintiff was on notice of the alleged conduct she now complains of.

Plaintiff has failed to state claims and, accordingly, the Court should dismiss Plaintiff's Complaint with prejudice.

---

[1] Other similar cases are pending in the District of Minnesota: *In re: Group Health Plan Litig.*, Case No. 23-267 (JWB/DJF); *Okash v. Essentia Health*, Case No. 23-482 (JRT/LIB); *Christensen v. Medical Scanning Consultants*, Case No. 23-2272 (JRT/DTS).

[2] North uses "Opening. Br." to refer to its Opening Brief, Doc. 31; "Resp." to Plaintiff's Response, Doc. 37; "FAC" or "Complaint" to Plaintiff's Amended Complaint, Doc. 22; and "Privacy Policy" to refer to North's Privacy Policy, Doc. 32-2.

## ARGUMENT

### I. The Court should dismiss Plaintiff's Wiretap Claims (Counts I–II).

Plaintiff argues the party exception does not apply because North redirected Plaintiff's communications to Meta and "procured" Meta's interception, and the party exception does not apply because North "used" the communications intercepted by Meta. Plaintiff's arguments fail.

#### A. North was a "party" to the communication and did not "procure" Meta's interception.

A "party to the communication" cannot unlawfully intercept that same communication. *See In re Nickelodeon Consumer Priv. Litig.*, 827 F.3d 262, 274 (3d Cir. 2016) (quoting 18 U.S.C. § 2511(d)(2)); *see also* (Opening. Br. 6-8)[3] (citing authorities). Plaintiff's claims are based on her direct communications with North's website making North a party to the communication. The party exception applies, and North is exempt from liability under the Wiretap Acts. *See, e.g., Kurowski II*, 2023 WL 4707184, at *2, *4 (granting motion to dismiss federal wiretap claim); *Kurowski I*, 2023 WL 2349606, at *3-5 (same); *Allen*, 2023 WL 5486240, at *4 (same).

Plaintiff now argues that the party exception does not apply because North was not a "party" to the communications because it caused the "redirection" of information to Meta. (Resp. Br. 11–12.) Even if the Complaint had so pleaded, Plaintiff's cases offer no support. *In re Facebook, Inc. Internet Tracking Litig.*, 956 F.3d 589, 596, 606–08 (9th Cir. 2020), addressed the party exception for Facebook's tracking activities on third-party websites—

[3] Citations to the docket reference the page numbers in the document's footer.

not its own. *Kurowski I* addressed *Facebook* and held "[t]he question here does not turn on the contemporaneousness of the alleged interception but rather, as the Third Circuit determined [in *Google Cookie* and *Nickelodeon*], who the intended recipient of the communication was." 2023 WL 2349606, at *4. Plaintiff's Complaint pleads herself out of *Facebook* by alleging she intended to communicate with North, making North the intended recipient; therefore, the party exception applies. *See Kurowski I*, 2023 WL 2349606, at *4–5 (concluding "Rush—and not Facebook, Google, or Bidtellect—was the intended recipient of the allegedly intercepted communications" and applying party exception); *Pena v. GameStop, Inc.*, 2023 WL 3170047, at *4 (S.D. Cal. Apr. 27, 2023) (distinguishing *Facebook* on same basis). *United States v. Szymuszkiewicz*, 622 F.3d 701 (7th Cir. 2010) and *In re Pharmatrak, Inc. Privacy Litig.*, 329 F.3d 9 (1st Cir. 2003) also do not support Plaintiff. Both cases "involved whether an interception occurred at all, not whether the defendants could be considered a party to the intercepted communication." *Kurowski I*, 2023 WL 2349606, at *3–4 (distinguishing cases and *Facebook's* reliance).

