UNITED STATES DISTRICT COURT
DISTRICT OF MINNESOTA

| | |
|---|---|
| Heidi Kaliher and Tracey Knight, individually, and on behalf of those similarly situated, | Case No. 23-cv-440 (KMM/DLM) |
| Plaintiffs, | **ORDER ON DEFENDANT'S MOTION TO COMPEL DISCOVERY** |
| v. | |
| North Memorial Health Care, d/b/a North Memorial Health, | |
| Defendant. | |

This matter came before the undersigned pursuant to Defendant's Motion to Compel Production of Documents and Responses to Interrogatories. (Docs. 122 (Motion), 132 (Memorandum in Support.) In its motion, Defendant sought complete responses to nine interrogatories and six requests for production of documents. (*See generally id.*) Plaintiffs oppose the motion. (Doc. 136.) The Court heard oral argument on Defendant's motion on October 10, 2025. Having considered the arguments of the parties, **GRANTS IN PART AND DENIES IN PART** Defendant's motion.[1]

---

[1] At the hearing, Defendant confirmed that it was satisfied with Plaintiffs' supplemental responses to Interrogatory No. 9 and Request for Production of Documents No. 9. As such, this Order does not address those matters.

1

## BACKGROUND

This is a case about privacy rights and internet tracking. Plaintiffs Gregg Lurie, Heidi Kaliher, and Tracy Knight (collectively "Plaintiffs"), filed suit against Defendant North Memorial Health Care ("North") for violations of state and federal law stemming from North's alleged harvesting and sharing of Plaintiffs' sensitive medical information with third parties. (*See generally* Doc. 87 (Second Amended Complaint).) Plaintiffs are current and former patients at North, and each interacted with North's websites for purposes of researching health information, medical conditions, and treatments. (Doc. 87 ¶ 6, Doc. 132 at 4.) Each Plaintiff claims to have subsequently received targeted advertisements related to these searches and interactions. (*See, e.g.,* Doc. 87 ¶¶ 25, 33, 41.) Plaintiffs allege that North secretly tracked their online activity on North's websites—both its general webpage and its password-protected patient portal—through an embedded software developed by Meta Platform, Inc., known as a pixel ("Pixel"). (Doc. 87 ¶¶ 53-93.) The tracking data was then, allegedly, collated by Meta to create targeted advertising deployed on Plaintiffs' social media accounts. (Doc. 87 ¶ 5, 7-8, 71-74.)

Plaintiffs filed their original complaint in February of 2023. (Doc. 1.) Defendant North moved to dismiss Plaintiffs' claims in full. (Doc. 15.) That motion was granted as to two counts and denied as to five others. (Doc. 54.) Plaintiffs then filed their Second Amended Complaint setting out their remaining claims: Violations of the Electronic Communications Privacy Act; Violations of the Minnesota Wiretap Act; Violations of Minnesota Uniform Deceptive Trade Practices Act; Violations of Minnesota Health Records Act; and Unjust Enrichment. (Doc. 87 at 6-7.) This matter is now in discovery,

with North's motion focused on areas where Plaintiffs have failed to fully respond to North's discovery requests.

## ANALYSIS

Federal Rule of Civil Procedure 26 entitles parties to liberal discovery of "any nonprivileged matter that is relevant to any party's claim or defense and proportional to the needs of the case[.]" Fed. R. Civ. P. 26(b)(1). Courts construe the scope of Rule 26(b)(1) broadly, *see Oppenheimer Fund, Inc. v. Sanders*, 437 U.S. 340, 351 (1978) (citing *Hickman v. Taylor*, 329 U.S. 495, 501 (1947)), but the scope of discovery includes only what is relevant to the actual claims or defenses that are at issue, *see Sherman v. Sheffield Fin., LLC*, 338 F.R.D. 247, 252 (D. Minn. 2021). And it is the party that seeks discovery who must make a threshold showing that the information sought is relevant to the claims or defenses in the case. *Sherman*, 338 F.R.D. at 252 (citing *Hofer v. Mack Trucks, Inc.*, 981 F.2d 377, 380 (8th Cir. 1992)). If that occurs, then "the party resisting production bears the burden of establishing lack of relevancy or undue burden." *Inline Packaging, LLC v. Graphic Packaging Int'l, Inc.*, No. 15-cv-3183 (ADM/LIB), 2016 WL 6997113, at *7 (D. Minn. Sept. 6, 2016) (quoting *St. Paul Reinsurance Co. v. Commercial Fin. Corp.*, 198 F.R.D. 508, 511 (N.D. Iowa 2000)).

