**UNITED STATES DISTRICT COURT**
**DISTRICT OF MINNESOTA**

---

Heidi Kaliher and Tracy Knight, individually, and on behalf of those similarly situated,

Plaintiffs,

v.

North Memorial Health Care, d/b/a North Memorial Health,

Defendant.

Court File No. 23-cv-440 (KMM/DLM)

**DEFENDANT'S MEMORANDUM IN OPPOSITION TO PLAINTIFFS' MOTION TO COMPEL PRODUCTION OF THIRD-PARTY DOCUMENTS AND OVERRULE PRIVILEGE DESIGNATIONS**

---

# TABLE OF CONTENTS

**Page**


INTRODUCTION ........ 1

BACKGROUND ........ 1

I. Ciceron was one of North's trusted agency partners. ........ 1

II. North Memorial voluntarily produced hundreds of non-privileged emails referencing or including Ciceron. ........ 3

III. Plaintiffs' subpoena to Ciceron and the privilege protocol. ........ 4

IV. The Ciceron Privileged Documents. ........ 6

ARGUMENT ........ 7

I. The Ciceron Privileged Documents are protected by the attorney-client privilege because Ciceron was functionally equivalent to North Memorial's employee. ........ 8

A. Ciceron's relationship to North Memorial justifies application of the attorney-client privilege to the Ciceron Privileged Documents. ........ 9

B. The attorney-client privilege applies to the Ciceron Privileged Documents. ........ 11

II. The Ciceron Privileged Documents are protected as work product because they were created after the lawsuit was filed. ........ 14

III. Plaintiffs are not entitled to an *in camera* review. ........ 16

IV. The Court should not award Plaintiffs their fees and costs incurred in this motion. ........ 17

CONCLUSION ........ 19

# TABLE OF AUTHORITIES

**Page(s)**

**Cases**

*In re Bair Hugger Forced Air Warming Devices Prods. Liab. Litig.*,
No. MDL152666JNEFLN, 2017 WL 5188342 (D. Minn. Mar. 7, 2017) .................. 15

*In re Bieter Co.*,
16 F.3d 929 (8th Cir. 1994) ........................................................................ *passim*

*Crabtree v. Experian Info. Sols., Inc.*,
No. 1:16-cv-10706, 2017 WL 4740662 (N.D. Ill. Oct. 20, 2017) .............................. 16

*Diversified Indus., Inc. v. Meredith*,
572 F.2d 596 (8th Cir. 1977) .................................................................... 12, 14

*Evans v. Krook*,
No. 20-cv-2474, 2022 WL 17176186 (D. Minn. Nov. 23, 2022) ............................... 14

*Hudock v. LG Elecs. U.S.A., Inc.*,
No. 0:16-cv-1220, 2019 WL 5692290 (D. Minn. Nov. 4, 2019) .......................... 10, 12

*King v. Univ. Healthcare Sys., L.C.*,
645 F.3d 713 (5th Cir. 2011) ........................................................................ 16

*Knapp v. Compass Minn., LLC*,
No. 24-CV-00100, 2024 WL 2832502 (D. Minn. June 4, 2024) ................................ 18

*In Re Nat'l Hockey League Players' Concussion Inj. Litig.*,
MDL No. 14-2551, 2017 WL 3276873 (D. Minn. July 31, 2017) ............................. 17

*Sanimax, LLC v. City of South St. Paul*,
No. 20-cv-1210, 2021 WL 5769309 (D. Minn. Dec. 6, 2021) ...................................... 9

*Tekstar Commc'ns, Inc. v. Sprint Commc'ns Co. L.P.*,
No. 08-cv-1130, 2009 WL 10711789 (D. Minn. June 18, 2009) ............................... 12

*U.S. v. Yielding*,
657 F.3d 688 (8th Cir. 2011) .......................................................................... 8

*Wells Fargo & Co. v. U.S.*,
Nos. 10-57, 10-95, 2013 WL 2444639 (D. Minn. June 4, 2013) ............................... 15

**Other Authorities**

Fed. R. Civ. P. 26 .......... 14, 17

Fed. R. Civ. P. 37(a)(5) .......... 17, 18

8 Wright & Miller, Fed. Prac. & Proc. Civ. § 2016.1 (3d ed.) .......... 16

## INTRODUCTION

Defendant North Memorial Health Care, d/b/a North Memorial Health ("North Memorial") respectfully opposes Plaintiffs Heidi Kaliher and Tracy Knight's (collectively, "Plaintiffs") motion to compel production of third-party documents and overrule privilege designations. Plaintiffs' motion fails because North Memorial properly withheld the documents at issue on the basis of attorney-client privilege and attorney work product.

