**UNITED STATES DISTRICT COURT**
**DISTRICT OF MINNESOTA**

---

Heidi Kaliher and Tracey Knight, individually, and on behalf of those similarly situated,

Plaintiffs,

v.

North Memorial Health Care, d/b/a North Memorial Health,

Defendant.

Case No. 23-cv-440 (KMM/DLM)

**ORDER ON PLAINTIFFS' MOTION TO COMPEL PRODUCTION OF THIRD-PARTY DOCUMENTS**

---

This matter comes before the undersigned pursuant to Plaintiffs' Motion to Compel Production of Third-Party Documents. (Doc. 145.) In its motion, Plaintiffs seek to compel production of third-party documents withheld by Defendant as privileged. (*See generally id*.) Defendant opposes the motion. (Doc. 159.) No hearing was held on the matter. Having considered the parties' arguments, the Court **DENIES** Plaintiffs' Motion.

## BACKGROUND

This is a case about internet tracking, privacy, and advertising, and the documents sought by Plaintiffs' motion lie at the convergence of these themes. Plaintiffs seek to compel production of documents which relate to communications between a third party, Ciceron, Inc. ("Ciceron") and Defendant North Memorial Health Care ("North"). North objects. It contends that the documents, which Ciceron produced to North and which North withheld as privileged, cannot be compelled because Ciceron functioned like an employee

of North and because the communications concern legal advice such that they are protected by the attorney-client privilege.

On June 26, 2025, Plaintiffs propounded a third-party subpoena on Ciceron. (Doc. 150 at 1.) This subpoena requested "documents related to Tracking Software on North Memorial's website and MyChart" as well as reports or analyses that Ciceron prepared for North related to that tracking software. (Doc. 150 at 2.) In accordance with Rule 45, Plaintiffs provided notice and a copy to Defendant's counsel on June 25, 2025. (*Id.*)

On July 30, 2025, Ciceron's CEO informed Plaintiffs' counsel that he had provided all responsive documents to North's counsel, and that counsel had identified those documents as privileged. (Doc. 161 at 3.) After substantial back-and-forth regarding the withheld documents, the parties engaged in an informal hearing before this Court on September 3, 2025. (Doc. 150 at 3.) On September 9, 2025, the parties agreed to a protocol under which Ciceron would produce all other responsive documents to North for privilege review. (Doc. 150 at 3; Doc. 161 at 3.) Pursuant to this protocol, North produced four Ciceron documents to Plaintiffs and withheld the remaining 27 Ciceron documents—all of which were created after this litigation began—as protected under the attorney-client privilege and the work-product doctrine. (Doc. 161 at 4.) The withheld documents concern communications between Ciceron and North's counsel, communications which North initiated, and relate to legal advice on the instant litigation. (Doc. 161 at 4.)

Plaintiffs now challenge the privilege designation of the 27 withheld Ciceron documents. In their Memorandum in Support of their motion, Plaintiffs allege that North "wrongfully intervened" in a lawful subpoena when it directed Ciceron to withhold

responsive documents so that North could first review those documents. (Doc. 149 at 2.) Plaintiffs urge the Court to grant their motion because the withheld documents are not privileged, since North's counsel does not represent Ciceron, and because whatever privilege may have existed has been waived based on third-party sharing with Ciceron. (Doc. 149 at 12.) Defendant objects. It argues that the documents are privileged because Ciceron acted as the functional equivalent of North's employee. (Doc. 159 at 12.) And because the documents were created for the purpose of seeking legal representation to defend against this litigation, says North, they are protected by the attorney-client privilege. (*Id*. at 15.)

**ANALYSIS**

Federal Rule of Civil Procedure 26 entitles parties to liberal discovery of "any nonprivileged matter that is relevant to any party's claim or defense and proportional to the needs of the case[.]" Fed. R. Civ. P. 26(b)(1). Privileged matter includes material protected by the attorney-client privilege, which exists to "encourage full and frank communications between attorneys and their clients and thereby promote broader public interest in the observance of law and administration of justice." *Upjohn v. United States*, 449 U.S. 383, 389 (1981). The attorney-client privilege is narrowly construed and protects "only those disclosures—necessary to obtain informed legal advice—which might not have been made absent the privilege." *United States v. Ivers*, 967 F.3d 709, 716 (8th Cir. 2020) (citing *Fisher v. United States*, 425 U.S. 391, 403 (1976)). This privilege "belongs to and exists solely for the benefit of the client." *United States v. Yielding*, 657 F.3d 688, 707 (8th Cir. 2011).