Plaintiff now argues that North can be held liable under the Wiretap Acts for "procuring" Meta to intercept Plaintiff's communications. (Resp. Br. 12.) Plaintiff's Complaint failed to plead any "procurement" violation.[4] Even if it had, Plaintiff's claim

---

[4] The Complaint asserted a count under 18 U.S.C. § 2511(1), which includes both interception and procurement; however, the allegations in the Complaint pointed to "interception" as the alleged basis for the count. To avoid the party exception (which has recently resulted in dismissal of interception claims in other Pixel matters), Plaintiff now argues North "procured" Meta's interception. To the extent the Complaint can be read to assert a procurement claim, the Complaint failed to adequately notify North of the procurement claims in violation of Federal Rule of Civil Procedure 8. Accordingly, no

fails because there is no civil claim for procurement under the Wiretap Acts. *See, e.g., Kirch v. Embarq Mgmt. Co.*, 702 F.3d 1245, 1246–47 (10th Cir. 2012) (holding that there is no civil ECPA claim for "procuring" or "aiding and abetting" an interception); *Peavy v. WFAA-TV, Inc.*, 221 F.3d 158, 168–69 (5th Cir. 2000) (same); *Council on Am.-Islamic Rels. Action Network, Inc. v. Gaubatz*, 891 F. Supp. 2d 13, 23–24 (D.D.C. 2012) (same); *Shefts v. Petrakis*, 954 F.Supp.2d 769, 774–77 (C.D. Ill. 2013) (same). Although Plaintiff cites three district court decisions regarding procurement (from other jurisdictions), none involved Pixels, and all the Circuit Courts of Appeal who have addressed "procurement" claims have held that no private cause of action remains. *Compare Lonegan v. Hasty*, 436 F.Supp.2d 419, 428 (E.D.N.Y.2006); *Boseovski v. McCloud Healthcare Clinic, Inc.*, No. 2:16-CV-2491-DMC, 2020 WL 68578, at *6 (E.D. Cal. Jan. 7, 2020); *Valentine v. WideOpen W. Fin., LLC*, 288 F.R.D. 407, 412 (N.D. Ill. 2012); *with Kirch*, 702 F.3d at 1246–47; *Peavy*, 221 F.3d at 168–69.

Regardless, if North installed Pixel as Plaintiff alleges, North consented to the disclosure to Meta—another complete defense to wiretap liability. *See* 18 U.S.C. § 2511(2)(d); Minn. Stat. § 626A.02, subd. 2(d).

---

waiver occurred, and dismissal is appropriate. *Murrin v. Fischer*, No. 07-CV-1295, 2008 WL 540857, at *1 (D. Minn. Feb. 25, 2008) (dismissing complaint under Rule 8 where it was "convoluted and confusing—an almost impenetrable stew of advocacy, suspicion and conjecture.") (cleaned up).

### B. North did not unlawfully "use" communications because there was no unlawful interception.

Plaintiff argues that North violated the Wiretap Acts by "using" the contents of Meta's unlawful interception for its own commercial benefit. (Resp. Br. 13–20.) Plaintiff asserts the "use provision" falls outside the party exception, but cites ***no*** supporting authority.

Under 18 U.S.C. § 2511(1)(d), liability for "using" a communication arises if that communication "was obtained through [an] interception . . . in violation of this subsection"—i.e., a party cannot unlawfully "use" a communication that was not unlawfully intercepted to begin with. *See Noel v. Hall*, 568 F.3d 743, 751–52 (9th Cir. 2009) (where conversations were not recorded unlawfully, plaintiff could not prevail on claim for unlawful use). Because North was a party to the communications, there was no unlawful interception, and consequently no unlawful use.

Plaintiff asserts North procured Meta to intercept the communications and used the "fruits" of the (Resp. Br. 17,19.) But North consented to the communication's disclosure, making Meta's alleged acquisition lawful. Plaintiff further argues that only Plaintiff, not North, could have consented to the release of her "protected health information." (Resp. Br. 15–16.) However, Plaintiff does not plausibly allege that North installed Pixel in her patient portal, and Plaintiff's web-browsing history is not "PHI." *See infra* §§ IV–V.

### C. North did not intercept or disclose the "contents" of Plaintiff's communications.

Plaintiff further fails to allege the "contents" of her communications were disclosed to Meta to sustain her wiretap claims. "'[C]ontents' refers to the intended message

conveyed by the communication"—not "record information regarding the characteristics of the message[.]" *In re Zynga Priv. Litig.*, 750 F.3d 1098, 1106 (9th Cir. 2014).