Beyond being relevant, Rule 26 requires that information sought in discovery also be "proportional to the needs of the case[.]" Fed. R. Civ. P. 26(b)(1). Factors important to a court's proportionality analysis include "the importance of the issues at stake in the action, the amount in controversy, the parties' relative access to relevant information, the parties' resources, the importance of the discovery in resolving the issues, and whether the

burden or expense of the proposed discovery outweighs its likely benefit." *Id.* A court may "find that a request on its face is not proportional to the needs of the case, given the relevance of the requested discovery." *Stan Koch & Sons Trucking, Inc. v. Am. Interstate Ins. Co.*, No. 18-cv-2945 (PJS/HB), 2020 WL 2111349, at *3 (D. Minn. May 4, 2020) (quoting *Klein v. Affiliated Grp., Inc.*, No. 18-cv-0949 (DWF/ECW), 2019 WL 1307884, at *7 n.9 (D. Minn. Mar. 22, 2019)).

Naturally, a party cannot be compelled to produce documents not in its possession. *WRB, Inc. v. DAMM, LLC*, No. 21-cv-1899 (NEB/TNL), 2022 WL 17844323, at *2 (D. Minn. Dec. 22, 2022); *Edeh v. Equifax Info. Servs., LLC*, 291 F.R.D. 330, 337 (D. Minn. 2013) (where a party "maintains that it does not have the documents requested," "it cannot be compelled to produce them"). A party's assertion that it has fully produced discoverable materials must be accepted at face value by the Court. *Bombardier Recreational Prods., Inc., v. Arctic Cat, Inc.*, No. 12-cv-2706 (MJD/LIB), 2014 WL 5685463, at *7 (D. Minn. Sept. 24, 2014) (citing *Onwuka v. Federal Express Corp.*, 18 F.R.D. 508, 515 n.2 (D. Minn. 1997)).

Before discussing the disputed discovery requests individually, a few matters merit general discussion. An issue common to each dispute is the scope of North's requests. North represents that "Plaintiffs appear to suggest that their personal information could *only* have been collected and disclosed because of their use of North's websites." (Doc. 132 at 8.) From North's perspective, all of Plaintiffs' interactions with the internet are relevant to its defenses because those interactions provide alternative explanation for how Plaintiffs' sensitive information reached the internet. (*Id*. at 5.) Moreover, says North, this

4

liberal framing is appropriate to assess Plaintiffs' standing to bring suit under the traceability doctrine. (*Id*. at 6.) North also contends that each Plaintiffs' unlimited and individual interactions with the internet go to the issue of class certification under the commonality inquiry. (*Id*.)

For their part, Plaintiffs contend that 1) North's Motion is moot; 2) that North seeks irrelevant information; and 3) that North did not comply with Local Rule 7.1 such that the Motion is not ripe for adjudication. (Doc. 136 at 16.) Each assertion is addressed in turn.

Plaintiffs' mootness argument follows a well-worn path: they contend they have already provided responsive documents and answers, so there is nothing more to compel for many discovery requests. (*Id*. at 17.) But the reality is a bit more nuanced. Plaintiffs have, of their own initiative, narrowed Defendant's original requests to what they deem relevant, and then responded according to those narrowed requests. A party cannot unilaterally narrow their adversary's discovery requests and then assert mootness by responding only to the narrowed request.