The documents at issue involve Ciceron, Inc.—an agent of North Memorial's acting at North Memorial's direction at all relevant times. North Memorial believes there would be no dispute that all of these documents would be privileged if Ciceron employees were North Memorial employees. Plaintiffs contend that because Ciceron employees are not North Memorial employees these documents cannot be privileged. However, the Eighth Circuit has rejected Plaintiffs' argument and found that when someone is the "functional equivalent" of an entity's employee, privilege applies. This is the case here.

The Court should therefore deny Plaintiffs' motion and their corresponding request for fees and costs and instead award North Memorial its fees and costs expended in responding to this motion.

## BACKGROUND

The privilege issues raised by the Plaintiffs' motion involve a third-party digital media marketing agency called Ciceron, Inc.

### I. Ciceron was one of North's trusted agency partners.

North Memorial hired Ciceron to assist with digital strategy and execution, including the development of Google Ad campaigns, other online ad campaigns, and

analysis of campaign performance metrics. (Declaration of Nick Worley ("Worley Decl.") ¶ 3.) As one of North Memorial's agency partners, Ciceron was responsible for implementing digital tools on North Memorial's website at issue in this litigation. (*Id.* ¶ 4.) North Memorial relied on Ciceron's specialized expertise in digital marketing and analytics. (*Id.* ¶ 5.) Ciceron's expertise was essential to North Memorial's business objectives, and Ciceron possessed unique, non-public information about North Memorial's advertising practices and consumer engagement. (*Id.*) In many circumstances, Ciceron possessed knowledge about the areas in which North Memorial hired it that others at North Memorial did not possess. (*Id.*)

Ciceron was responsible for directly purchasing online digital advertising on North Memorial's behalf from entities such as Meta and Google. (*Id.* ¶ 6.) Ciceron routinely represented North Memorial and acted as North Memorial's agent in such transactions and other interactions and communications with such third-party vendors and platforms. (*Id.*) Ciceron communicated with North Memorial's marketing team, including Nick Worley, the Manager of Digital Strategy, and others on his team, on a regular basis to carry out the functions that North Memorial hired it to do. (*Id.* ¶¶ 1, 7.) Mr. Worley and his team communicated with Ciceron a minimum of once per week and communicated with Ciceron up to multiple times per day when launching campaigns and implementing other projects assigned to Ciceron. (*Id.* ¶ 7.) These communications from North Memorial included specifically directing Ciceron's work and Ciceron's participation in internal strategy and tactical meetings. (*Id.*)

After litigation began in this case, North Memorial directed Ciceron to communicate with Fredrikson & Byron, North Memorial's outside counsel, for the purpose of securing legal advice to defend against this litigation and for other legal advice related to issues raised by this litigation. (*Id.* ¶ 8.) Discussion involving Ciceron and information provided by Ciceron have been integral to North Memorial's counsel's representation of North Memorial, to North Memorial's strategy in defending this litigation and to other legal advice North Memorial's counsel has provided to North Memorial related to the issues in this case. (Declaration of Geoffrey Koslig ("Koslig Decl.") ¶ 3.)

## II. North Memorial voluntarily produced hundreds of non-privileged emails referencing or including Ciceron.

The parties have been engaged in fact discovery since July 2024. As part of that process, North Memorial identified custodians, gathered emails, applied search terms, and produced documents. The documents produced by North Memorial included thousands of emails.

Many of the emails that North Memorial has produced during fact discovery included Ciceron staff. (Koslig Decl. ¶ 4.) Those documents were not subject to the attorney-client privilege, and North Memorial did not seek to withhold them. (*Id.*) North Memorial's production of emails and related documents was substantially complete on or around July 11, 2025. (*Id.* ¶ 5.) For clarity, Plaintiffs' counsel is in possession of more than 1,000 non-privileged emails and other documents that include or reference Ciceron. Plaintiffs have been in possession of documents involving Ciceron since at least March 31, 2025. (*Id.* ¶ 6.)