For the attorney-client privilege to apply, the parties in communication must "bear the relationship of attorney and client" and the attorney must be engaged by the client for the "purpose of obtaining legal services." *Diversified Indus., Inc. v. Meredith*, 572 F.2d 596, 602 (8th Cir. 1977). Where a corporation asserts the privilege, "communications between its employees and corporate counsel" are protected "as long as the communications are made at the direction of corporate superiors in order to secure legal advice." *Sanimax, LLC v. City of S. St. Paul*, No. 20-cv-1210 (SRN/ECW), 2021 WL 5769309, at *3 (D. Minn. Dec. 6, 2021). But the privilege is not limited only to corporate counsel's communications with de jure corporate employees: it extends too to communications with third parties that act as the "functional equivalent" of the corporation's employee. *In re Bieter Co.*, 16 F.3d 929, 936 (8th Cir. 1994). A third party who has this type of quasi-employment relationship with the corporation may invoke the attorney-client privilege when that party "possess[ed] the very sort of information that the privilege envisions flowing most freely" due to his "significant relationship to the client and the client's involvement in the transaction that is the subject of legal services." *Id.* at 938 (citation modified). This analysis considers whether the third party "likely possesses information that is possessed by no other," making him "precisely the sort of person with whom a lawyer would wish to confer confidentially in order to understand [the client's] reasons for seeking representation." *Id.*

Thus, the question is whether the attorney-client privilege may attach in the first instance to communications between third-party Ciceron and North's counsel. If it does, then the Court must next determine whether these communications are of the type protected

by the privilege. The Court will address these questions in turn, and then consider Plaintiffs' alternative request for *in camera* review, and finally the parties' competing requests for an award of costs and fees.

## I. CICERON WAS THE FUNCTIONAL EQUIVALENT TO AN EMPLOYEE OF NORTH FOR PRIVILEGE PURPOSES.

The threshold question here is whether Ciceron acted as the "functional equivalent" of an employee of North such that its communications may be protected by the attorney-client privilege. *In re Bieter*, 16 F.3d at 936. Based on the record before it and a review of the relevant caselaw, the Court finds that Ciceron bore a quasi-employment relationship to North sufficient for North to invoke the privilege.

*In re Bieter* is instructive and seminal on this point. There, the Eighth Circuit held that the attorney-client privilege extends to communications between a corporation's counsel and outside agents who act as the "functional equivalent" of a corporate employee. *Id*. In that case, an independent contractor was deemed to be the functional equivalent of a corporate employee for privilege purposes where the contractor was highly involved in the corporation's mission for years, worked out of the corporation's office, acted as the corporation's representative with external actors and clients, and engaged with corporate counsel even in the absence of corporate representation. *Id*. at 934. Given the nature and extent of the third-party's involvement with the corporation, the Eighth Circuit determined that there existed "no principled basis to distinguish [the contractor's] role from that of an employee" for privileges purposes. *Id*. at 938.

While *In re Bieter* represents a clear-cut example of a functional employee relationship, courts in this District have applied its analytical framework to diverse commercial relationships and reached the same result. *See Sanimax, LLC, v. City of S. St. Paul*, No. 20-cv-1210 (SRN/ECW), 2021 WL 5769309 (D. Minn. Dec. 6, 2021) (applying *In re Bieter*'s exception to a transitional City manager employed by City); *Hudock v. L.G. Electronics, U.S.A. Inc*., No. 16-cv-1220 (JRT/KMM), 2019 WL 5692290 (D. Minn. November 4, 2019) (applying *In re Bieter*'s exception to an advertising company contracted to provide marketing services to a corporation where the advertisements were at issue in litigation).

Applying *In re Bieter* to the evidence presented here, the Court finds that Ciceron acted as the functional equivalent of North's employee for privilege purposes. Before it went out of business in May 2025, Ciceron was a digital marketing company that specialized in social media marketing with a portfolio sporting several higher-profile corporate healthcare clients, North among them. (Doc. 149 at 2.) North hired Ciceron to assist with digital marketing, including online ad campaigns and analysis of those campaigns. (Doc. 160 at 1.) Ciceron was responsible for "implementing the digital tools on North Memorial's website at issue in this litigation." (*Id*.) Ciceron acted as North's representative because it was "responsible for directly purchasing online digital advertising on North Memorial's behalf from entities such as Meta and Google," and "routinely represented North Memorial and acted as [its] agent in such transactions and other interactions and communications with such third-party vendors and platforms." (*Id*. at 2.) Like the third-parties in *Bieter* and *Hudock*, Ciceron possessed "unique, non-public

information" about corporate operations—information not possessed by North itself. (Doc. 160 at 2-3.) And that information lies at heart of this litigation.