The alleged disclosures of Plaintiff's URLs to the webpages visited on North's website depict "record" information, not contents. In *Cousin v. Sharp Healthcare*, another Pixel case, the court relied on *Zynga* and dismissed plaintiffs' California wiretap claim, holding that plaintiffs did "not provide sufficient factual support to plausibly claim their content was intercepted by Meta as a result of installing Meta Pixel on Sharp's webpage." No. 22-CV-2040-MMA, 2023 WL 4484441, at *9 (S.D. Cal. July 12, 2023). In *Hammerling v. Google LLC*, the court held that plaintiffs failed to allege that Google intercepted the "contents" of any communication where, in part, the alleged data collection only allowed Google to make "'educated guesses' about a user's traits and habits, much like [an] IP address[.]" 615 F. Supp. 3d 1069, 1093 (N.D. Cal. 2022) (granting motion to dismiss CIPA claim).

**D. The crime-tort exception does not apply.**

Plaintiff asserts that North violated HIPAA and invaded her privacy as basis for the crime-tort exception. Even if the Complaint had adequately pleaded claims for violation of HIPAA or invasion of privacy—it did not—the crime-tort exception would still not be applicable here, because it applies only where the illegal act is "***independent*** of the intentional act of recording." *In re Google Inc. Cookie Placement Consumer Priv. Litig.*, 806 F.3d 125, 145 (3d Cir. 2015) (quoting *Caro v. Weintraub*, 618 F.3d 94, 100 (2d Cir. 2010)) (emphasis added); *see also Caro*, 618 F.3d at 101–01 (rejecting intrusion claim as an independent tort under the exception); *Kurowski II*, 2023 WL 4707184, at *2–4

(rejecting crime-tort exception); *Kurowski I*, 2023 WL 2349606, at *4–5 (same). Here, the alleged crime/tort is inseparable from the wiretap itself, not a "secondary" act to the acquisition of the communication, and should be dismissed.

Plaintiff's cases are distinguishable. In *Planned Parenthood v. Center for Medical Progress*, the district court found sufficient crime-tort allegations because the wiretapping furthered their RICO conspiracy, making the wiretap a piece of a broader criminal plan. 214 F.Supp.3d 808, 827–28 (N.D. Cal. 2016); *Brown v. Google LLC*, 525 F.Supp.3d 1049, 1067 (N.D. Cal. 2021) (relying on *Planned Parenthood* to analyze crime-tort exception). On appeal, the Ninth Circuit rejected the application of the crime-tort exception, holding that there was no purpose independent of the recording—"Planned Parenthood's argument is circular: according to Planned Parenthood, the civil RICO conspiracy is furthered by the recordings, and the recordings themselves further the ongoing civil RICO conspiracy." *Planned Parenthood v. Newman*, 51 F.4th 1125, 1136 (9th Cir. 2022).

Plaintiff alleges that North committed torts (Resp. Br. 20–28), but fails to allege that North's ***purpose*** (i.e., primary motivation) for installing Pixel was to violate HIPAA and invade Plaintiff's privacy. *See In re DoubleClick Inc. Privacy Litig.*, 154 F.Supp.2d 497, 518 (S.D.N.Y. 2001). A commercial purpose does not trigger the crime-tort exception. *See Capitol Record Inc. v. Thomas-Rasset*, 2009 WL 1664468, at *4 (D. Minn. June 11, 2009) (crime-tort exception is aimed at "evil" and "insidious" purposes "such as blackmail, stealing business secrets"); *United States v. Jiau*, 734 F.3d 147, 152 (2d Cir. 2013) (confining exception to intent to harm or injury the recorded party, "such as to blackmail, threaten, or publicly embarrass").

## II. The Court should dismiss Plaintiff's MCFA claim (Count III).

### A. No misrepresentation or omission "in connection with the sale of any merchandise."

An MCFA misrepresentation or omission must be "in connection with the sale of any merchandise." Minn. Stat. § 325F.69, subd. 1; *accord Grady v. Progressive Direct Ins. Co.*, 643 F.Supp.3d 929, 935 (D. Minn. 2022) ("If a claim asserts fraud that is not connected to the sale of merchandise, [the MCFA] does not apply."). North raised this issue in its Opening Brief, p.18; Plaintiff offered no response. Because Plaintiff failed to allege this element, this claim fails. *See Grady*, 643 F.Supp.3d at 935–37.

### B. No intent to deceive.

To violate the MCFA, plaintiffs must "plead with particularity that [the defendant] *intended* to defraud them." *Pickford v. Kemp & Assocs., Inc.*, No. 19-997, 2019 WL 3537219, at *3 (D. Minn. Aug. 2, 2019) (emphasis in original) (granting motion to dismiss; citing *Ly v. Nystrom*, 615 N.W.2d 302, 310 (Minn. 2000)). Although Plaintiff argues she need not allege an "intentional misrepresentation," under *Ly*, Plaintiff still must allege that North "intended to deceive." 615 N.W.2d at 310. Because the Complaint failed to plead with particularity that North intended to defraud, this claim fails.