Second, Plaintiffs contend that North requests a trove of irrelevant information. Looking solely to the requests as written, the Court largely agrees. Through many document requests and interrogatories, Defendant seeks information on *all* internet activity, devices, applications, and accounts for Plaintiffs and non-parties alike without limitation, including the personal contact details for non-parties who may have interacted with said accounts and devices. (Doc. 136 at 18.) In doing so, North attempts to unearth a heap of irrelevant information that is not proportional to the needs of this case. However, for many such requests, North's Proposed Order—filed contemporaneously with its Memorandum—

5

offers a tailored version of its overbroad requests. (*See generally* Doc. 134.) At the hearing, North confirmed that it was seeking relief consistent with its Proposed Order (with often-narrowed discovery requests), rather than based on its discovery requests as originally written.[2]

Third, Plaintiffs represent that Defendant failed to abide by Local Rule 7.1's meet and confer requirement. Plaintiffs represent that they provided supplemental responses to many discovery requests, and no substantive meet and confer followed that supplemental production. (Doc. 136 at 21.) Plaintiffs further represent that some discovery requests have never been discussed. (*Id.*) At the hearing, Plaintiffs suggested an appropriate remedy would be to allow the parties additional time to meet and confer toward a resolution. As the Court indicated at the hearing, this solution is theoretically acceptable, but practically not. Given the significant overlap between the disputed requests and the limited time before the close of discovery, a decision on all remaining disputed discovery requests is a more suitable result.

Finally, at the hearing, the parties agreed that any discovery would be temporally limited to the period beginning February 22, 2017. This Order will assume that timeframe.

**Interrogatory No. 3**

North requests that Plaintiffs supplement their response to Interrogatory No. 3, which asks Plaintiffs to identify "all email accounts (including the email address and

---

[2] The Court's task on any motion is to decide matters in dispute. That task is made more difficult when parties do not clearly identify what matters are *actually* in dispute within their motions and memoranda, leaving concessions buried in things like Proposed Orders without clear explanation.

domain, e.g., Gmail, yahoo, etc.), computers, computing tablets, computing notebooks, laptops, cell phones, smart phones, external hard drives, flash drives, electronic data storage devices, and any other electronic devices containing flash memory capabilities in your possession, custody, or control, or that you have used to send, receive, access, and/or view any communication or document related to your allegations. For each such device, identify the current operating system (if any) and present location." (Doc. 132 at 9.) Plaintiffs have objected, and answered only as to email accounts and devices used to access Defendant's website and application. (Doc. 132 at 10; Doc. 136 at 3.)

In seeking "all" accounts and devices used to access "any" communication related to "the allegations," North seeks a broad range of information—much of which would be irrelevant to North's defenses. More problematic, though, is the phrase "related to the allegations," which is ambiguous and vague. Plaintiffs' production of accounts and devices used to access North's websites and application is responsive in part, but not enough. The heart of Plaintiffs' allegations involve North's misuse of Plaintiffs' health data. As such, North is entitled to explore what other sources may be collecting such information. *Accord In re Meta Pixel Litigation*, No. 22-cv-3580-WHO (VKD) (Doc. 930), 2025 WL 1191786, at *1 (N.D. Cal. Apr. 24, 2025) ("To the extent Meta seeks documents showing all third-party cookies on plaintiffs' devices and/or browsers that collected or shared health information—i.e. the same kind of data at issue in this case—such discovery is clearly relevant to plaintiffs' claims and Meta's defenses."). Plaintiffs are ordered to supplement their responses to Interrogatory No. 3 to include email accounts, devices, and media used for health-care related matters.

**Interrogatory No. 10 and Request for Production No. 15**

Interrogatory No. 10 requests Plaintiffs to "[i]dentify and describe in detail all facts supporting the allegations in ¶ 9 of the Second Amended Complaint including "computer IP addresses; dates, times, and/or locations of scheduled appointments; information about patients' health care providers; types of treatments or conditions researched; type of appointment or procedure scheduled; communications between patients and others through the online patient portal, which may have included first and last names and medical record numbers; information about whether patients have insurance; gender and sexual orientation; and if a patient had a proxy portal account, the name of the proxy, and other information submitted by Plaintiff and the Class on Defendant's website or application, was compromised and disclosed to third parties without authorization or consent." (Doc. 132 at 13.) Request for Production No. 15 requests documents sufficient to demonstrate the same. (Doc. 132 at 14.)