### III. Plaintiffs' subpoena to Ciceron and the privilege protocol.

Approximately three months later, on June 26, 2025, Plaintiffs served Ciceron with a Subpoena to Produce Documents, Information, or Objects or to Permit Inspection of Premises in a Civil Action ("Subpoena"). (*Id.* ¶ 8.) The Subpoena requested production of "Documents related to Tracking Software on North Memorial's website and MyChart" and "Reports or analyses that [Ciceron] prepared for [North Memorial] related to Tracking Software on North Memorial's website and MyChart" during the defined relevant time period. By that time, Ciceron was in the process of going out of business. (*Id.* ¶ 7.)

After receiving the Subpoena, Ciceron's founder and CEO, Andrew Eklund, contacted North Memorial on his own initiative to discuss the Subpoena, and Mr. Eklund subsequently provided three documents that he identified as potentially responsive to the Subpoena to North Memorial's counsel. (*Id.* ¶ 9.) North Memorial's counsel asked Mr. Eklund to produce non-privileged documents responsive to the Subpoena and at no point advised him not to respond to the Subpoena. (*Id.* ¶ 13; *see also* Declaration of Nathan Prosser ("Prosser Decl."), Ex. 5 at 5, Doc. No. 150-5 (stating that North Memorial "has no objection to Mr. Eklund speaking with" Plaintiffs' counsel).)

North Memorial's counsel reviewed the three documents and identified that the documents were privileged. (Koslig Decl. ¶ 10.) On July 30, 2025, prior to Ciceron's deadline to respond, Mr. Eklund informed Plaintiffs' counsel that all responsive documents had been provided to North Memorial's counsel and that North Memorial's counsel identified them as privileged documents. (*Id.* ¶ 11.)

On July 31, 2025, North Memorial's counsel emailed Plaintiffs' counsel requesting a meet-and-confer to discuss issues related to the Ciceron documents while avoiding additional burdens on a winding down non-party. (*See* Prosser Decl., Ex. 3, Doc. No. 150-3.) On August 12, 2025, the parties met and conferred regarding the documents. (*See id.*, Ex. 5 at 3, Doc. No. 150-5.) Shortly thereafter, Plaintiffs threatened Ciceron—a non-party in bankruptcy proceedings—with sanctions regarding documents in North Memorial's possession rather than working with North Memorial on this dispute. (*See id.*)

On August 14, 2025, North Memorial's counsel sent Plaintiffs a letter requesting that the Plaintiffs engage directly with North. (*See id.*) North Memorial did so because the privilege belongs to North Memorial (not Ciceron), North Memorial is a party to this lawsuit unlike Ciceron, and the parties to a lawsuit are better positioned to resolve and bear the costs of resolving any dispute between them than is a non-party with no assets or revenue. (*See id.* at 3–4 (citing Fed. R. Civ. P. 45(d)(1)).) In its August 14 letter, North Memorial provided Plaintiffs with a privilege log of the three documents it had received so far. (*Id.* at 4.) And on August 14, 2025, North Memorial invited Plaintiffs to file a motion to compel against North regarding Ciceron documents. (*Id.* at 3.)

On August 21, 2025, the parties met and conferred, and on September 3, 2025, the Court directed the parties to meet and confer regarding a protocol for Ciceron's documents. (*See* Doc. No. 121.)

The parties then agreed to a protocol under which Ciceron would produce all responsive documents to North Memorial for privilege review. (*See* Koslig Decl. ¶ 14.) North Memorial's counsel reviewed the documents provided by Mr. Eklund, which

included additional documents provided by Mr. Eklund. (*Id.* ¶ 15.) This review identified a subset of documents containing privileged communications and attorney work product. (*Id.*) Consistent with its obligations to its client, North Memorial's counsel withheld those privileged materials. (*Id.* ¶ 16.)

**IV. The Ciceron Privileged Documents.**

On September 23, 2025, North Memorial's counsel produced four documents provided by Ciceron to Plaintiffs and subsequently provided a privilege log identifying 27 withheld documents ("Ciceron Privileged Documents") as provided for by the protocol. (*Id.* ¶ 17.)