Accordingly, because Ciceron represented North as its agent in commercial transactions, because it possessed unique information not possessed by North related to online advertising and consumer engagement, and because the digital tools it implemented are in the crosshairs of this litigation, *In re Bieter*'s functional employee exception applies. Here, application of the attorney-client privilege aligns with the privilege's very purpose: "encouraging pursuit of legal advice free from concern that the request will be revealed." *Hudock*, 2019 WL 5692290, at *5. As in *Hudock*, "inclusion of [this] de facto employee[] on communications does not vitiate that privilege." *Id.*

## II. CICECERON'S COMMUNICATIONS WITH NORTH'S COUNSEL ARE PROTECTED UNDER THE ATTORNEY-CLIENT PRIVILEGE.

Having established that Ciceron functioned like North's employee, the next question before the Court is whether the attorney-client privilege protects the 27 documents related to communications between Ciceron and North's counsel. The Court concludes that it does.

Communications between corporate employees and corporate counsel are protected by the attorney-client privilege when:

> (1) the communication was to secure legal advice, (2) the employee made the communication at the direction of his or her corporate superior, (3) the superior's request was to seek legal advice for the corporation, (4) the subject matter of the communication is within the employee's corporate duties, and (5) the communication was not disseminated beyond people who need to know its contents because of the corporate structure.

*Id.* at *3 (citation modified).

Here, all the elements of the privilege's application to corporate employee communications are satisfied. In this case, Ciceron's CEO communicated with North's counsel at the behest of North—the functional corporate superior—*after* litigation commenced. (Doc. 160 at 2-3.) North directed Ciceron to speak with counsel to defend against this litigation, and for no other purpose. (*Id.*) The subject matter was within Ciceron's duties as it concerned the digital tracking technology at issue, and lastly, this communication was not waived by sharing it beyond those who needed to know of it. (Doc. 161 at 5.) Accordingly, the Court finds that the 27 documents related to communication between Ciceron and North's counsel were appropriately withheld as privileged and denies Plaintiffs' motion.

## III. THE COURT WILL NOT CONDUCT AN *IN CAMERA* REVIEW OF THE DISPUTED DOCUMENTS.

As an alternative to an order that Ciceron's documents be produced, Plaintiffs ask that the Court conduct an *in camera* review of the 27 withheld documents to better assess Defendant's claim of privilege. (Doc. 149 at 20.) Defendant objects. It argues that Plaintiffs are not entitled to such review simply by asking for it.

The Court's use of in camera review is, ultimately, a discretionary choice. *See, e.g.*, *United States v. Zolin*, 491 U.S. 554, 572 (1989) ("[T]he decision whether to engage in in camera review rests in the sound discretion of the district court."); *Moran v. Clarke*, 296 F.3d 638, 650 (8th Cir. 2002) ("[W]e similarly rely heavily on the district court's discretion in deciding whether to conduct an in camera review."). While *in camera* review may be warranted in some cases, its role "should be limited, for it is contrary to the traditional

judicial role of deciding issues in an adversarial context upon evidence openly produced in court." *Cox v. United States Dep't of Just.*, 576 F.2d 1302, 1311 (8th Cir. 1978).

The Court declines to conduct an *in camera* review of the documents at issue. Plaintiffs' argument here is basic and unavailing: that because the Court can, the Court should. But the Court's capacity alone does not justify *in camera* review. Plaintiffs provide no substantive explanation why the Court should doubt Defendant's claims of privilege (beyond the third-party issue now decided). Nor does the record itself provide reason to doubt those claims. Here, Ciceron was critical to implementing the tracking software that is the crux of this case. Intuitively, it follows those communications between Ciceron and North's counsel made for the purpose of seeking legal advice after litigation began would be the exact type of documents to which privilege would attach. Absent a showing otherwise, the Court accepts North's privilege designation at face value.

## IV. AN AWARD OF FEES IS NOT WARRANTED.

If a motion to compel is denied, the court must "require the movant, the attorney filing the motion, or both to pay the party or deponent who opposed the motion its reasonable expenses incurred in opposing the motion, including attorney's fees." Fed. R. Civ. P. 37(a)(5)(B). But the Court may decline to apportion expenses where the motion was "substantially justified." *Id*. The Court finds Plaintiffs' position to be substantially justified and accordingly declines to award Defendant the fees and costs it seeks. Both parties will bear their own expenses.

## CONCLUSION

Accordingly, based the above and all the files, records, and proceedings in this action, **IT IS ORDERED** that:

1. Plaintiffs' Motion to Compel Production of Third-Party Documents (Doc. 145) is **DENIED**.

2. The parties shall each bear their own costs and fees related to this motion.

**SO ORDERED.**

Dated: November 17, 2025

*s/Douglas L. Micko*
DOUGLAS L. MICKO
United States Magistrate Judge