### C. No causal nexus.

An MCFA claim requires a "*causal nexus*" between the defendant's wrongful conduct and damages that includes a "*reliance component*." *In re St. Jude Med., Inc.*, 522 F.3d 836, 839 (8th Cir. 2008) (emphasis in original) (quotation omitted). Plaintiff argues that "individual reliance is not required." (Resp. Br. 28 n.14.) But "causation is still a necessary element . . . and proof of a reliance component is still required" for an MCFA

claim. *In re St. Jude Med., Inc.*, 522 F.3d at 839. Because the Complaint does not allege ***any*** causal nexus or reliance, this claim fails.

### D. No public benefit.

Plaintiff does not allege a public benefit. Plaintiff argues, without citing to authority, that her case will have "a substantial impact on the public." (Resp. Br. 34.) Any description of the supposed benefit only appears in her Response, not in her Complaint. Plaintiff lacks standing for any injunctive relief and she may only seek damages for past harms. Claims focused on damages is a strong factor against a public benefit. *See Gisairo v. Lenovo (United States) Inc.*, 516 F.Supp.3d 880, 889–90 (D. Minn. 2021).

### E. No plausible misrepresentation or omission.

Plaintiff failed to plead any plausible misrepresentation or omission with particularity.

#### 1. No affirmative misrepresentation.

Plaintiff attempts to distinguish *Bernstein* by arguing that the alleged representations here are more specific than those in *Bernstein*. In *Bernstein*, the court dismissed an MCFA claim where the alleged statements failed to reference "any particular standard" or make "any specific promise." *See Bernstein v. Extendicare Health Servs., Inc.* ("*Bernstein I*"), 607 F.Supp.2d 1027, 1032 (D. Minn. 2009); *accord Bernstein v. Extendicare Health Servs., Inc.* ("*Bernstein II*") 653 F.Supp.2d 939, 943 n.3 (D. Minn. 2009). Here, as in *Bernstein*, North's statements do not reference "any particular standard" or make "any specific promise." And like *Bernstein*, North is obligated to follow a "comprehensive regulatory scheme" regarding its services and information protected by

privacy laws. *See Bernstein I*, 607 F.Supp.2d at 1032. Therefore, North's "recitation of that fact does not create a promise independent of the legal obligation already imposed." *Id.* This comprehensive scheme and obligations applies and is not altered regardless of North's representations. Moreover, Plaintiff cites no authority, including in *Bernstein*, supporting her narrower subset or altered legal obligations theories.

**2. No plausible omission or special circumstance.**

Plaintiff contends that North omitted that it may share information with Meta. But the Complaint alleges that North disclosed that it "may disclose information to third parties." (FAC ¶ 108.) Because the Complaint alleges that North disclosed it would share information, sharing information with a third party, including Meta, is not a material omission.

Plaintiff also contends that North omitted that it received a financial benefit from the alleged disclosure. However, the Complaint does not allege that North must disclose any financial benefit. *See Hawse v. Page*, 7 F.4th 685, 691 (a brief cannot amend or supplement complaint). Even if the Complaint had plausibly alleged that North received a financial benefit and that North improperly failed to disclose it,[5] the Complaint does not plausibly allege a financial benefit is material.

Plaintiff's omission claim also fails because the Complaint failed to plausibly allege any of the three "special circumstances" recognized by Minnesota law. *See Graphic*

[5] North's Privacy Policy states that it "may share or use your information for any other legally permitted business purpose upon our sole discretion." (Privacy Policy at 2.)

*Commc'ns Loc. 1B Health & Welfare Fund A v. CVS Caremark Corp.*, 850 N.W.2d 682, 696 (Minn. 2014). Plaintiff claims she alleged all three circumstances by arguing for each that North violated HIPAA and illegally disclosed information, thereby establishing an MCFA special circumstance. Even if Plaintiff plausibly alleged North violated the law (she does not), this does not establish a special circumstance. HIPAA has no private right of action. *See Adams v. Eureka Fire Prot. Dist.*, 352 F.App'x 137, 138–39 (8th Cir. 2009). Plaintiff also cites no cases that HIPAA—or any other law—gives rise to an MCFA claim or any special circumstance.