Again, as written the Court finds the requests overbroad. However, in its Proposed Order, North narrows its initial requests and asks the Court to compel the production of "emails [the Plaintiffs] sent or received relating to their health status, North Memorial, or any other health care-related issues, pursuant to Request for Production No. 15 and Interrogatory No. 10." (Doc. 134 at 2.) Such a limitation is appropriate, and results in requests that are narrowed to relevant matters proportionate to the needs of the case.

**Interrogatory No. 6 and Request for Production No. 10**

Interrogatory No. 6 and Request for Production No. 10 involve Plaintiffs' social media accounts and usage. In Interrogatory No. 6, North requests that Plaintiffs "[i]dentify

8

all social media accounts you have or have had (including Facebook, Instagram, X (f/k/a Twitter), Reddit, or similar) and for each state when you created such account and whether you have deleted any posts, comments, or other activity from such account." (Doc. 132 at 16.) Request for Production No. 10 seeks "all content on Plaintiffs' social media accounts (including Facebook, Instagram, X (f/k/a Twitter), Reddit, or similar) including, without limitation, posts, comments, replies, reactions, check ins, or groups joined, related to Defendant or that reveals or relates to Plaintiffs' health, medical history, health care, or patient status, whether connected to Defendant or otherwise." (Doc. 136 at 8.)

Request for Production No. 10 suffers from the same overbreadth problem that infects so many of North's other requests. But in its Proposed Order, North narrows its request, asking the Court to compel Plaintiffs to produce all posts, comments, likes, group memberships, or check-ins that reference Plaintiffs' physical and mental health, status as a patient at North Memorial, or any other health care issues, as well as any social media activity or blogs and blog posts that relate to the same. (Doc. 134 at 2-3.) With that revision, the Court grants North's motion with respect to Interrogatory No. 6 and Request for Production No. 10. Plaintiffs' social media usage and records are highly relevant to their claims, and to the defenses available to North. Plaintiffs allege (among other things) that they have been damaged by North's utilization of the Meta Pixel, which tracked their private health data and converted that data into targeted advertisements on social media platforms. And Defendant has provided some evidence that at least one plaintiff made social media posts about being a patient of North's. North is entitled to defend against liability by exploring whether Plaintiffs' private health information was actually tracked

9

through sources *other* than North. As to damages, this information is relevant to the extent a factfinder could reasonably conclude that the value of a person's expectation of privacy in their health data might be diminished by virtue of extensive public posting on the subject. Finally, contrary to Plaintiffs' suggestion, "social media" is not an ambiguous term, especially given the examples provided.

**Interrogatory Nos. 13-16**

These interrogatories seek information about who (other than Plaintiffs) have access to their devices and internet services, as well as information about all wireless networks Plaintiffs have used. Each request is overbroad. Plaintiffs have responded to each request consistent with what this Court would consider discoverable information, and thus North's motion to compel further response is denied for each request.

In Interrogatory No. 13, North requests that Plaintiffs "[i]dentify by name, address, and telephone number all persons who live in Your household who use a device that connects to the internet (this includes, but is not limited to, cell phones, smart phones, computing tablets, smart watches, computers) and identify each such device." (Doc. 132 at 19.) Plaintiffs assert that the information sought by this interrogatory is overbroad and irrelevant. (*Id.*) That said, Plaintiffs have responded that none of Plaintiffs' household members have accessed North's websites. (*Id.*) Unsatisfied, North asserts that because Plaintiffs' household members' internet activity may impact the type of targeted advertisements received by Plaintiffs, a more fulsome response is necessary to explore North's possible defenses. (Doc. 132 at 20.)

10

The Court agrees that there may be some marginal relevance to this interrogatory, but that relevance is far outweighed by the breadth of the request and the burden of responding. Seeking the names, addresses, and telephone numbers of Plaintiffs' nonparty household members and their various iPhones, laptops, tablets seems mostly like fishing. It is true that household members' interactions with North's website would be relevant, but Plaintiffs have already attested to the fact that no household members interacted with North's website.