The Ciceron Privileged Documents represent a miniscule percentage of the non-privileged emails and other documents referencing or including Ciceron that North Memorial previously produced in this matter. (*Id.* ¶ 18.) In addition, all of the Ciceron Privileged Documents were created *after* this lawsuit was filed. (*Id.* ¶ 19.) All of the Ciceron Privileged Documents relate to legal advice and communications in this case and include North Memorial's outside legal counsel in this case, were created at the direction of North Memorial's outside legal counsel, contain communications from North Memorial's outside legal counsel, and/or discuss the implications of or the implementation of legal advice related to this case. (*Id.* ¶ 20.) All of the Ciceron Privileged Documents support North Memorial's outside counsel's defense of this litigation. (*Id.* ¶ 21.) These communications reflect Ciceron's role in the defense of this litigation and supporting counsel's understanding of the underlying subject matter necessary to provide legal advice and prepare for this litigation. (*Id.*) Every person identified on the privilege log with the

exception of Allison Eklund is or was at the relevant time either North Memorial's outside counsel, a North Memorial employee, an employee or owner of a North Memorial agency partner, or a retained expert. Ms. Eklund is an attorney representing Ciceron in its response to the Subpoena. (*Id.* ¶ 22.) Accordingly, all of the Ciceron Privileged Documents were reviewed and designated as protected by the attorney-client privilege and work-product doctrine. (*Id.* ¶¶ 15, 16; *see also* Prosser Decl., Ex. 12, Doc. No. 150-12.)

As can be seen on the privilege log, to North Memorial's knowledge, no one received or sent the Ciceron Privileged Documents other than North's legal counsel, North's employees, those acting as the functional equivalent of North employees as discussed below, a retained expert, and an attorney for Ciceron. (*See* Prosser Decl., Ex. 12, Doc. No. 150-12.) For example, some of the Ciceron Privileged Documents include correspondence involving individuals employed by FTI Consulting Inc. ("FTI") or otherwise reference FTI. (*See id.*; Koslig Decl. ¶ 23.) FTI is a non-testifying expert North Memorial's counsel retained after this litigation began for the purpose of assisting counsel's preparation to defend this case. (Koslig Decl. ¶ 23.) North Memorial's outside counsel directed FTI to send the correspondence identified and involving it in the privilege log. (*Id.*)

Plaintiffs now challenge North Memorial's privilege designations and seek to compel production of the Ciceron Privileged Documents.

## ARGUMENT

Plaintiffs argue that the Ciceron Privileged Documents must be produced because they are not protected by attorney-client privilege, the work-product doctrine, or the

common-interest doctrine. (Doc. No. 149 at 13–19.) North Memorial does not contend that the common-interest doctrine applies. For the reasons provided below, however, both the attorney-client privilege and work-product doctrine protect the Ciceron Privileged Documents and justify withholding them.[1]

## I. The Ciceron Privileged Documents are protected by the attorney-client privilege because Ciceron was functionally equivalent to North Memorial's employee.

Plaintiffs argue that the Ciceron Privileged Documents are not protected by the attorney-client privilege because Ciceron is not a client of North Memorial's counsel. (Doc. No. 149 at 13–14.) This argument misstates both the law and North Memorial's position. North Memorial does not contend that Ciceron holds the privilege; rather, North Memorial asserts that it holds the privilege over communications involving Ciceron because Ciceron was acting as the functional equivalent of a North Memorial employee. *See U.S. v. Yielding*, 657 F.3d 688, 707 (8th Cir. 2011) ("The [attorney-client] privilege belongs to and exists solely for the benefit of the client.").

The Eighth Circuit has expressly recognized that the attorney-client privilege may extend to communications with third-party consultants who are the functional equivalent of employees. *In re Bieter Co.*, 16 F.3d 929, 938 (8th Cir. 1994) (concluding that independent consultant was "in all relevant respects the functional equivalent of an employee" for purposes of attorney-client privilege). Because Ciceron is a third-party

[1] Notably, most, if not all, of the Ciceron Privileged Documents are also not relevant or not responsive to the Subpoena's requests. However, North did not withhold any documents on this basis per the agreed-upon protocol, which only allowed for a privilege review.

consultant functionally equivalent to North Memorial's employee, and the Ciceron Privileged Documents satisfy the privilege requirements, the communications were properly withheld as privileged.