Her arguments also fail for each circumstance specifically. First, HIPAA does not create a "confidential or fiduciary relationship." *See id.*; *Reed v. Highlands of Edinburgh Sixth Ass'n*, No. A19-1345, 2020 WL 3042109, at *7 (Minn. Ct. App. June 8, 2020) (refusing to read fiduciary duties into a statute that does not expressly create them). Second, for the specialized knowledge circumstance, Plaintiff does not dispute that she had access to the information because the Privacy Policy disclosed North's practices and she could discover Pixel's existence. (*See* FAC ¶¶ 67–71.) The Minnesota Supreme Court has rejected Plaintiff's theory of what information a defendant must allegedly know, holding that actual knowledge of some facts alone is insufficient. *See Richfield Bank & Tr. Co. v. Sjogren*, 244 N.W.2d 648, 367–68 (Minn. 1976). Third, although Plaintiff contends she alleged North made a partial but insufficient and misleading statement, Plaintiff admits North stated that it "may disclose information to third parties." (FAC ¶ 108.)

## III. The Court should dismiss Plaintiff's MDTPA claim (Count IV).

### A. No likelihood of future harm or standing.

Plaintiff does not dispute that her past use of North's website cannot support this claim. The alleged harm—Plaintiff's information was shared with Meta—occurred in the past and cannot be remedied by an injunction. *See Barclay v. Icon Health & Fitness, Inc.*, No. 19-2970, 2022 WL 486999, at *2 (D. Minn. Feb. 17, 2022) ("If Plaintiffs were damaged by those misrepresentations, that occurred . . . in the past[.]").

Plaintiff cites *Perry v. Bay & Bay Transportation Services*, No. 22-973, 2023 WL 171885 (D. Minn. Jan. 12, 2023) to support her position that past collection could create future harm. *Perry* does not support Plaintiff's arguments; it does not involve the MDTPA. *See id.* Moreover, the plaintiff in *Perry* sought an order for credit monitoring that would specifically help him in the future. *Id.* at *3–4. In contrast, an injunction here would not help Plaintiff.

Plaintiff focuses on putative class members. Plaintiff must allege ***she*** is likely to harmed, not some other class member. *See* Minn. Stat. § 325D.45, subd. 1 (cause of action only for "A person likely to damaged"); *Frank v. Gaos*, 139 S.Ct. 1041, 1046 (2019) (named plaintiff must have standing).

Regarding future interactions, Plaintiff's Response underscores her allegations' speculative nature: "It is ***unknown*** whether Plaintiff . . . ***may*** be required to use North's services (for example, if taken to the emergency room);" "she ***may*** return;" and "she would be encouraged to use the Websites." (Resp. Br. 40 (emphasis added).) Such hypothetical possibilities do not allege a likelihood of future harm or establish standing for the only

relief available here. *See Tusen v. M&T Bank*, No. 16-4339, 2017 WL 4990524, at *4 (D. Minn. Oct. 31, 2017) (MDPTA); *Lujan v. Defs. of Wildlife*, 504 U.S. 555, 564 & n.2 (1992) (standing).

Plaintiff ignores that courts commonly dismiss MDTPA claims where plaintiffs are on notice of defendants' practices and so cannot be deceived or harmed, like Plaintiff. *E.g.*, *Jaskulske v. State Farm Mut. Auto. Ins. Co.*, No. 14-869, 2014 WL 5530758, at *6 (D. Minn. Nov. 3, 2014) (collecting cases).

Plaintiff's attempt to rely on *Kurowski I* fails. (*See* Resp. Br. 40 n.19.) First, Plaintiff's allegations are different because the *Kurkowski* plaintiff is a ***current*** patient who allegedly must use the website. *Kurowski I*, 2023 WL 2349606, at *8. Second, the court has now dismissed the claim Plaintiff references. *Kurkowski II*, 2023 WL 4707184, at *7–8.