In Interrogatory No. 14, Defendant asks Plaintiffs to "identify by name, address, and telephone number all persons who have access to Your email accounts, computers, computing tablets, computing notebooks, laptops, cell phones, smart phones, smart watches, external hard drives, flash drives, electronic data storage devices, and any other electronic devices containing flash memory capabilities in your possession, custody, or control." (Doc. 132 at 22.) Much like with Interrogatory No. 13, Plaintiffs objected, but responded that that no person besides Plaintiffs accessed Defendant's websites using Plaintiffs' devices. (Doc. 136 at 7.)

For largely the same reason the Court denies Defendant's motion with respect to Interrogatory No. 13, it also denies the motion with respect to Interrogatory No. 14. Again, one could conjure some marginal relevance for the request, but it is too far afield. As discussed further below, some internet search and browsing history might be relevant, but that is not what North requests. The telephone numbers, addresses, and names of persons with access to Plaintiffs' accounts and devices is not sufficiently relevant or proportional.

In Interrogatory No. 15, Defendant requests that Plaintiffs provide the following: "[f]or the Relevant Time Period, identify by name, address, and telephone number all persons who have connected to Your IP Address or Your personal home wireless network." (Doc. 132 at 24.) Like the foregoing interrogatories, this request seeks mostly unnecessary information. If there exists a fleck of utility to the home address of the individual who has connected to Plaintiffs' wireless, it is overshadowed by the burden of responding.

Finally, Interrogatory No. 16 requests that Plaintiffs identify by name and address all locations where they have connected to a shared wireless network more than once. (Doc. 132 at 26.) North defends the relevance of this request thus: "[c]onnecting to a wireless network can result in the collection of data, which can relate to targeted advertising. Therefore, the request seeks relevant information." (*Id.* at 27.) Plaintiffs maintain they are unable to respond to this request absent any more narrow scope.

Like the foregoing interrogatories, this request appears largely irrelevant to North's defenses. Simply because "connecting to a wireless network *can* result in the collection of data which *can* relate to targeted advertising" (Doc. 132 at 27) does not mean this request is relevant under Rule 26. This is too attenuated an explanation to justify the burden imposed on Plaintiffs of searching for myriad wireless networks they may have connected to over the past eight years.

**Interrogatory No. 17**

Here, Defendant requests that Plaintiffs identify "[f]or the Relevant Time Period, identify each application that You have ever downloaded on Your smart phone, smart watch or computing tablet." (Doc. 132 at 28.) Plaintiffs object on similar grounds as to

12

Interrogatory Nos. 15 and 16. By seeking "*any* application Plaintiff has ever downloaded," Plaintiffs contend, North requests information that is overbroad and irrelevant. (*Id*.)

Plaintiff is correct. Nonetheless, the Court agrees that providing information on some applications is within the bounds of Rule 26. Specifically, Plaintiffs must identify any application downloaded that was used for health-care related matters. This includes not only health-based applications such as the MyChart application that one plaintiff admits installing, but also applications used as a vehicle for any health-related matter (such as a navigation application used to locate a health provider, or a forum application such as Reddit if used to research health information). Beyond this, general information on each and every application, unrelated to Plaintiffs' health and medical activity, represents too broad and burdensome a request.

**Request for Production Nos. 11-12**

Defendant's Request for Production Nos. 11-12 relate to Plaintiffs' internet browsing and search history. Request for Production No. 11 seeks production of "[a]ll browsing history for each web browser or application Plaintiffs use to access the internet on each device on which Plaintiffs access the internet (including, without limitation, computers, phones, or tablets)." (Doc. 132 at 33.) In Request for Production No. 12, Defendant seeks "all internet search engine search history of Plaintiffs' that are retained in any format or by any method, including but not limited to Plaintiffs' Google search history as retained in Plaintiffs' Google accounts if Plaintiffs have Google accounts." (Doc. 132 at 36.)

13

As written, both requests for production are exceedingly overbroad and intrusive. *See Wells v. Freeman Co.*, No. 3:21-cv00047-JRS-MPB, 2022 WL 22672924, at *5 (S.D. Ind. Dec. 20, 2022) (noting court's general reluctance to compel "forensic examinations of personal devices" and application of a proportionality analysis under Rule 26(b)(1) that considers the "burden on the nonmovant's privacy interest in denying the examination of devices for the nonmovant's web browsing history and cookies"). Full browsing and search history is a footprint of intimate and comprehensive data about a person, most of which would be irrelevant to North.