### A. Ciceron's relationship to North Memorial justifies application of the attorney-client privilege to the Ciceron Privileged Documents.

"[A] corporation's assertion of attorney-client privilege applies to communications between its employees and corporate counsel as long as the communications are made at the direction of corporate superiors in order to secure legal advice." *Sanimax, LLC v. City of South St. Paul*, No. 20-cv-1210, 2021 WL 5769309, at *3 (D. Minn. Dec. 6, 2021). The Eighth Circuit has extended the attorney-client privilege to communications between counsel and independent consultants who act as the functional equivalent of employees. *In re Bieter Co.*, 16 F.3d at 936 ("Communications can . . . be privileged if they are between a representative of the client and the client's lawyer" and an "independent consultant can be a representative of the client for purposes of applying the attorney-client privilege.").

For example, in *In re Bieter Co.*, the Eighth Circuit Court of Appeals held that a non-employee consultant was the "functional equivalent" of an employee due to his daily involvement with the company's principals, his exclusive representation of the company at certain meetings, and his specialized knowledge critical to the company's objectives. 16 F.3d at 938. Because the consultant possessed unique information not available to others and was retained specifically for his expertise—akin to retaining "an outside accountant for her knowledge of . . . proper accounting practices"—the court concluded that there was no principled basis to distinguish his role from that of an employee. *Id.*; *see also Sanimax*,

2021 WL 5769309, at *4 (holding a city contractor involved in an odor mitigation dispute was functionally an employee of the city and covered by privilege); *Hudock v. LG Elecs. U.S.A., Inc.*, No. 0:16-cv-1220, 2019 WL 5692290, at *4–5 (D. Minn. Nov. 4, 2019) (finding a marketing company in an advertising dispute was similarly a functional employee of the defendant and covered by privilege).

As in *In re Bieter*, North Memorial's relationship with Ciceron justifies application of the attorney-client privilege. 16 F.3d at 938. North Memorial hired Ciceron to assist with digital strategy and execution, including the development of Google Ad campaigns, other online ad campaigns, and analysis of campaign performance metrics. (Worley Decl. ¶ 3.) As one of North Memorial's agency partners, Ciceron was responsible for implementing the digital tools on North Memorial's website at issue in this litigation. (*Id.* ¶ 4.) North Memorial relied on Ciceron's specialized expertise in digital marketing and analytics. (*Id.* ¶ 5.) Ciceron's expertise was essential to North Memorial's business objectives, and Ciceron possessed unique, non-public information about North Memorial's advertising practices and consumer engagement. (*Id.*) In many circumstances, Ciceron possessed knowledge about the areas in which North Memorial hired it that others at North Memorial did not possess. (*Id.*)

Furthermore, Ciceron was responsible for directly purchasing online digital advertising on North Memorial's behalf from entities such as Meta and Google. (*Id.* ¶ 6.) Ciceron routinely represented North Memorial and acted as North Memorial's agent in such transactions and other interactions and communications with such third-party vendors and platforms. (*Id.*) Ciceron communicated with North Memorial's marketing team,

including Nick Worley, the Manager of Digital Strategy, and others on his team, on a regular basis to carry out the functions that North Memorial hired it to do. (*Id.* ¶¶ 1, 7.) Mr. Worley and his team communicated with Ciceron a minimum of once per week and communicated with Ciceron up to multiple times per day when launching campaigns and implementing other projects assigned to Ciceron. (*Id.* ¶ 7.) These communications from North Memorial included specifically directing Ciceron's work and Ciceron's participation in internal strategy and tactical meetings. (*Id.*)

Thus, there is no basis to distinguish Ciceron's role from that of an employee. Like the consultant in *In re Bieter*, Ciceron staff were the type of individuals with whom North Memorial's counsel would need to confer confidentially to understand the factual context underlying North Memorial's legal position in this litigation. North Memorial's relationship with Ciceron therefore justifies application of the attorney-client privilege.

### B. The attorney-client privilege applies to the Ciceron Privileged Documents.

Having established that Ciceron is the functional equivalent of an employee for purposes of the attorney-client privilege, the next question is whether the specific communications at issue are protected by the attorney-client privilege. The privilege applies if:

> (1) the communication was made for the purpose of securing legal advice; (2) the employee making the communication did so at the direction of his corporate superior; (3) the superior made the request so that the corporation could secure legal advice; (4) the subject matter of the communication is within the scope of the employee's corporate duties; and (5) the communication is not disseminated beyond those persons who, because of the corporate structure, need to know its contents.