Plaintiff's other cases do not support her. The no-set-of-facts standard applied in *Masterson Personnel, Inc. v. McClatchy Co.*, No. 05-1274, 2005 WL 3132349, at *6 (D. Minn. Nov. 22, 2005) (quoting *Conley v. Gibson*, 355 U.S. 41 (1957), was abrogated. *See Bell Atlantic Corp. v. Twombly*, 550 U.S. 544, 561–63 (2007) (abrogating *Conley*). Her other cases are readily distinguishable. *See, e.g.*, *In re: Netgain Tech., LLC*, No. 21-1210, 2022 WL 1810606, at *16–17 (D. Minn. June 2, 2022) (not an MDTPA case and risk that plaintiffs' specific data is inadequately secured in the present).

**B. No plausible misrepresentation or omission.**

Plaintiff's MDTPA claim also fails because—like her MCFA claim—she failed to allege a plausible misrepresentation or material omission and a required omission special circumstance.

Plaintiff appears to have abandoned any misrepresentation theory. (*See* Resp. Br. 35 ("Plaintiff's allegations center on what North did *not* say" (emphasis in original)).) Even if not abandoned, it would fail for the same reasons as the MCFA claim. (*See supra* § II(E)(i); Opening. Br. 20.)

Regarding her omission theory—as with her MCFA claim—Plaintiff failed to allege a special circumstance creating a disclosure duty. Plaintiff relies solely on her MCFA argument. Her argument fails. (*See supra* § II(E)(ii); *see also* Opening. Br. 21.) Because North had no disclosure duty, Plaintiff's omission theory cannot support her MDTPA claim.

Even if she alleged a special circumstance triggering a duty to disclose, she failed to allege a plausible material omission. *See Song v. Champion Petfoods USA, Inc.*, No. 18-3205, 2020 WL 7624861, at *11 & n.15 (D. Minn. Dec. 22, 2020) (requiring materiality for an actionable omission), *aff'd*, 27 F.4th 1339 (8th Cir. 2022) Plaintiff contends the omission is that North shares information with Meta via Pixel. (Resp. Br. 37–38.) As Plaintiff acknowledges, North disclosed that it "may disclose information to third parties." (FAC ¶ 108.) The Complaint alleges North acted in accordance with this by sharing Plaintiff's public-website browsing with the third-party Meta. Plaintiff does not argue that

"Meta" and "Pixel"—the only alleged omission—were material. The Complaint does not plausibly allege an MDTPA claim.

## IV. The Court should dismiss Plaintiff's Minnesota Health Records Act claim (Count V).

Minnesota law is clear: a "health record" does not extend to documents or records where a person's health condition or patient status is "inferred" or "deduced." *See Furlow v. Madonna Summit of Byron*, No. A19-0987, 2020 WL 413356, at *2–3 (Minn. Ct. App. Jan. 27, 2020); *Rhoades v. Lourey*, No. A18-1120, 2019 WL 1006804, at *1–2 (Minn. Ct. App. Mar. 4, 2019).

Plaintiff argues that the browsing metadata reflecting searches for doctors and treatment research amounts to a health record. (Resp. Br. 43.) But Plaintiff's browsing data from North's public website does not reveal her past, present, or future physical or mental health as a patient. Even if browsing data could give rise to an "inference" regarding Plaintiff's health condition, "inferences" do not constitute "health records" under the MHRA. *See Furlow*, 2020 WL 413356, at *2–3; *see also In re Cattle Antitrust Litig.*, No. 19-1129, 2021 WL 7757881, at *14 (D. Minn. Sept. 14, 2021) (quoting *Ashley Cnty., Ark. v. Pfizer, Inc.*, 552 F.3d 659, 673 (8th Cir. 2009) ("[I]t 'is not the role of a federal court to expand state law in ways not foreshadowed by state precedent.'").[6]

[6] *See Kurowski II*, 2023 WL 4707184, at *3-4 (concluding under near identical allegations that the alleged individually identifiable health information was mere metadata, not protected information); *Cousin v. Sharp Healthcare*, No. 22-CV-2040-MMA, 2023 WL 4484441, at *7–8 (S.D. Cal. July 12, 2023) (dismissing California's Confidentiality of Medical Information Act claim for failure to allege that medical information was disclosed in similar Pixel case).

Plaintiff's citation to *Doe v. Regents of Univ. of California* is unavailing. In that case, the plaintiff alleged that the Pixel was in the patient portal. No. 23-CV-00598, 2023 WL 3316766, at *2 (N.D. Cal. May 8, 2023) (the plaintiff allegedly "entered data relating to her heart issues and high blood pressure in MyChart [the patient portal] and later received advertisements on Facebook, including at least one advertisement relating to high blood pressure medication."). Here, the Complaint does not plausibly allege (nor could it), that the Pixel was in the patient portal.