Again, though, North's Proposed Order seeks narrowed relief. Here, it confirmed that it is seeking Plaintiffs' internet search and browsing history "relating to their physical or mental health status, status as a patient at North, or any other health-care related issues." (Doc. 134 ¶¶ 5, 6.) Plaintiffs' internet activity related to their health bears directly on several issues in this case, and the narrowed requests seek that information (and only that information). Now appropriately focused, these requests are within the scope of allowable discovery.

**Request for Production No. 13.**

Finally, in Request for Production No. 13, Defendant requests "[d]ocuments sufficient to identify all settings, plug-ins, add-ons, extensions, and any other thing that may have affected Plaintiffs' experience interacting with Defendant's website and any portion thereof or any third party's website, the data shared with or by Defendant's website and any portion thereof or any third party, or the data saved by either party or any third party on each device, web browser, application, or any other thing Plaintiffs used to access

14

Defendant's website and any portion thereof at the time of each such access." (Doc. 132 at 38-39.)

As written, this request is uniquely ambiguous. In requesting "any other thing that may have affected Plaintiff's experience" it is unclear what compliant production would look like. While North has attempted to modify this request via its Proposed Order, the Court does not accept those revisions: each seeks an order requiring Plaintiffs to identify information, not provide documents (*See, e.g.,* Doc. 134 ¶¶ 15-17 (repeatedly seeking an order that "Plaintiff shall state" certain information).) A request for information is sought via interrogatory, not through a document request. Request for Production No. 13 is a document request. It is overbroad as written, and North has offered no cogent narrowed formulation. Accordingly, its motion is denied as to Request for Production No. 13.

## CONCLUSION

Accordingly, based on the above and on all the files, records, and proceedings in this action, **IT IS ORDERED** that:

1. Defendant's Motion to Compel Discovery, (Doc. 122), is **GRANTED IN PART.**

2. To the extent that additional production of discovery is ordered above, the parties must produce it within 21 days of this Order;

3. Plaintiffs shall supplement their answers to Defendant's Interrogatory No. 3 to include email addresses, devices, and media used for health-care related purposes.

4. Plaintiffs shall supplement their answers to Defendant's Interrogatory No. 6.

5.  Plaintiffs shall supplement their answers to Defendant's Interrogatory No. 10 to include information relating to their health status, North Memorial, or any other health care-related issues.

6.  Plaintiffs shall supplement their answers to Defendant's Interrogatory No. 17 to identify any application downloaded that was used for health-care related matters.

7.  Plaintiffs shall provide the following as to Request for Production No. 10:

    a.  Identify their social media accounts, including but not limited to Facebook, Instagram, Twitter/X, TikTok, and LinkedIn.

    b.  Identify all usernames or handles associated with their social media accounts.

    c.  Produce all posts, comments, likes, group memberships, or check-ins that reference:

        i.   Their physical or mental health status;

        ii.  Their status as a patient at North Memorial; or

        iii. Any other health care-related issues.

    d.  Produce any other social media activity that mentions or relates to:

        i.   Their physical or health status;

        ii.  Their status as a patient at North Memorial; or

        iii. Any other health care-related issues.

    e.  Identify and produce all blogs and blog posts authored or commented on by such Plaintiffs that relate to their health status, North, or any other health care-related issues.

8.  Plaintiffs shall produce internet browsing history relating to their physical or mental health status, status as a patient at North, or any other health care-related issues, pursuant to Request for Production No. 11.

9.  Plaintiffs shall produce internet search history relating to their physical or mental health status, status as a patient at North, or any other health care-related issues, pursuant to Request for Production No. 12.

10. Plaintiffs shall produce emails they sent or received relating to their health status, North Memorial, or any other health care-related issues, pursuant to Request for Production No. 15.

11. Defendant's motion is **DENIED** in all other respects.

12. The parties shall each bear their own costs and fees related to this motion.

**SO ORDRED.**


Dated:  October 15, 2025         s/Douglas L. Micko
                                 DOUGLAS L. MICKO
                                 United States Magistrate Judge