*Diversified Indus., Inc. v. Meredith*, 572 F.2d 596, 609 (8th Cir. 1977). The Ciceron Privileged Documents satisfy this test.

First, the communications were made to facilitate legal advice. Plaintiffs argue that the communications cannot be privileged because they do not list a lawyer on their face. (Doc. No. 149 at 13.) However, the presence or absence of a lawyer is not determinative: the privilege is maintained if the communication is made to further the purpose of securing legal advice. *See Hudock*, 2019 WL 5692290, at *3 ("[C]ommunications among corporate employees who are not lawyers may still be privileged if their discussions relay or transmit advice received from an attorney." (citation modified)); *Tekstar Commc'ns, Inc. v. Sprint Commc'ns Co. L.P.*, No. 08-cv-1130, 2009 WL 10711789, at *5 (D. Minn. June 18, 2009) ("Nonetheless, a corporation does not waive its privilege when non-lawyer employees send or receive communications because corporate communications which are shared with those having a need to know of the communications are confidential for purposes of the attorney-client privilege."). Communications "retain their privileged status within a corporation if an employee conveys legal advice received from counsel to other employees or officers of the corporation on a need to know basis." *Hudock*, 2019 WL 5692290, at *3 (quoting *Fair Isaac Corp. v. Experian Info. Sols., Inc.*, No. 06-cv-4112, 2009 WL 10677479, at *21 (D. Minn. Mar. 23, 2009)). "An employee is on a need to know basis, so as to preserve the attorney-client privilege, if he is a policymaker for the corporation (i.e., an executive) or is responsible for the subject matter at issue in the communication." *Id.*

Second, the communications were made at the direction of North Memorial. (Worley Decl. ¶ 8.) After litigation began in this case, North Memorial directed Ciceron

to communicate with North Memorial's counsel for the purpose of securing legal advice to defend against this litigation and for other legal advice related to issues raised by this litigation. (*Id.*) Ciceron's discussions with counsel have been integral to North Memorial's counsel's representation of North Memorial, to North Memorial's strategy in defending this litigation and to other legal advice North Memorial's counsel has provided to North Memorial related to the issues in this case. (Koslig Decl. ¶ 3.)

Third, North Memorial directed the communications for the purpose of securing legal advice. (Worley Decl. ¶ 8.) *See In re Bieter*, 16 F.3d at 939 ("If the communication was made for the purpose of seeking legal advice and it was done at the direction of the superior, it is reasonable to infer that, absent evidence to the contrary, the superior directed that the communication be made for the purpose of securing legal advice."). No evidence to the contrary has been presented.

Fourth, the subject matter of the communications clearly falls within the scope of Ciceron's duties. Ciceron was retained by North Memorial to assist with digital strategy, including advertising and analytics—issues that are central to the claims and defenses in this litigation. (Worley Decl. ¶ 3.)

Finally, the communications were treated as confidential and were not disseminated beyond North Memorial, Ciceron, and others at the direction of North Memorial's outside counsel in the defense against this litigation. (Koslig Decl. ¶ 22.) This includes the other people identified on the privilege log such as FTI. (*Id.* ¶¶ 22–23.) Plaintiffs argue that disclosure to Ciceron destroys the privilege, (Doc. No. 149 at 14), but that argument ignores the settled law that communications with the functional equivalent of an employee

do not lose their privileged status merely because they are shared with that individual. *See In re Bieter*, 16 F.3d at 939 ("Suffice it to say that the dissemination of a communication that otherwise satisfies the elements of the test put forth in *Diversified* to the 'employee' whose communications are at issue does not destroy the privilege.").