## V. The Court should dismiss Plaintiff's invasion of privacy claims (Count VI).

Plaintiff's invasion of privacy count alleges claims for publication of private facts and intrusion upon seclusion. Plaintiff abandoned her publication claim by failing to oppose any of North's arguments for dismissal of the same. *See Brown v. Ludeman*, No. 11-2859, 2023 WL 4399079, at *5 (D. Minn. July 7, 2023), *R.&R. adopted,* 2023 WL 5703194, at *3 (D. Minn. Sept. 5, 2023) (finding plaintiff waived arguments against motion to dismiss by failing to directly respond). Because Plaintiff cannot plausibly allege the essential elements of an "intrusion" that is "highly offensive, Count VI must be dismissed.

North did not "intrude" into Plaintiff's private affairs. Plaintiff argues that even if she voluntarily provided her information to North, "she did not voluntarily subject her information to tracking and collection by Pixel, or disclosure to Meta." (Resp. Br. 48.) This argument lacks merit.

First, as alleged in the Complaint, North's Privacy Policy notifies Plaintiff of the conduct she condemns. (Privacy Policy at 1–2 (North may gather "personally identifiable

information" from its users and may "disclose information to third-parties" who act on its behalf).)

Second, courts addressing similar Pixel cases have dismissed intrusion claims where the plaintiffs voluntarily provided their information to a health care provider. *See Kuroski II*, 2023 WL 4707184, at *8 ("Rush cannot plausibly be considered to have intruded on, intercepted, or 'bugged' private communications that it was always the intended recipient of."); *Allen*, 2023 WL 5486240, at *2 (dismissing plaintiffs' intrusion claim where they "voluntarily provided their information directly to Novant" and thus failed to allege "an intrusion or unauthorized prying.")[7] Plaintiff argues that her wiretap claims give rise to her intrusion claim. But as noted above, Plaintiff has failed to plausibly plead any wiretap claim and therefore has no basis for her intrusion claim.

Third, Plaintiff continues to base her intrusion claim on North's alleged "disclosure to Meta." (Resp. Br. 48; Opening. Br. 30-31.) A plaintiff "fails to state a claim for invaded seclusion if the harm flows from publication rather than the intrusion." *Thomas v. Pearl*, 998 F.2d 447, 452 (7th Cir. 1993); *see Kurowski II*, 2023 WL 4707184, at *8 (dismissing intrusion claim where harm "flow[ed] from the alleged disclosure of Kurowski's private health information, not from Rush's deployment of someone else's source code.").

Plaintiff asserts North's tracking and disclosing of "Sensitive Information" amounts to "egregious" conduct. (Resp. Br. 25.) "Sensitive Information" is not a legal term, and the

[7] Plaintiff incorrectly argues that *C.L.D. v. Wal-Mart, Inc.*, 79 F. Supp. 2d 1080, 1083 n.1 (D. Minn. 1999) only concerns publication of private facts; in fact, it also addresses intrusion. *See id*.

Complaint does not provide a definition. Instead, Plaintiff alleges a laundry list of general information that could have been disclosed; she does not plausibly allege that information of *hers* was disclosed. This is insufficient under *Twombly/Iqbal* and certainly does not rise to the level of "highly offensive" conduct. *See Kurowski II*, 2023 WL 4707184, at *3 ("Kurowski cannot reasonably expect to bring a lawsuit related to the invasion of her medical privacy and completely evade revealing what it is that she alleges Rush disclosed to third parties."); *Cousin*, 2023 WL 4484441, at *3 ("Plaintiffs provide an example of a search by a hypothetical patient, they fail to state what information they each provided to Defendant, via their browsing activity, that was subsequently disclosed to Meta."). Plaintiff also does not plausibly allege that North embedded Pixel in her patient portal. *See Cousin*, 2023 WL 4484441, at *3 (stating that plaintiffs "fail to allege that these activities took place on a page of Sharp's website where Meta Pixel was embedded."); *Hammerling*, 615 F. Supp. 3d at 1091 (finding "[t]he lack of details as to how Google could attain the intimate information" rendered plaintiff's highly offensive allegations implausible).