**II. The Ciceron Privileged Documents are protected as work product because they were created after the lawsuit was filed.**

The work-product doctrine protects documents and tangible things prepared in anticipation of litigation. *See* Fed. R. Civ. P. 26(b)(3). "While the 'work product' may be, and often is, that of an attorney, the concept of 'work product' is not confined to information or materials gathered or assembled by a lawyer." *Diversified*, 572 F.2d at 603; *see also* Fed. R. Civ. P. 26(b)(3)(A) ("[A] party may not discover documents and tangible things that are prepared in anticipation of litigation or for trial by or for another party or its representative (*including the other party's attorney, consultant, surety, indemnitor, insurer, or agent*).") (emphasis added). "Documents or information prepared by a party's agent in anticipation of litigation, at the instruction of that party's counsel, can qualify for protection under the work product doctrine." *Evans v. Krook*, No. 20-cv-2474, 2022 WL 17176186, at *5 (D. Minn. Nov. 23, 2022) (citation modified).

Here, all of the Ciceron Privileged Documents were created months after Plaintiffs filed their complaint on February 22, 2023, and were prepared at the direction of North Memorial's counsel to support the defense of this litigation. (Koslig Decl. ¶¶ 19–20.) These communications reflect Ciceron's role in in the defense of this litigation and supporting counsel's understanding of the underlying subject matter necessary to provide

legal advice and prepare for this litigation. (*Id.* at ¶ 21.) Accordingly, the Ciceron Privileged Documents fall squarely within the scope of protected attorney work product.

Plaintiffs argue that North Memorial waived work-production protection by disclosing the documents to Ciceron because the disclosure substantially increased the opportunity that Plaintiffs would obtain the documents. (Doc. No. 149 at 16.) This argument is unavailing. Disclosure to a third party does not waive work-product protection unless the disclosure is made to an adversary in litigation or substantially increases the opportunities for potential adversaries to see the work product. *Wells Fargo & Co. v. U.S.*, Nos. 10-57, 10-95, 2013 WL 2444639, at *37 (D. Minn. June 4, 2013). Ciceron is not an adversary; Ciceron was North Memorial's long-standing consultant and trusted agency partner. Disclosure to Ciceron did not substantially increase the opportunity for Plaintiffs or other potential adversaries to see the work product. Indeed, Ciceron on its own initiative contacted North Memorial's counsel before producing any documents pursuant to the Subpoena.

Plaintiffs' reliance on *In re Bair Hugger* is misplaced. In that case, plaintiffs mass-emailed alleged work-product documents to a professional group's membership list, acknowledging the risk that "one of those unknown recipients" could share the documents with defendant. *In re Bair Hugger Forced Air Warming Devices Prods. Liab. Litig.*, No. MDL152666JNEFLN, 2017 WL 5188342, at *5 (D. Minn. Mar. 7, 2017). In contrast, North Memorial disclosed the Ciceron Privileged Documents only to Ciceron and others directly involved in North Memorial's defense of this case—not to any unknown recipients—and did so in the context of a confidential, litigation-related collaboration.

Accordingly, the Ciceron Privileged Documents are protected as attorney work product and are not discoverable.

## III. Plaintiffs are not entitled to an *in camera* review.

A party is not entitled to an *in camera* review of the opposing party's privileged documents simply because it requests one. Rather, the Court has discretion in determining whether to grant *in camera* review and may deny such a request if the proponent puts forth only speculative arguments or the privilege logs appear sound. *See, e.g.*, *King v. Univ. Healthcare Sys., L.C.*, 645 F.3d 713, 721 (5th Cir. 2011) (affirming the district court's decision not to conduct an in camera review where defendant's privilege logs described a valid claim of privilege and plaintiff "offered only speculation that the e-mails are not covered by privilege because they were made for a purpose other than obtaining legal advice"); *Crabtree v. Experian Info. Sols., Inc.*, No. 1:16-cv-10706, 2017 WL 4740662 (N.D. Ill. Oct. 20, 2017) ("Plaintiff failed to establish a well-founded basis for challenging Defendant's privilege designations, and Plaintiff is not entitled to an in camera review simply because he requested one. Absent an initial showing that such a review is warranted, the Court will not require Defendant to undertake the burden of producing documents to the Court for an independent examination."); *see also* 8 Wright & Miller, Fed. Prac. & Proc. Civ. § 2016.1 (3d ed.) ("In making these determinations, the court should be guided by a sense of reasonableness in deciding what should be required.").