Even assuming Plaintiff had plausibly alleged what "Sensitive Information" was disclosed, North's use of Pixel on its website for "its own gain" does not amount to "highly offensive" misconduct to support an intrusion upon seclusion claim. (Resp. Br. 27.) In *Cousin*, another Pixel case, the court held that plaintiffs could not maintain their claims on the theory that "[d]efendant's sharing of their browsing activity, collected on its publicly facing website, is a disclosure of their sensitive medical information." 2023 WL 4484441, at *3. *Cousin* further concluded that "none of [the] alleged disclosures made during routine browsing activity rise[s] to the level of 'highly offensive.'" *Id.* at *6 (granting motion to

dismiss privacy claim based on browsing activity); *see also Hammerling*, 615 F.Supp.3d at 1090 ("data collection and disclosure to third parties" is "routine commercial behavior" and is not "highly offensive") (collecting supporting cases).

None of the cases cited by Plaintiff support her argument that the alleged disclosure was "highly offensive." (Resp. Br. 25–27.) *Mallak v. Aitkin County* dismissed the plaintiff's intrusion claim. 9 F.Supp.3d 1046, 1064–65 (D. Minn. 2014). *In re Facebook*, 956 F.3d at 596, involved Facebook collecting users' data across third-party websites after users logged out of Facebook. *Hazel v. Prudential Financial, Inc.* involved the collection of plaintiffs' medical history on defendant's webform, not just browsing data. No. 22-CV-07465, 2023 WL 3933073, at *5 (N.D. Cal. June 9, 2023). *In re Google Assistant Privacy Litig.*, 457 F.Supp.3d 797, 830 (N.D. Cal. 2020), addressed disclosures of actual conversations. And in *Doe v. Beard*, a prisoner's medical file was disclosed revealing his HIV status—precisely the type of "highly offensive" conduct that Plaintiff has ***not*** alleged here. 63 F.Supp.3d 1159, 1162, 1170 (C.D. Cal. 2014).

## VI. The Court should dismiss Plaintiff's unjust enrichment claim (Count VII).

Plaintiff must allege an uncompensated benefit for her unjust enrichment claim. *See Amann v. Allianz Income Mgmt. Servs., Inc.*, No. A09-1891, 2010 WL 3220061, at *5 (Minn. Ct. App. Aug. 17, 2010). Plaintiff does not meaningfully dispute that the Complaint acknowledges she benefited. (*See* FAC ¶ 8 (acknowledging Pixel was used to improve patient services).) Instead, she repeats the conclusory allegation that she was uncompensated. (Resp. Br. 52 ("failed to compensate").) This conclusory statement—refuted by the Complaint—does not suffice. Neither of the cases Plaintiff cites removes the

requirement to allege an uncompensated benefit. *See Herlache v. Rucks*, 990 N.W.2d 443 (Minn. 2023); *Georgopolis v. George*, 54 N.W.2d 137 (Minn. 1952). Because Plaintiff benefited, her claim fails.

Plaintiff does not dispute that any "plausibly alleged exchange" was the provision of healthcare services for payment. (*See* Resp. Br. 52 n.23.) Here, as in *Hall v. Centerspace LP*, No. 22-2028, 2023 WL 3435100, at *7 (D. Minn. May 12, 2023), Plaintiff does not allege that those who provide data pay more for North's services than those who do not.

Finally, Plaintiff does not dispute that North acted consistently with its Privacy Policy, nor explain how this can be unjust. *See Georgopolis*, 54 N.W.2d at 143 (refusing to impose an equitable remedy where the defendant disclosed the relevant information). Instead, she asserts the Privacy Policy is insufficient under HIPAA and does not fully explain North's practices. The Privacy Policy explains that North may share information with third-parties, and Plaintiff cites no case holding that Pixel is unlawful.

**CONCLUSION**

The Court should grant North's Motion to Dismiss Plaintiff's Amended Complaint.

Dated: September 26, 2023

*s/ Nicole M. Moen*
Nicole M. Moen (#0329435)
Geoffrey Koslig (#0402717)
Victoria M. Manfredonia (#0504171)
**FREDRIKSON & BYRON, P.A.**
60 South Sixth Street, Suite 1500
Minneapolis, MN 55402-4400
Telephone: 612.492.7000
Facsimile: 612.492.7077
nmoen@fredlaw.com
gkoslig@fredlaw.com

vmanfredonia@fredlaw.com

***Attorneys for Defendant***
***North Memorial Health Care***