North Memorial's privilege log satisfies the requirements of Rule 26(b)(5), and Plaintiffs offer only speculation that "the documents being withheld are facially not privileged." (Doc. No. 149 at 20.) The Court should not waste judicial resources

conducting an *in camera* review and should exercise its discretion to deny Plaintiffs' request.[2]

## IV. The Court should not award Plaintiffs their fees and costs incurred in this motion.

The Court should deny Plaintiffs' requests for attorney's fees and costs. (*See* Doc. No. 149 at 20.) Federal Rule of Civil Procedure 37(a)(5) generally instructs courts to award attorney's fees and costs to the prevailing party. For the reasons previously stated, Plaintiffs should not prevail on this motion, and thus, Plaintiffs should not receive attorney's fees and costs.

The rule also prohibits payment if "the opposing party's nondisclosure, response, or objection was substantially justified." Fed. R. Civ. P. 37(a)(5). Any alleged non-disclosure was substantially justified because North Memorial reasonably designated these documents as privileged in good faith and disclosed their privilege designation in its privilege log. *See In Re Nat'l Hockey League Players' Concussion Inj. Litig.*, MDL No. 14-2551, 2017 WL 3276873, at *2-3 (D. Minn. July 31, 2017). These circumstances do not warrant an award of attorney's fees and costs to Plaintiffs.

Plaintiffs argue that North Memorial "intentional interference with Plaintiffs' lawful subpoena to Ciceron" was not substantially justified. (Doc. No. 149 at 21.) Plaintiffs rely on two distinguishable cases. (*Id.* at 21–22.) In *Price v. Trans Union, L.L.C.*, a court found that the conduct of an adversary to the party seeking information was sanctionable where

[2] While North believes that *in camera* review is not warranted and objects to Plaintiffs' request, North would comply with an order of the Court to provide some or all withheld documents for *in camera* review.

the party sent letters to the third-party subpoena recipients, advising them not to respond to the subpoena. 847 F. Supp. 2d 788, 793–94 (E.D. Pa. 2012). And in *Fox Industries, Inc. v. Gurovich*, another court found the same where defense counsel sent letters to the third-party subpoena recipients, stating that the subpoena was "null and void as a matter of law and should not be complied with." No. 03-5166, 2006 WL 2882580, at *2 (E.D.N.Y. Oct. 6, 2006).

In contrast, here, North Memorial's counsel asked Ciceron to produce non-privileged documents responsive to the Subpoena and at no point advised Ciceron not to respond. (Koslig Decl. ¶ 13.) In fact, neither North Memorial nor its counsel initiated the communications with Ciceron regarding the Subpoena; Mr. Eklund reached out to North Memorial's counsel on his own initiative to discuss the Subpoena. (*Id.* at ¶ 9.)

If any fees and costs are awarded, the Court should award North Memorial its fees and costs incurred in opposing this motion. Under Rule 37(a)(5)(B), if the Court denies Plaintiffs' motion, it "must" award North Memorial its "reasonable expenses incurred in opposing the motion, including attorney's fees," unless "the motion was substantially justified or other circumstances make an award of expenses unjust." The Court should deny Plaintiffs' motion. Plaintiffs' position that the involvement of Ciceron *per se* means these documents are not privileged has been rejected by Eighth Circuit; North Memorial provided that case to Plaintiffs before they filed this motion. Therefore, Plaintiffs were not substantially justified in filing this motion. Because of this and because a fees award would not be unjust, the Court should award North Memorial its fees in opposing Plaintiffs' motion. *See Knapp v. Compass Minn., LLC*, No. 24-CV-00100 (SRN/DTS), 2024 WL

2832502, at *12 (D. Minn. June 4, 2024) (awarding fees incurred in opposing motion to compel).

## CONCLUSION

For the reasons stated, North Memorial respectfully requests that the Court deny Plaintiffs' motion to compel and request for attorney's fees and costs and instead award such fees and costs to North Memorial.

Dated: October 30, 2025

*s/ Nicole M. Moen*
Nicole M. Moen (#0329435)
Geoffrey Koslig (#0402717)
Maliya G. Rattliffe (#0401993)
**FREDRIKSON & BYRON, P.A.**
60 South Sixth Street
Suite 1500
Minneapolis, MN 55402-4400
(612) 492-7000
nmoen@fredlaw.com
gkoslig@fredlaw.com
mrattliffe@fredlaw.com

***Attorneys for Defendant North Memorial Health Care***